D. Victoria Baranetsky (SBN 311892)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (201) 306-4831
Fax: (510) 849-6141
vbaranetsky@revealnews.org

Shawn Musgrave (SBN 341359)
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
Telephone: (510) 982-2890
Fax: (510) 849-6141
smusgrave@revealnews.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and ANAYANSI DIAZ-CORTES, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE and U.S. DEPARTMENT OF STATE <br><br> Defendants. | No. 21-cv-09613-SK <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF; [PROPOSED] ORDER** <br><br> Date: May 16, 2022 <br> Time: 9:30 a.m. <br> Courtroom: Courtroom C – Fifteenth Floor <br><br> Honorable Sallie Kim <br> United States Magistrate Judge |

## I.      ISSUES TO BE DECIDED

1.      Whether Defendant Executive Office for United States Attorneys ("EOUSA") failed to issue a legally sufficient "final determination" under the Freedom of Information Act ("FOIA") thereby failing to trigger Plaintiff's administrative exhaustion requirements in the first instance?

2.      Alternatively, whether the Court should exercise its authority to waive administrative exhaustion to maximize judicial economy as well as the parties' resources?

## II.     STATEMENT OF RELIEF

Plaintiffs request that the Court deny Defendant's Motion to Dismiss, ECF No. 18.

## III.    MEMORANDUM AND POINTS OF AUTHORITIES

### A.      INTRODUCTION

Pursuant to Civil Local Rule 7-3, Plaintiffs oppose Defendant Department of Justice ("DOJ")'s motion to dismiss and respectfully request that this Court deny it for two reasons.  First, Defendant incorrectly asserts that Plaintiffs failed to exhaust their administrative remedies as to the EOUSA FOIA request[1] because the EOUSA did not issue a "final determination" that triggered Plaintiffs' administrative exhaustion requirements in the first instance.  *See Aguirre v. Nuclear Regulatory Comm'n*, 11 F.4th 719, 725 (9th Cir. 2021).  Alternatively, for the orderly course of justice and the public interest, Plaintiffs request that this Court waive the exhaustion requirement so that they need not file a new, duplicative FOIA lawsuit to determine the outcome of EOUSA's withholding.

### B.      BACKGROUND

On August 7, 2021, Plaintiffs submitted four identical FOIA requests to four government agencies: the U.S. Department of State and three DOJ components: EOUSA, the DOJ Criminal Division ("DOJ-CRM"), and the Drug Enforcement Administration ("DEA") (collectively, "Defendants").  Pls. First Amended Compl. ("FAC"), ¶¶ 1, 31.  Plaintiffs submitted the four identical FOIA requests to all four Defendants on August 7, 2021.  *Id.* at ¶¶ 31, 41, 49, 55.  Two of the three DOJ components—DOJ-CRM and DEA—denied Plaintiffs' requests on identical grounds, on September 21, 2021 (DOJ-CRM)

---

[1] Plaintiffs immediately amended their complaint upon learning of the EOUSA letter.  *See* Decl. of Shawn Musgrave in Support of Pls. Opp. to Def. Mot. to Dismiss ("Musgrave Decl."), ¶¶ 4-7.

1    and October 22, 2021 (DEA).  *Id.* at ¶¶ 34, 44.[2]  Because DOJ-CRM and DEA are components of the

2    same agency and their justifications were identical, Plaintiffs submitted a combined administrative

3    appeal on November 2, 2021 to DOJ.  *Id.*  Unaware of the EOUSA letter, CIR did not include it in the

4    combined appeal.  Musgrave Decl., ¶¶ 4-6.  DOJ did not respond to Plaintiffs' combined appeal, making

5    it ripe for litigation.  FAC at ¶¶ 37-39.

6          On September 28, 2021, the remaining DOJ component, EOUSA, had also sent a communication

7    to Plaintiffs denying their request.  *Id.* at ¶ 52, Ex. S.  The letter used boilerplate language that did not

8    appear to be tailored to Plaintiffs' request.  *Id.*  While Plaintiffs were not aware of this denial letter prior

9    to commencing this litigation and did not cite it in their initial complaint, Pls.' Compl., ECF No. 1, as

10   soon as Defendant informed Plaintiffs of the EOUSA letter, Plaintiffs immediately searched their files,

11   located it, and filed an amended complaint on February 18, 2022.  Musgrave Decl., ¶¶ 4-7; FAC, ECF

12   No. 15.  In their amended complaint Plaintiffs alleged EOUSA failed to issue a legally sufficient final

13   determination, FAC at ¶ 35, and as such Plaintiffs constructively exhausted their administrative

14   remedies.  *Id.* at ¶ 63.

15         Defendant DOJ, solely on behalf of EOUSA, moved to dismiss on the basis that Plaintiffs failed

16   to exhaust their administrative remedies.  ECF No. 18.  Defendant's motion should be denied.

17         **C.     LEGAL STANDARDS**

18         Under FOIA, "a requestor must exhaust his administrative remedies under FOIA ***so long as an***

19   ***agency properly responds*** before suit is filed."  *Aguirre*, 11 F.4th at 725 (emphasis added).  To trigger

20   the administrative exhaustion requirement, an agency's response must be a final "determination" that

21   satisfies 5 U.S.C. § 552(a)(6)(C)(i).  That is, the agency "must at least . . . communicate" (1) "the scope

22   of the documents [the agency] intends to produce and withhold," and (2) "the reasons for withholding

23   any documents."  *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180,

24

25   _____

26   [2] Like the EOUSA denial, neither the DOJ-CRM nor DEA denials addressed the foreseeable harm standard or provided an estimate of the volume of withheld records.  *Id.* at ¶¶ 35, 45, Ex. I.  Plaintiffs therefore assert that none of these denials qualified as final "determinations" legally sufficient to trigger administrative exhaustion.  However, Plaintiffs appealed the DOJ-CRM and DEA denials for expediency and thoroughness.

27

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
NO. 21-CV-09613-SK

1    188 (D.C. Cir. 2013) (hereinafter "*CREW*"); *see also Aguirre*, 11 F.4th at 726 n.1 (citing *CREW* to

2    delineate the requirements for a "proper response"). It is irrelevant to the inquiry whether the

3    government itself labels its communication as a "final determination." *Cf.* Def. Mot. 7 (noting

4    EOUSA's characterization of its denial as a "final response" without citing authority for relevance). The

5    purpose of this inquiry under *CREW* is to determine whether a requester has "all that he needs to

6    appeal." *Machado Amadis v. Dep't of Justice*, 388 F.Supp.3d 1, 13 (D.D.C. 2019), *aff'd sub nom.*

7    *Machado Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020); *see also CREW*, 711 F.3d at 186

8    (describing a "Catch-22" that emerges when an agency "has not provided the necessary information" to

9    file a meaningful appeal). If an agency fails to issue a sufficient "determination," then the requester has

10    "exhausted its administrative appeal remedies . . . and its suit may proceed." *CREW*, 711 F.3d at 190.

11        A district court "can waive the [administrative exhaustion] requirement" since "[e]xhaustion

12    under FOIA is a prudential rather than jurisdictional consideration." *Aguirre*, 11 F.4th at 725 (citing

13    *Yagman v. Pompeo*, 868 F.3d 1075, 1083-84 (9th Cir. 2017)).

14        A motion to dismiss under Rule 12(b)(6) should be denied if, with all reasonable inferences

15    drawn in the plaintiff's favor, the complaint alleges facts sufficient to state a plausible claim. *Bell Atl.*

16    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

17        **D.    ARGUMENT**

18             **1.    Plaintiffs were not required to file an administrative appeal because**
                         **EOUSA's letter lacked the requisite elements of a "final determination."**

19

20        EOUSA's denial letter failed to satisfy the minimum requirements for a final "determination" in

21    two ways. First, EOUSA failed to address the foreseeable harm standard, which an agency must cite in

22    communicating its "reasons" for withholding records. 5 U.S.C. § 552(a)(8)(A)(i). Second, EOUSA

23    failed to indicate the scope of withheld records. *CREW*, 711 F.3d at 188.[3] As such, Plaintiffs

24    constructively exhausted their administrative remedies prior to filing suit, and EOUSA's motion to

25    dismiss should be denied.

26

27           
---

[3] Plaintiffs do not contest that the EOUSA letter otherwise satisfied the minimum requirements of

28    *CREW*. *See* 711 F.3d at 188.

**(i)** **EOUSA's denial letter does not qualify as a final determination because it failed to address the foreseeable harm standard, as required under the 2016 FOIA Improvement Act and *CREW*.**

EOUSA's denial letter failed to "communicate . . . the reasons for withholding any documents," *CREW*, 711 F.3d at 188, in particular the foreseeable harm requirement.  In 2016, Congress enacted the FOIA Improvement Act ("FIA"), Pub. L. No. 114-185, 130 Stat. 538 (2016), which is an independent standard that mandates: "agencies may only withhold information under a FOIA exemption if the agency 'reasonably foresees that disclosure would harm an interest protected by an exemption.'" *Reporters Comm. for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 357-58 (D.C. Cir. 2021) (hereinafter "*RCFP*") (quoting 5 U.S.C. § 552(a)(8)(A)(i)).[4]  As "apparent from the statutory text [of the FIA] alone," the government "cannot justify its withholding of exempt material without a more particularized inquiry into what sort of foreseeable harm would result" from disclosure.  *Id.* at 369 n.2.  That is, post-FIA, foreseeable harm is one of the required "reasons" an agency must provide to justify withholding records under FOIA, 5 U.S.C. § 552(a)(6)(A)(i), in addition to any applicable exemptions.  If an agency fails to address this requirement in its FOIA denial, it has not communicated its "reasons for withholding", *CREW*, 711 F.3d at 188, and the denial is not a "final determination" triggering administrative appeal requirements.  *Id.*

First and foremost, Congress's statutory language under the FIA requires this conclusion.  *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (holding that in interpreting FOIA, "a court's proper starting point lies in a careful examination of the ordinary meaning and structure of the law itself").  In enacting the FIA, Congress added a mandatory step: that agencies must address foreseeable harm as one of the "reasons" an agency is withholding in addition to the other discretionary exemptions.[5]  *See* 5 U.S.C. §§ 552(a)(6)(A)(i); 552(a)(8)(A)(i).  Because FIA is "an independent and

---

[4] "Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can 'articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld.'"  *RCFP,* 3 F.4th at 369 (quoting H.R. REP. No. 391, 114th Cong., 2d Sess. 9 (2016)).

[5] Congress did not define the word "reasons" in § 552(a)(6)(A)(i).  However, it kept the broad, plural word "reasons" to enumerate agencies' notification obligations to requesters.  P.L. 114-185 at § 2 (revising agencies' notification requirements but retaining requirement to provide the "reasons thereof").

1    meaningful burden on agencies," *RCFP*, 3 F.4th at 369, an agency must "at least" communicate its

2    foreseeable harm analysis as one of its "reasons for withholding" records in its denial letter.  *CREW*, 711

3    F.3d at 188.  If Congress had meant to restrict agencies' notification obligations only as to applicable

4    exemptions, it would have done so.  Instead, under FOIA as revised by the FIA, an agency must

5    communicate *both* any applicable exemptions *and* foreseeable harm as its "reasons" for withholding.

6        Second, while this is a question of first impression in the Ninth Circuit,[6] a majority of courts

7    analyzing the FIA—including the U.S. Court of Appeals for the District of Columbia—have deemed the

8    foreseeable harm requirement mandatory.  *See, e.g.*, *RCFP*, 3 F.4th at 370-72 (finding that FIA is a

9    necessary and independent FOIA standard); *N.Y. Times Co. v. Food & Drug Admin.*, No. 19-CV-4740,

10   2021 WL 1178126, at *11 (S.D.N.Y. Mar. 29, 2021) (same); *Ctr. for Investigative Reporting v. Dep't of*

11   *Labor*, 424 F.Supp.3d 771, 780 (N.D. Cal. 2019) (same); *Ctr. for Investigative Reporting v. Customs &*

12   *Border Prot.*, 436 F.Supp.3d 90, 107 (D.D.C. 2019) (same).  In addition, at least one court has directly

13   found that a denial letter "constituted a final determination" because it addressed foreseeable harm.

14   *Rocky Mountain Wild, Inc. v. Bureau of Land Mgmt.*, No. 17-CV-00636, 2018 WL 11376089, at *5 (D.

15   Colo. Mar. 5, 2018).  *Cf. Khine v. Dep't of Homeland Sec.*, 334 F.Supp.3d 324, 330 n.4 (D.D.C. 2018),

16   *aff'd*, 943 F.3d 959 (D.C. Cir. 2019).[7]

17       Third, Defendant DOJ itself has issued guidance that further supports Plaintiffs' argument.  In

18   March 2022, Attorney General Merrick Garland advised federal agencies to "confirm in response letters

19   to FOIA requesters that they have considered the foreseeable harm standard."  DOJ, Freedom of

20   Information Act Guidelines, Mar. 15, 2022.[8]  According to the Attorney General's guidance, addressing

21

22   [6] *CREW* was decided three years prior to the FIA's enactment and thus the D.C. Circuit did not address
     the foreseeable harm requirement.  *CREW*, 711 F.3d at 188.  And in the sole decision from the U.S.

23   Court of Appeals for the Ninth Circuit to discuss foreseeable harm, the FOIA request at issue was

24   submitted before the FIA was enacted.  *Sierra Club, Inc. v. Fish & Wildlife Serv.*, 925 F.3d 1000, 1010
     n.7 (9th Cir. 2019), *rev'd and remanded on other grounds*, 141 S.Ct. 777 (2021).

25   [7] While *Khine* said FOIA "does not require the agency to disclose information" as to foreseeable harm in
     a determination, this was dicta, issued in a footnote, without substantive briefing on the issue.  334

26   F.Supp.3d at 330 n.4 ("[§ 552(a)(8)(A)(i)(I)] does not require the agency to disclose information to a
     FOIA requester outside of the disclosures required by § 552(a)(6)(A)(i).").  Plaintiffs respectfully

27   disagree with *Khine*'s interpretation based on the text and legislative history, as explained above.

28   [8] *Available at* https://www.justice.gov/ag/page/file/1483516/download.

1  foreseeable harm in determination letters "help[s] ensure proper application of the foreseeable harm

2  standard." *Id.*

3        Here, EOUSA failed even to cite FIA, much less articulate any applicable foreseeable harm.

4  Unlike *Rocky Mountain Wild*, where the FOIA determination letter stated that the agency "reasonably

5  foresee[s] that disclosure would harm an interest protected by one or more of the nine [FOIA]

6  exemptions," 2018 WL 11376089, at *5, here EOUSA's scant denial letter omitted ***any*** mention of FIA.

7  EOUSA thus withheld "necessary information" that Plaintiffs needed to meaningfully appeal its denial

8  on foreseeable harm grounds. *CREW*, 711 F.3d at 186.[9]  According to the language of FIA and several

9  courts' interpretations, this communication fails to qualify as a "final determination" that would trigger

10  further administrative appeal requirements for Plaintiffs to exhaust before filing suit. *Id.* at 190.

11            **(ii)**    **EOUSA's denial letter does not qualify as a final determination**

12                        **because it failed to indicate the scope of withheld documents.**

13        At the outset, Defendant mischaracterizes Plaintiffs' position.  Plaintiffs' do not assert that the

14  government "must identify each potentially responsive document." Def. Mot. 8.  This is not and has

15  never been Plaintiffs' position.  Rather, EOUSA's letter also did not qualify as a final determination

16  because it did not "communicate the scope of the documents" the agency intended to withhold with the

17  requisite specificity.  *CREW*, 711 F.3d at 188; *see also* 5 U.S.C. § 552(a)(6)(F) (requiring agencies to

18  provide a volume estimate upon denying a FOIA request).

19        The plain text of the FOIA statute requires that the government must provide ***some indication*** as

20  to the volume of withheld records.  *See CREW*, 711 F.3d at 186 ("the agency must at least inform the

21  requester of . . . the scope of the documents that the agency plans to withhold"); *cf. Nat'l Sec.*

22  *Counselors v. Cent. Intelligence Agency*, No. CV 12-284, 2013 WL 12324697, at *1 (D.D.C. June 13,

23  2013) (denying reconsideration in light of *CREW* that volume estimate was not required).  Adequate

24

---

25  [9] In their combined appeal to DOJ, Plaintiffs noted that both DOJ-CRM and DEA, like EOUSA, failed

26  to address foreseeable harm in their denials. FAC at ¶¶ 35, 45, Ex. I ("Neither DOJ-CRM nor DEA has
attempted to make any showing of reasonably foreseeable harm that would result from disclosing the

27  requested records").  Although Plaintiffs appealed these denials for expediency and thoroughness,
Plaintiffs maintain that they were not obligated to do so since neither denial had the requisite elements

28  of a "determination" under *CREW* for the same reasons addressed herein regarding EOUSA's denial.

FOIA determinations must provide, at minimum, some additional comprehension of the number of pages, records, or files that are being withheld. *Compare W. Res. Legal Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, No. 3:19-CV-01119, 2020 WL 6829767, at *5 (D. Or. Nov. 20, 2020) (stating agencies' responses "do not constitute determinations" for administrative exhaustion purposes where they "do not inform [the requester] of what the agency intended to produce or withhold"), *with Judicial Watch, Inc. v. Dep't of Justice*, 410 F.Supp.3d 216, 224-25 (D.D.C. 2019) (finding Plaintiffs failed to exhaust administrative remedies where they had actual knowledge of the approximate volume).

Indeed, according to its own longstanding FOIA guidelines, Defendant DOJ admits to this requirement. *See* DOJ, FOIA Update, Vol. XVIII, No. 2 (Spring 1997).[10]  These DOJ guidelines indicate that, at a minimum, an agency must provide an estimate as to the volume and scope of withheld records with some specificity.  The guidelines indicate that such required estimates "may be indicated by the number of pages, number of records, or both, or for large volumes of records, by other measures such as number of boxes, or linear feet of file cabinet drawers." *Id*.  Any of these examples communicate far more detail than EOUSA provided.  *Id*.

Here, EOUSA did not provide the requisite detail regarding the volume or scope.  The EOUSA's boilerplate language merely indicated that the agency was "making all records required to be released, or considered appropriate for release as a matter of discretion, available to you[,]" but that zero pages were being released and zero pages were being withheld. FAC, Ex. S at 2.[11]  This boilerplate response, that does not seem tailored to Plaintiffs' request, is not only non-sensical but insufficient.  The agency did not explain what files were withheld or the number of pages.  Unlike *Judicial Watch*, Plaintiffs did not have knowledge of the approximate volume of withholding when EOUSA said the agency was "making all records require to be released" and at the same time "0 page(s) are being released in full." *See* 410 F.Supp.3d at 224.

Omissions like EOUSA's are not mere minutia or technical deficiencies.  Rather, by failing to

---

[10] *Available at* http://www.justice.gov/oip/foia_updates/Vol_XVIII_2/page2.htm.

[11] The letter stated "0 page(s) are being released in full (RIF); 0 page(s) are being released in part (RIP); 0 page(s) are withheld in full (WIF)."  FAC, Ex. S at 2.

1  provide any insight into volume and scope, EOUSA's response failed to provide Plaintiffs with the

2  "necessary information" to meaningfully appeal its denial.  *CREW*, 711 F.3d at 186.  For instance,

3  Plaintiffs were unable to assess or appeal the adequacy of the agency's search for responsive records,

4  which further shows that the government's response did not and could not qualify as a final

5  determination.  *Compare Machado Amadis*, 388 F.Supp.3d at 13 (finding requester had "all that he

6  needs to appeal" where agencies indicated they were not providing any records because none were

7  found).  Without something more, EOUSA's boilerplate response is legally deficient under *CREW*, such

8  that the denial letter did not trigger any administrative exhaustion requirement.  711 F.3d at 190.

9     **2.**  **Even if EOUSA's denial was a "final determination" under FOIA, the Court should exercise its discretion to waive the administrative exhaustion requirement for swift resolution of this case and judicial economy.**

10

11     Even if the Court finds EOUSA's scant denial met the minimum standards to trigger

12  administrative exhaustion, and should have been administratively appealed, the Court should waive the

13  requirement as a matter of prudential discretion for judicial economy, as well as to maximize efficiency

14  of the parties' time and resources.  *Aguirre*, 11 F.4th at 725; *see also Yagman*, 868 F.3d at 1083-84

15  (holding failure to exhaust "does not bear on the district court's subject matter jurisdiction").

16     Based on the factual circumstances, courts have broad discretion to waive the exhaustion

17  requirement where doing so "would not undermine the purposes and policies behind the requirement."

18  *Facebook, Inc. & Subsidiaries v. IRS*, No. 16-CV-05884, 2017 WL 2630086, at *7 (N.D. Cal. June 19,

19  2017) (internal citation and quotation marks omitted).  The purpose of exhaustion is merely to allow the

20  agency "the opportunity . . . to exercise its discretion and expertise and the opportunity to make a record

21  for the district court to review."  *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986) (emphasis in original).

22     In similar circumstances, courts have found it appropriate to waive administrative exhaustion

23  where further administrative proceedings likely would have been futile.  *Aguirre*, 11 F.4th at 725.  For

24  instance, where "two co-plaintiffs jointly asserting precisely the same claim in the same action did

25  exhaust," *Nat'l Sec. Counselors v. Dep't of Justice*, 848 F.3d 467, 470 (D.C. Cir. 2017); and where the

26  same government agency failed to satisfy statutory obligations under FOIA, *Fischer v. F.B.I.*, No. 07-

27  cv-2037, 2008 WL 2248711, at *2 (D.D.C. May 29, 2008), exhaustion was appropriate.

28

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT
NO. 21-CV-09613-SK

1    This is precisely a case where it is appropriate for the Court to exercise its prudential discretion.

2    First, as in *Fischer*, the same agency that now seeks dismissal based on failure to exhaust remedies itself

3    failed to respond to a timely appeal regarding two identical FOIA requests.  2008 WL 2248711, at *2.

4    Where Plaintiffs did exhaust administrative remedies regarding identical FOIA requests and on

5    overlapping grounds, it is appropriate to waive exhaustion.  *Nat'l Sec. Counselors*, 848 F.3d at 470.

6    Second, even if Plaintiffs had received an actual final determination, been aware of it, and

7    included it in the combined administrative appeal of the other two DOJ office denials, the record shows

8    DOJ failed to provide a timely determination regarding that appeal.  FAC, ¶¶ 37-39, 46-47.  There is

9    nothing in the record to suggest that DOJ would have processed any additional portion of Plaintiffs'

10   appeal concerning EOUSA's denial in a timely fashion, either.  Plaintiffs' administrative appeal of

11   EOUSA's hypothetical determination would likely have been futile.

12   Finally, considerations of judicial economy support waiving administrative exhaustion.

13   Plaintiffs submitted four identical FOIA requests to each of the four Defendant agencies, with which

14   Plaintiffs were meticulous and carefully followed all procedural rules in good faith.  Even Plaintiffs'

15   administrative appeals went above and beyond what is generally required of a requester.  If the Court

16   grants EOUSA's motion to dismiss, Plaintiffs will have to file a fifth, identical FOIA request to

17   EOUSA, which presumably will deny it again on identical grounds.  Following an administrative appeal,

18   Plaintiffs anticipate they will need to file another separate FOIA action.  That process will take months.

19   Rather than splinter this matter into two lawsuits, and prolong resolution of identical issues, Plaintiffs

20   request the Court to keep these identical FOIA requests together as filed.

21   **IV.    CONCLUSION**

22   For the foregoing reasons, this Court should DENY DOJ's Motion to Dismiss.

Respectfully submitted,

*/s/ Shawn Musgrave*
D. VICTORIA BARANETSKY
SHAWN MUSGRAVE
Attorneys for Plaintiffs

Dated: April 1, 2022          THE CENTER FOR INVESTIGATIVE REPORTING

By:    */s/ Shawn Musgrave*_____
         D. VICTORIA BARANETSKY
         SHAWN MUSGRAVE
         Attorneys for Plaintiffs

### [PROPOSED] ORDER

Defendant's Motion to Dismiss, ECF No. 18, is DENIED.


IT IS SO ORDERED.


Dated:_____

         _____
         HON. SALLIE KIM
         United States Magistrate Judge