D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

THE CENTER FOR INVESTIGATIVE
REPORTING and ANAYANSI DIAZ-CORTES,

       Plaintiffs,

 v.

UNITED STATES DEPARTMENT OF
JUSTICE, and UNITED STATES
DEPARTMENT OF STATE,

       Defendants.

Case No. 3:21-cv-09613-SK

OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
AND

NOTICE OF CROSS MOTION AND CROSS
MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF CROSS
MOTION FOR SUMMARY JUDGMENT

Date: January 23, 2023
Time: 9:30 AM
Place: Courtroom C, 15th Floor

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES.................................................... 1

I.   INTRODUCTION ........................................................................................................ 1

II.  STATEMENT OF FACTS .......................................................................................... 2

   A.   The U.S. Investigated, Charged, and Arrested Cienfuegos for Injuries Caused to the
   American Public ......................................................................................................... 2

   B.   The U.S. Dropped Charges and Released Cienfuegos To Mexico Breaking With Decades of
   Law Enforcement Practices And Subordinating Justice ........................................... 3

   C.   The United States Mutual Legal Assistance Treaty with Mexico. ......................... 3

   D.   Mexico Violated The U.S.-Mexico MLAT By Releasing Confidential Information From
   The DOJ's Investigation. ........................................................................................... 5

   E.   U.S. Violated the Treaty By Publicly Acknowledging the MLAT Request ........... 6

   F.   CIR FOIA Requests .............................................................................................. 7

III. LEGAL STANDARD .................................................................................................. 8

IV.  ARGUMENT ............................................................................................................... 9

   A.   The Government's Failure to Search Is Improper And Unjustified As A Categorical
   Withholding Under Exemption 6, 7(C), and 3. .......................................................... 9

      1.   The Government Has Failed to Perform an Adequate Search for Records Responsive to
      CIR's FOIA Request .............................................................................................. 9

      2.   The Government's Categorical Withholding Is Unjustified Under the Law of This Circuit
      and Others.............................................................................................................. 11

   B.   The Government Has Unjustifiably Withheld Public Information Pursuant to Exemption 6
   & 7(C).......................................................................................................................... 13

      1.   Exemptions 6 and 7(C) Do Not Apply Because Defendants Failed to Show the Records
      Disclose Private Information .................................................................................. 14

      2.   Exemptions 6 and 7(C) Do Not Apply Because Any Privacy Interest Is Outweighed By
      The Significant Public Interest in the United States' Investigation Into Cienfuegos and Its
      Choice to Release Him. .......................................................................................... 18

   C.   Defendants Improperly Withhold Pursuant to Exemption 3, Where The Criteria of the U.S.-
   Mexico MLAT's Confidentiality Provisions Are Broken. .......................................... 21

   D.   Defendants Fail to Meet FOIA's Foreseeable Harm Standard................................ 25

   E.   A Vaughn Index Would Be Beneficial to the Court's Determination....................... 25

V.   CONCLUSION ............................................................................................................ 25

-ii-

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

# **TABLE OF AUTHORITIES**

**CASES**

*ACLU v. U.S. Dep't of Justice*, 655 F.3d 1 (D.C. Cir. 2011) ...................................................... 20, 21

*ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845 (N.D. Cal. July 1, 2013)...................... 15, 17

*ACLU of N. Cal. v. FBI*, 881 F.3d 776 (9th Cir. 2018) .................................................... 25

*Advocates for Highway & Auto Safety v. Fed. Highway Admin.*, 818 F.Supp.2d 122

(D.D.C. 2011) ................................................................................................................. 18

*Aguirre v. Sec. & Exch. Comm'n*, 551 F. Supp. 2d 33 (D.D.C. 2008).......................................20-21

*Am. Oversight v. GSA*, 311 F. Supp. 3d 327 (D.D.C. 2018) ............................................ 17

*Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504 (D.C. Cir. 2011)...................... 9

*Anguiano v. U.S. Immigration & Customs Enforcement*, Case No.18-cv-01782-JSC (N.D. Cal.

Nov. 13, 2018) ................................................................................................................. 21

*Bast v. Dep't of Justice*, 665 F.2d 1251 (D.C. Cir.1981) ................................................ 17

*Black v. Dep't of Justice*, 69 F. Supp. 3d 26 (D.D.C. 2014) ............................................ 17

*Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626 (9th Cir. 2017)............................................... 15, 18

*Castaneda v. United States*, 757 F.2d 1010 (9th Cir. 1985).......................................... 21

*Cohen v. EPA*, 575 F. Supp. 425 (D.D.C. 1983)........................................................... 21

*Cent. Intelligence Agency v. Sims*, 471 U.S. 159 (1985)................................................ 22

*Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082 (D.C.

Cir. 2014)........................................................................................................................ 16, 21

*Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 982 F.3d 668 (9th Cir. 2020)................. 22

*Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916 (9th Cir. 2021) ................. 22

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976).............................................................8-9, 15, 22

*Dep't of State v. Ray*, 502 U.S. 164, 176–77 (1991) ....................................................... 15

-iii-

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

*Dongkuk Intl., Inc. v. U.S. Dep't of Justice*, 204 F. Supp. 3d 18 (D.D.C. 2016) ............................ 25

*Electronic Frontier Found. v. Office of the Dir. of Nat'l. Intelligence*, 639 F.3d 876

    (9th Cir. 2010) ........................................................................................................ 13, 19

*EFF v. U.S. DOJ*, 4:11-cv-05221-YGR, ECF No. 85 (N.D. Cal. June 13, 2014).......................... 25

*Favish v. Office of Independent Counsel*, 217 F.3d 1168 (9th Cir. 2000)........................................ 25

*Food Mkt'g Inst. v. Argus Leader Media*, 139 S. Ct. 2363 (2019)....................................................... 24

*Founding Church of Scientology of Wash., D.C., Inc. v. Bell*, 603 F.2d 945 (D.C. Cir. 1979) ....... 22

*Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021 (9th Cir. 2008) ........ 15, 18

*Goland v. Cent. Intelligence Agency*, 607 F.2d 339 (D.C. Cir. 1978)................................................. 10

*Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, No. C 11-02267

    DMR (N.D. Cal. Dec. 21, 2012)................................................................................ 12

*Graff v. F.B.I.*, 822 F. Supp. 2d 23 (D.D.C. 2011) ........................................................................ 12

*Grynberg v. U.S. Dep't of Justice*, 302 F. Supp. 3d 532 (S.D.N.Y. 2018)......................................... 25

*Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) ............................................... 10, 22

*Hayden v. NSA*, 608 F.2d 1381 (D.C. Cir. 1979) ...................................................................... 9

*Henry v. Dep't of Justice*, No. C-13-05924 DMR (N.D. Cal. Sep. 1, 2015)................................... 10

*Huggans v. Exec. Office for U.S. Attorneys*, No. 19-cv-02587 (EGS)

    (D.D.C. Mar. 22, 2021) ............................................................................... 12, 13 20, 24

*In re Search of the Premises Located*, 634 F.3d 557 (9th Cir. 2011).................................................. 7

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93 (D.D.C. 2009). ............. 15

*Jurdi v. United States*, 485 F. Supp. 3d 83 (D.D.C. 2020)............................................................ 24

*Kimberlin v. Dep't of Justice*, 139 F.3d 944 (D.C. Cir. 1998) ....................................................... 16

*Lahr v. NTSB*, 569 F.3d 964 (9th Cir. 2009) .......................................................................... 9, 14

*Lane v. Dep't of the Interior*, 523 F.3d 1128 (9th Cir. 2008)......................................................... 9

-iv-

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

*Lawyers' Comm. For Civil Rights v. Dep't of Treasury*, 2008 WL 4482855

    (N.D. Cal. Sept. 30, 2008) ................................................................................ 14

*Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072 (9th Cir. 2004) ................................ 25

*Mobil Oil Corp. v. EPA*, 879 F.2d 698 (9th Cir. 1989) ................................................... 25

*Nat'l Ass'n of Atomic Veterans v. Dir., Def. Nuclear Agency*, 583 F.Supp. 1483 (D.D.C. 1984) ... 18

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ........................ 14

*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ........................................... 9

*Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121 (9th Cir. 2012) ........................... 24

*Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479

    (9th Cir. 1994) ...................................................................................... 15

*Pickard v. Dept. of Justice*, 653 F.3d 782 (9th Cir. 2011) ...................................... 11, 24

*Raimondo v. Fed. Bureau of Investigation*, Case No. 13-cv-02295-JSC

    (N.D. Cal. May. 10, 2016) ...................................................................... 15, 18

*Rojas v. Fed. Aviation Admin.*, 941 F.3d 392 (9th Cir. 2019) ....................................... 19

*Rosenfeld v. U.S. Dep't of Justice*, No. C-07-3240 EMC, 2012 WL 710186

    (N.D. Cal. Mar. 5, 2012). ...................................................................... 17

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ............................................... 24

*Schmidt v. U.S. Air Force*, No. 06-3069, 2007 WL 2812148 (C.D. Ill. Sept. 20, 2007) ................ 20

*Schultz v. FBI*, 63 F. Supp. 3d 1183 (E.D. Cal. 2014) ...................................... 11, 12, 13

*Senate of Puerto Rico v. U.S. DOJ*, 823 F.2d 574 (D.C. Cir. 1987) ................................. 22

*Sierra Club v. EPA*, 505 F. Supp. 3d 982 (N.D. Cal. 2020). ....................................... 15

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994) ................................. 11

*U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993) ......................................... 12

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989). ........... 11

-v-

OPP. TO DEF'S MOT. SUMM. J.; REP. IN SUPP. OF CROSS MOT. SUMM. J.

*U.S. v. Cienfuegos*, No. 19-cr-00366 (E.D.N.Y. October 16, 2020) .................................. 2

*U.S. v. Marquez*, No. 10CR3044 WQH, 2012 U.S. Dist. LEXIS 12429 (S.D. Cal. Feb. 2, 2012) .... 4

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ........................................................ 25

*Wash. Post Co. v U.S. Dep't of Agric.*, 943 F.Supp. 31 (D.D.C. 1996) ............................ 18

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ........................ 9

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ............................................................ 25

*WP Company LLC v. U.S. Dep't of Defense et al*, No. 21-CV-01025 (APM), 2022 WL 4119769

    (D.D.C. Sept. 9, 2022) ........................................................................ 19

*Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681 (9th Cir. 2012) ............................ 14

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985) ...................................................... 9

## STATUTES AND TREATIES

5 U.S.C. § 552(b)(3) ................................................................................ 22-24

5 U.S.C. § 552(b)(6) ............................................................................ 13, 15

5 U.S.C. § 552(b)(7) ............................................................................ 13, 15

Mutual Legal Assistance Cooperation Treaty with Mexico, U.S.-Mex., Dec. 9, 1987, S. Treaty

    Doc. No. 100-13, 1987 WL 890783 ................................................ 4, 22, 23

## OTHER AUTHORITIES

Azam Ahmed & Alan Feuer, *Who Was 'El Padrino,' Godfather to Drug Cartel? Mexico's Defense*

    *Chief, U.S. Says*, N.Y. Times (Oct. 16, 2020), https://nyti.ms/3CYnzTu ...................... 2

Bruce Zagaris & Jessica Resnick, *The Mexico-U.S. Mutual Legal Assistance in Criminal Matters*

    *Treaty: Another Step Toward the Harm*

*onization of International Law Enforcement*, 14 Ariz. J. Int'l & Comp. Law 1 (1997) ................. 3

Christopher Sherman & Mark Stevenson, Mexico says US 'fabricated' charges, releases evidence, AP News (Jan. 15, 2021), https://bit.ly/3EHYzBj ................................................................ 6

Department of Justice, Office of Information Policy, Exemption 6, https://bit.ly/3CFwkAs .......... 17

*Ex-defense minister cleared of drug charges*; *AMLO claims US fabricated evidence*, Mexico News Daily (Jan 15, 2020), https://bit.ly/3D1QF4y .......................................................... 6

FGR, *Comunicado FGR 013/21 FGR Informa*, Jan. 14, 2021, https://bit.ly/3T4Y20B .................. 5

Larry Neumeister, Michael Sisak & Mark Stevenson *US drops case against ex-Mexican general after pressure*, AP News (November 18, 2020), https://bit.ly/3T5qJL1 ...................................... 3

Mark Hosenball and Anthony Esposito, *U.S. 'deeply disappointed' Mexico closed probe of ex-defense minister*, Reuters (Jan. 16, 2021), https://reut.rs/3RYQqeJ ...................................... 6, 7

Mary Beth Sheridan*, López Obrador lashes out at DEA after Mexico exonerates ex-minister on drug charges*, Wash. Post (Jan. 15, 2021), https://wapo.st/3rX3V40 .......................................... 6

Oscar Lopez, *Mexico Exonerates Ex-Defense Chief Who Was Freed by the U.S.*, N.Y. Times (Jan. 14, 2021), https://nyti.ms/3SN1qgD .............................................................................................. 2

Pablo Ferri, Jacobo García, David Marcial Perez, Elías Camhaji Elena Reina, Francisco Manetto, *Miles de mensajes interceptados, fotos e informes*, El País (Jan. 15, 2021), https://bit.ly/3eAU9BK ...................................................................................................................... 6

Parker Asmann, *With the Cienfuegos case, Mexico's justice system will be put to the test*, Mexico Daily News (November 20, 2020), https://bit.ly/3Vt7TyY ............................................................ 3

Press Release, Joint Statement by Attorney General of the United States William P. Barr and Fiscalía General of Mexico Alejandro Gertz Manero, Nov. 17, 2020, *available at* https://bit.ly/3rWoei1 ......................................................................................................................... 3

Secretaría de Relaciones Exteriores, Información sobre el caso del general retirado Salvador Cienfuegos Zepeda, Jan. 15, 2021, https://bit.ly/3MBretT (accessed Sept. 30, 2022) .................. 6

Opp. to Def's Mot. Summ. J.; Rep. in Supp. of Cross Mot. Summ. J.

Secretaría de Relaciones Exteriores (@SRE_mx), Jan. 15, 2021, https://bit.ly/3rTQZvV ............... 6

U.S. Dep't of Justice – Int'l (@USDOJ_Intl), Jan. 16, 2021, https://bit.ly/3TL3i9t .................. 7, 23

Vanda Felbab-Brown, *Cienfuegos and the US-Mexico firestorm*, Brookings, (Nov. 23, 2020),

  https://brook.gs/3CEWrHS ........................................................................................................ 3

Opp. to Def's Mot. Summ. J.; Rep. in Supp. of Cross Mot. Summ. J.

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 23, 2023, at 9:30 a.m., or as soon thereafter as the matter may be heard in Courtroom C, located on the 15th floor of United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Ave., 94102, before the Honorable Magistrate Judge Sallie Kim, the Plaintiffs The Center for Investigative Reporting and Anayansi Diaz-Cortes ("CIR") will, and hereby do, oppose the motion filed by Defendants United States Department of Justice ("DOJ") and the United States Department of State ("State" and, together with DOJ, "Defendants"), and cross move the Court for an order granting for summary judgment in Plaintiffs' favor.

Pursuant to Federal Rule of Civil Procedure 56, CIR respectfully asks that this Court issue an order requiring the government to search, review and release all records, including any necessary redactions, improperly withheld from the public under the Freedom of Information Act Exemptions 3, 6, and 7(C), 5 U.S.C. § 552(b)(3), (6), and (7)(C). This opposition and cross motion is based on this notice of cross motion and motion, the memorandum of points and authorities in support of this opposition and cross motion, the Declaration of D. Victoria Baranetsky ("Baranetsky Decl.") attached exhibits, all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

**RELIEF SOUGHT BY PLAINTIFFS**

Plaintiffs seek an order dismissing Defendants' claims and granting Plaintiffs' motion.

**ISSUES TO BE DETERMINED**

Was Defendants' failure to search and assert a categorical withholding of records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C §§ 552(b) (3), (6), and (7)(C) improper?

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

At issue in this case, are Plaintiffs' FOIA requests for records pertaining to the United States investigation of Mexico's former Secretary of Defense, General Salvador Cienfuegos Zepeda that the U.S. shared with Mexico pursuant to its Mutual Legal Assistance Cooperation Treaty (MLAT). Disclosure is justified because Mexico already released thousands of these records and both countries publicly acknowledged their disclosure, breaking the MLAT's confidentiality requirement.

Defendants erroneously contend that they did not need to fulfill their statutory requirement to search for records but could categorically withhold pursuant to FOIA Exemptions 3, 6 and 7(C). The Court should order for Defendants to search and disclose the requested records because none of FOIA's exemptions apply. The Court should also issue a *Vaughn* index to assist with this disclosure.

First, Defendants incorrectly assert that the records are categorically protected while disregarding its obligatory search requirements. Categorical exemptions are rare in this Circuit and unjustified in this case, where most of the records have already been released by Mexico, acknowledged by the United States, and no further harm is likely to result, so a search is required.

Second, disclosure is necessary because there are no Exemptions 6 and 7(C) privacy interests, as Cienfuegos is already identified and disclosure would not cause harm as Cienfuegos has already been arrested, released, and both governments have closed their cases. Any surviving privacy interest is outweighed by the public interest in the international incident involving a public figure and a massive break in United States policy.

Third, Exemption 3 is unjustifiable because according to statutory interpretation, hornbook definitions, and case law, the MLAT's confidentiality provisions were broken, so the Treaty does not apply. Thus, this Court should deny Defendants' motion and grant CIR's cross motion.

## II.    STATEMENT OF FACTS

### A.    The U.S. Investigated, Charged, and Arrested Cienfuegos for Injuries Caused to the American Public

General Salvador Cienfuegos Zepeda ("Cienfuegos") is Mexico's former Secretary of National Defense who served under President Enrique Pena Nieto from 2012 to 2018 and was arrested by the United States on drug-trafficking and corruption charges. Oscar Lopez, *Mexico Exonerates Ex-Defense Chief Who Was Freed by the U.S.*, N.Y. TIMES (Jan. 14, 2021), https://nyti.ms/3SN1qgD. In August 2019, a federal grand jury secretly indicted Cienfuegos, in the U.S. District Court for the Eastern District of New York ("EDNY"). *See generally* Decl. Re Out-of-District Warrant, *U.S. v. Cienfuegos Zepeda*, No. 19-cr-00366 (E.D.N.Y. Oct 27, 2020), ECF 8-1, available at https://bit.ly/3MFRPWH.[1] Two months later, while traveling through the Los Angeles International Airport, Cienfuegos was arrested by U.S. law enforcement and charged with drug trafficking and money laundering. Azam Ahmed & Alan Feuer, *Who Was 'El Padrino,' Godfather to Drug Cartel? Mexico's Defense Chief, U.S. Says*, N.Y. TIMES (Oct. 16, 2020), https://nyti.ms/3CYnzTu. The DOJ accused Cienfuegos of being the shadowy, high-ranking government official known as "El Padrino" (or "The Godfather") who used the power of the Mexican state while acting as Mexico's Secretary of Defense to aid drug cartel leaders with smuggling thousands of kilos of drugs out of the country into the United States. Motion to Remand, *Cienfuegos*, No. 19-cr-00366, ECF 6, available at https://bit.ly/3MF445J.

Evidence connecting Cienfuegos to the cartels was allegedly found in thousands of intercepted messages exchanged between the former secretary and senior leadership of drug cartel leaders, including the infamous H-2 cartel. *Id*. According to prosecutors, these "intercepted communications amongst the members of the H-2 [were] corroborated by numerous drug seizures of hundreds of kilograms of cocaine, heroin and methamphetamine, as well as the seizure of hundreds of thousands of dollars in drug proceeds in the United States." *Id.*

---

[1] *See also* Indictment, *U.S. v. Cienfuegos*, No. 19-cr-00366 (E.D.N.Y. August 14, 2019), ECF 1-1, available at https://bit.ly/3VKfiKv.

-2-

OPP. TO DEFS' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

### B. The U.S. Dropped Charges and Released Cienfuegos To Mexico Breaking With Decades of Law Enforcement Practices And Subordinating Justice

In "an extraordinary break with decades of U.S. law enforcement practices," the United States agreed to drop drug trafficking charges against Cienfuegos and "release him from U.S. custody." Vanda Felbab-Brown, *Cienfuegos and the US-Mexico firestorm*, BROOKINGS, (Nov. 23, 2020), https://brook.gs/3CEWrHS. "In doing so, the Trump administration made a political decision to subordinate justice and legal proceedings to the foreign policy objective of preserving a less fraught relationship with United States' vital partner and neighbor, Mexico." *Id.* (suggesting "choices were made according to sentiments about personal slights ahead of U.S. national interests").[2] On November 17, 2020, a joint statement by the DOJ and Mexico's National Prosecutor's Office (Fiscalía General de la República, "FGR") acknowledged the investigation and its contents:

> In recognition of the strong law enforcement partnership between México and the United States…the [DOJ] has made the decision to seek dismissal of the U.S. criminal charges against former Secretary Cienfuegos, so that he may be investigated and, if appropriate, charged, under Mexican law. At the request of [FGR], the [DOJ], under the Treaty that governs the sharing of evidence, has provided Mexico evidence in this case and commits to continued cooperation, within that framework, to support the investigation by Mexican authorities.

Press Release, Joint Statement by Attorney General of the United States William P. Barr and Fiscalía General of Mexico Alejandro Gertz Manero, Nov. 17, 2020, *available at* https://bit.ly/3rWoei1. The following day, after a federal judge dropped all the charges, Cienfuegos was released from custody and sent back to Mexico. Parker Asmann, *With the Cienfuegos case, Mexico's justice system will be put to the test*, MEXICO DAILY NEWS (November 20, 2020), https://bit.ly/3Vt7TyY. By the time Cienfuegos returned, the FGR investigation into the former secretary was under way. *See id.* The investigation included a review of the DOJ evidence provided to Mexican authorities under a mutual treaty that governs cooperation between the U.S. and Mexico in criminal matters.

### C. The United States Mutual Legal Assistance Treaty with Mexico.

Since 1977, the United States has entered into Mutual Legal Assistance Treaties ("MLATs") with other nations with the intent of formalizing a "variety of mechanisms for cooperation in criminal matters" between countries. Bruce Zagaris & Jessica Resnick, *The Mexico-U.S. Mutual Legal*

---

[2] *See also* Larry Neumeister, Michael Sisak & Mark Stevenson *US drops case against ex-Mexican general after pressure*, AP NEWS (November 18, 2020), https://bit.ly/3T5qJL1.

*Assistance in Criminal Matters Treaty: Another Step Toward the Harmonization of International Law Enforcement*, 14 ARIZ. J. INT'L & COMP. LAW 1, 6 (1997).

The United States maintains one such bilateral treaty with Mexico, made effective in 1991. *Id.* at 23. As stated in the President's message to Congress, the purpose of this MLAT is to "counter more effectively trans-border criminal activities." Mutual Legal Assistance Cooperation Treaty with Mexico, U.S.-Mex., Dec. 9, 1987, S. Treaty Doc. No. 100-13, 1987 WL 890783 at *1 [hereinafter MLAT]. This MLAT "provides a broad range of cooperation in criminal matters including…the provision of documents, records and evidence." *U.S. v. Marquez*, No. 10CR3044 WQH, 2012 U.S. Dist. LEXIS 12429, at *13–*14 (S.D. Cal. Feb. 2, 2012). It also "provides that the government of one nation may request the assistance of the other nation on a broad range of matters related to the 'investigation, prosecution, and prevention of crimes.'" *Id.* at *14 (quoting MLAT art. 1 § 1).

A key element to the U.S.-Mexico MLAT, is that it prohibits the requesting party from using any information or evidence obtained under the treaty for purposes other than those stated in the request *without the prior consent of the requested Party*. MLAT art. 6 § 1 (emphasis added). The treaty also contains two specific confidentiality provisions that apply to the sharing of documents, records and evidence in bilateral communications. The first provision in Article 4 covers requirements concerning the confidentiality of "a request and its contents" and the second provision in Article 6 covers requirements covering the confidentiality of "information or evidence furnished" pursuant to such a request. MLAT art. 4 § 5, 6 § 2. Both the requested state and the requesting state have obligations under MLAT to protect shared confidential information. *Id.* Violation of the MLAT restrictions through disclosure by *either state* constitutes a breach of the bilateral treaty. *Id.*

The United States has previously disclosed requests that it has made pursuant to the MLAT on a number of occasions. For example, on July 19, 2004, the American Embassy in Mexico sent a cable to the Department of State that discusses collaboration between the United States and Mexican Governments in their efforts to reduce human trafficking and references a request made pursuant to the MLAT. *See* (Baranetsky Decl., Ex. 1 (2004 Cable)). This cable, that was obtained pursuant to FOIA, notes that an MLAT request made by federal prosecutors was in the process of being approved, so "prosecutors were not able to speak with the victims on their first trip to Mexico . . . [as

a] result of showing up…before their MLAT [] was actually approved….” *Id.* at 3. Another cable, dated May 6, 2011 and sent from the Secretary of State goes into considerable detail about a separate MLAT request by the United States. *See* (Baranetsky Decl., Ex. 2 (2011 Cable)). The cable identifies various documents such as "sworn declarations" of four named defendants in a United States criminal matter "that were provided to the United States in response to a [MLAT] request." (*Id.* at 2.)

The United States has also disclosed requests made by counterpart nations pursuant to MLATs, including Mexico under the Mexican MLAT. For example,

- On June 21, 2010, the U.S. Embassy in Mexico sent a since-declassified cable to the Secretary of State that described "a meeting . . . regarding the June 7 death of [a] Mexican teenager . . . who was killed after a U.S. CBP agent at the El Paso - Ciudad Juarez border fired his service gun" and that stated that the Mexican Government "has filed a request for information and evidence under the [MLAT] and continues to stress the "urgent need" for information, such as the identity of the CBP agent, and in particular footage of the event which they understand that CBP has in its possession." (Baranetsky Decl., Ex. 3 at 1. (2010 Cable)).

- In 1997, the American Embassy in Switzerland described the Swiss Attorney General's plan to travel to Texas "to conduct interviews authorized by [DOJ], pursuant to a [MLAT] Request" related to an investigation of a former Mexican president's family. (Baranetsky Decl., Ex. 4 at 1 (Switzerland Cable)).

- In 2004, the American Embassy in Honduras sent a cable stating that the "Honduran Public Ministry requested information from the U.S. [] by means of an [MLAT] to substantiate their claim" that certain assets seized were "derived from illegal activities." (Baranetsky Decl., Ex. 5 at 1 (Honduras Cable)).

- More recently, in 2010, an officer with the State Department's Office of Children's Issues sent correspondence referencing MLAT requests from the Guatemalan Government to then-Secretary of State Clinton: [T]he former First Lady of Guatemala handed Secretary Clinton a packet containing adoption files and copies of MLAT requests for three children adopted by American citizen[s] and living in the U.S. who are now alleged by Guatemalan women to be their abducted children. As a result of these allegations, [officials, including DOJ have] met. (Baranetsky Decl., Ex. 6 at 13-14 (Guatemala E-mail Correspondence)).

### D. Mexico Violated The U.S.-Mexico MLAT By Releasing Confidential Information From The DOJ's Investigation.

On Friday, January 15, 2021[3], after a seven-year investigation by the United States, FGR announced that it wholly disproved the U.S. charges against Cienfuegos. *Id.* The Mexican government released its "conclusion" that "[Cienfuegos] never had any meeting with the criminal

---

[3] The FGR initially announced on Thursday, January 14, 2021 that it would not be bringing charges against Cienfuegos. FGR, *Comunicado FGR 013/21 FGR Informa*, Jan. 14, 2021, https://bit.ly/3T4Y20B.

organization investigated by American authorities, and that he also never had any communication with them, nor did he carry out acts to protect or help those individuals." *Id.* Mexican President López Obrador backed the decision by publicly defending Cienfuegos and accusing the DEA of fabricating the case. Mary Beth Sheridan*, López Obrador lashes out at DEA after Mexico exonerates ex-minister on drug charges*, WASH. POST (Jan. 15, 2021), https://wapo.st/3rX3V40.[4]

Hours later under instruction from the Mexican President, the Mexican Foreign Ministry, in contravention of the U.S.-Mexican MLAT, publicly released hundreds of pages of the DOJ investigative file provided to the FGR at its request under the MLAT. *Id.*[5] The Foreign Ministry released the 751-page file on its website and Twitter. Secretaría Relaciones Exteriores ("SRE") (@SRE_mx), Jan. 15, 2021, https://bit.ly/3Dj8En0.[6] The public disclosure included a cover letter dated October 29, 2020 from the then Acting Administrator of the DEA, Timothy Shea, to the Mexican Foreign Secretary. *Id*. at 1-3. The letter clearly indicates that evidence "central to the indictment of Cienfuegos" were attached and explains *how* the DEA obtained key evidence regarding Cienfuegos via intercepted communications, physical drug seizures, and cooperating witnesses, who gave details about H2 cartel operations. *Id.* The materials include detailed transcripts of text messages, Blackberry messenger screenshots, and photographs with individuals. *Id*. at 7-751.[7] On Saturday, Mexico released another massive cache, "compris[ing] thousands of pages" of documents relating to the case. Mark Hosenball & Anthony Esposito, *U.S. 'deeply disappointed' Mexico closed probe of ex-defense minister*, REUTERS (Jan. 16, 2021), https://reut.rs/3RYQqeJ.

**E.    U.S. Violated the Treaty By Publicly Acknowledging the MLAT Request**

In response to this public disclosure, DOJ officials publicly acknowledged the released investigative files about Cienfuegos and rebuked the disclosure by Mexico as being in contravention

---

[4] *See also* Christopher Sherman & Mark Stevenson, Mexico says US 'fabricated' charges, releases evidence, AP NEWS (Jan. 15, 2021), https://bit.ly/3EHYzBj.

[5] *See also Ex-defense minister cleared of drug charges*; *AMLO claims US fabricated evidence*, MEXICO NEWS DAILY (Jan 15, 2020), https://bit.ly/3D1QF4y.

[6] Mexico also released the records on its website. SRE, *Información sobre el caso del general retirado Salvador Cienfuegos Zepeda*, Jan. 15, 2021, https://bit.ly/3MBretT (accessed Sept. 30, 2022); *see also* Dkt. 1, Ex. 1 & 2.

[7] *See also* Pablo Ferri, Jacobo García, David Marcial Perez, Elías Camhaji Elena Reina, Francisco Manetto, *Miles de mensajes interceptados, fotos e informes*, EL PAÍS (Jan. 15, 2021), https://bit.ly/3eAU9BK.

of the MLAT. On January 16, 2021, the day after the materials were shared online, including on Twitter and the same day the second batch of materials were publicly shared by Mexico, the DOJ released the following statement acknowledging the abrogation of the MLAT:

> The United States [DOJ] is […] deeply disappointed by México's decision to publicize information shared with México in confidence. Publicizing such information violates the Treaty on Mutual Legal Assistance between México and the United States, and calls into question whether the United States can continue to share information….

U.S. Dep't of Justice – Int'l (@USDOJ_Intl), Jan. 16, 2021, https://bit.ly/3TL3i9t. The DOJ further acknowledged and attested to the veracity of the information released by Mexico saying, "documents show the case against Cienfuegos was not fabricated, and the information was lawfully gathered in the United States through a proper U.S. court order, in full respect of Mexico's sovereignty." *Id.* DOJ prosecutors stated further, that a U.S. federal grand jury "had analyzed that material and other evidence and concluded that criminal charges against Cienfuegos were supported by the evidence." *Id*. The Department also maintained that it "fully stands by its investigation and charges" against the retired general. *Id*.; *see also* Hosenball & Esposito, *supra* at 6.

### F. CIR FOIA Requests

On August 7, 2021, CIR's staff reporter Anayansi Diaz- Cortes submitted four identical FOIA requests related to the Cienfuegos investigation. Pls.' First Amended Compl. ("FAC") Dkt. 15 at ¶¶ 31, 41, 49, 55. The requests were submitted to four government agencies: the U.S. Department of State and three DOJ components: EOUSA, the DOJ Criminal Division ("DOJ-CRM"), and the Drug Enforcement Administration ("DEA") (collectively, "Defendants"). *Id.* at ¶¶ 1, 31.

The requests sought "all records related in whole or in part to a request for assistance from the Mexican government – whether by the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or some other diplomatic communication – regarding the criminal case United States of America Salvador Cienfuegos Zepeda (CR 19-366)" limited to the time period of September 1, 2020 through December 31, 2020. *Id.* at ¶¶ 32, 41, 49, 55

On August 17, 2021, DOS responded to the FOIA request CIR had submitted with a formal acknowledgment. *Id.* at ¶¶ 55. To date Plaintiffs have not received a final determination regarding

this request. Having exhausted all administrative remedies after a constructive denial of this request, this FOIA matter was ripe for litigation. *Id.* at ¶¶ 56-58.[8]

Two of the three DOJ components—DOJ-CRM and DEA—denied Plaintiffs' request on similar grounds under 5 U.S.C. § 552(b)(7)(C) on September 21, 2021 (DOJ-CRM) and on October 22, 2021 (DEA), respectively. *Id.* at ¶¶ 34, 44. Because DOJ-CRM and DEA are components of the same agency and their justifications were nearly identical, Plaintiffs submitted a combined administrative appeal to DOJ on November 2, 2021. *Id.* DOJ failed to provide Plaintiffs a timely appeal determination within 20 business days of receipt as is required by law under 5 U.S.C. § 552(a)(6)(A)(ii), thus having exhausted all administrative remedies, these two denials were ripe for litigation. *Id.* at ¶¶ 37-39. When the combined DOJ appeal was filed, CIR was unaware that on September 28, 2021, the remaining DOJ component, EOUSA, had also sent a denial to Plaintiffs, so it was not included in the appeal letter.

Plaintiffs initiated this FOIA action on December 13, 2021. Dkt. 1. The Complaint cited Plaintiffs' request to the EOUSA but not the agency's denial, given Plaintiffs were unaware of it. *Id.* As soon as Defendant informed Plaintiffs of the EOUSA response, Plaintiffs immediately searched their files, located the letter, and filed an amended complaint on February 18, 2022. *See* Dkt. 15. Defendant DOJ moved to dismiss case, alleging that Plaintiffs had failed to exhaust all administrative remedies by not appealing the EOUSA response. Dkt. 18. Plaintiffs alleged EOUSA failed to issue a legally sufficient final determination, so the action was ripe due to constructive exhaustion. Dkt. 24. On May 19, 2022, the court waived the exhaustion requirements for reasons of judicial economy and denied the DOJ's motion to dismiss. Dkt. 29 at 7-8. Defendants still oppose disclosure. Dkt. 36.

## III.    LEGAL STANDARD

FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempt[] under clearly delineated statutory language." *Dep't of Air Force v. Rose*, 425 U.S. 352, 360–61 (1976) (citations omitted). The agency invoking an exemption "bears the burden of demonstrating that the exemption properly applies to the documents." *Lahr v. NTSB*, 569

---

[8] According to the Government's Brief, DOS categorically denied Plaintiffs' FOIA request on September 2, 2022 refusing to conduct a search under FOIA Exemptions 3, 6, and 7(C). Gov't Br. at 14. This denial was sent subsequent to the filing of Plaintiffs' complaint.

F.3d 964, 973 (9th Cir. 2009). Exemptions are interpreted narrowly. *Id.* While the agency may meet its burden with declarations providing reasonable factual specificity, *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008), conclusory and generalized allegations are insufficient. *See Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011). A court reviews an agency's decision *de novo. Hayden v. NSA*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## IV.   ARGUMENT

### A.  The Government's Failure to Search Is Improper And Unjustified As A Categorical Withholding Under Exemption 6, 7(C), and 3.

The government has failed to meet its basic requirement of conducting any search, let alone an adequate search which is fatal to its summary judgment motion. *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). Instead of providing a search, Defendants brazenly assert that they need not fulfill this fundamental statutory requirement because they "categorically withheld" the records pursuant to Exemptions 3, 6, and 7(C). This justification fails under the law of this Circuit and perverts FOIA's basic search requirement. For this reason alone, this Court should deny the government's motion for summary judgment and grant CIR's cross motion for summary judgment.

### 1.    The Government Has Failed to Perform an Adequate Search for Records Responsive to CIR's FOIA Request

FOIA's most basic requirement is that an agency responding to a request must conduct a reasonable search "calculated to uncover all relevant documents." *Zemansky*, 767 F.2d at 571; *see* 5 U.S.C. § 552(a)(3)(C). While there is "no requirement that an agency search every record system," the agency must conduct—at a minimum—a good faith search of those systems likely to possess the requested records. *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *see also Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) ("An agency is required to perform more than a perfunctory search…"). To that end, the responding agency typically submits affidavits that describe the scope and methods employed; these showings must be "reasonably detailed, nonconclusory affidavits." *Lahr*, 569 F.3d at 986 (citations omitted).

First and foremost, the government plainly admits that the agencies failed to conduct any search—even a perfunctory one. On the last page of its brief the government plainly states that

"Defendants properly refused to search for *any* potentially responsive records." Gov't Br., Dkt. 36 at 25 ("Gov. Br.") (emphasis added); *see also* Decl. of Alieu D. Kargbo in Supp. Of Defs.' Mot. for Summ. J., ¶¶ 13, 18, 22 ("Kargbo Decl.") (stating that merely searching for records related to Cienfuegos would constitute an unwarranted invasion of privacy); Decl. of Kara Cain in Supp. Of Defs.' Mot. For Summ. J., ¶ 12 ("Cain Decl.") (stating "a search was not required to be conducted" because of the categorical denial without providing any further justification); Decl. of Angel Hertel in Supp. Of Defs.' Mot. For Summ. J., ¶¶ 32, 41 ("Hertel Decl.") (same). Indeed, the Department of State's declaration did not even provide a justification for failing to conduct a search. *See generally* Decl. of Susan C. Weetman in Supp. Of Defs.' Mot. For Summ. J. ("Weetman Decl.") (failing to address or even mention the agencies' failure to conduct a search). While a perfect search is not required, a requester is, at a minimum, statutorily entitled to a reasonable one. *Cf. Hamdan v. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015) ("the Plaintiffs were entitled to a reasonable search for records, not a perfect one. *And a reasonable search is what they got*") (emphasis added); *Henry v. Dep't of Justice*, No. C-13-05924 DMR, 11 (N.D. Cal. Sep. 1, 2015) ("Hardy describes the search undertaken in response to Plaintiffs' requests, stating that 'the FBI conducted a three-way phonetic search of its automated and manual indices to the CRS' using variants of Plaintiffs' names for the requested time periods"). Unlike *Hardy* and even *Hamdan*, here, *no search was performed*.

Second, none of Defendants' declarations sufficiently justify why no search was conducted. Here, the declarations use generalized and conclusory statements to explain why no search was conducted. *Compare* Hertel Decl. ¶ 32, 41 (stating conclusively that the DEA's refusal to search was justified without any further specificity); *see generally* Weetman Decl. (failing to even mention the agency's failure to search) *with Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978) (explaining that the government bears the burden to show that "*each document* that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.") Courts find that such a failure "to describe in *any* detail what records were searched, by whom, and through what process[]" is fatal to summary judgment. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994).

## 2. The Government's Categorical Withholding Is Unjustified Under the Law of This Circuit and Others.

The government asserts that the agencies did not conduct searches because the records were categorically exempt, Hertel Decl. ¶¶ 14, 31; Cain Decl. ¶¶ 12; Kargbo Decl. ¶¶ 7, 23, 29, but this case is not suitable for a "categorical exemption" response for several reasons.

*First*, "categorical exemptions" are almost exclusively used in cases where the government has provided a Glomar response, which does not exist here. *See Schultz v. FBI*, 63 F. Supp. 3d 1183, 1189 (E.D. Cal. 2014) (""[A] *Glomar* response is 'permitted only when confirming or denying the existence of records would itself cause harm cognizable under a FOIA exception.'") As the Ninth Circuit has stated, in an analogically similar case, where records have been "officially confirmed" and "a *Glomar* response is unavailable, and the agency must acknowledge [their] existence," so categorical exemptions are improper. *Pickard v. Dept. of Justice*, 653 F.3d 782, 786 (9th Cir. 2011). Here, with no Glomar response, a categorical exemption is unavailable.

*Second*, a categorical exemption is unjustified in this case because there are a multiple kinds of records at issue in this case. In *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, the Supreme Court permitted another narrow circumstance for categorical exemptions (in addition to *Glomar*): "in the *very limited context* of FOIA requests for production of 'rap sheets'" because of the specific privacy disclosure that those type of records (rap sheets) created. *Schultz*, 63 F. Supp. 3d at 1190 (quoting *Reporters Comm.*, 489 U.S. 749, 773 (1989)). The Supreme Court in *Reporters Comm.* was explicit that its categorical approach was authorized only for "*a discrete category of exempt information.*" *Id*. 489 U.S at 779. Here, Plaintiffs' FOIA requests "do not request information from a *discrete category* of information" such as, a single type of form or document, so a categorical withholding is improper according to case law. *Id*; *see also Schultz*, 63 F. Supp. 3d at 1190 (denying categorical approach where "Plaintiff's FOIA request encompasses far more than rap sheets or any other single discrete category of document").

*Third*, this Circuit and others, have not permitted a liberal interpretation of categorical exemptions, as they circumvent FOIA's basic requirement for search and review of individual records. *See Schultz* 63 F. Supp. 3d 1190–91 (stating the "approach required by the Ninth Circuit" demands that "district courts are required to review agency invocations of FOIA exemptions

-11 -

OPP. TO DEFS' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

de novo and on a document by document basis absent a very narrow range of exceptions."). As this Court stated in, *Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, where an "[agency] makes no attempt to search for responsive documents and, instead, summarily refuses to produce any records pursuant to FOIA….This blanket refusal to disclose, or even examine, records is not consistent with the agency's disclosure obligations," No. C 11-02267 DMR, 17 (N.D. Cal. Dec. 21, 2012), and summary judgment should be found in favor of Plaintiffs. Beyond the Ninth Circuit, several other courts have "treated with restraint" "further attempts to enlarge [categorical exemptions under *Reporters Comm.*]." *Id.* (citing *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 177–78 (1993) (stating Supreme Court declines to extend *Reporters Comm.* to permit categorical exemptions under Exemption 7(D))). And even though the D.C. Circuit has expanded the "scope and applicability" of *Reporters Comm.*, the D.C. Circuit has also warned that "categorical exemptions" still have limits. *See Graff v. F.B.I.*, 822 F. Supp. 2d 23, 32 (D.D.C. 2011) ("[W]hile categorical [withholdings] are permissible, there are limits to when they may be employed.")

*Fourth*, this court should employ the more narrow Ninth Circuit standard, as the D.C. Circuit's law does not apply, but even assuming *arguendo* that it did apply, even the D.C. Circuits limits apply in this case making categorical exemption improper. For instance, the Cienfuegos records were publicly acknowledged by U.S. officials. Hertel Decl. ¶¶ 24-26; Weetman Decl. n.1. In *Huggans v. Exec. Office for U.S. Attorneys*, a D.C. Circuit case, which the government repeatedly cites, the court clarified that the categorical exemptions only applied because the party's involvement in the trial was "not acknowledged…by the government." No. 19-cv-02587 (EGS), 18 (D.D.C. Mar. 22, 2021). Here, the case files of Cienfuegos have not only been acknowledged once, but multiple times by the United States government, so no categorical exemption is appropriate.

Fifth, categorical exemptions are inappropriate where there is no possible harm that can result from disclosure, where the case is officially closed. In *Huggans*, the Court endorsed, another D.C. case, where the plaintiff sought all "criminal files referencing a government informant whose identity was public" pertaining to an ongoing case. *Id.* at 21 (citing, *Black v. Dep't of Justice*, 69 F. Supp. 3d 26, 37 (D.D.C. 2014)). In *Black*, the court only upheld the "government's categorical denial and resulting refusal to conduct a search" because "the third-party, who cooperated in a criminal

matter…*could [still] face significant harm if the information sought was disclosed*". *See Huggans* No. 19-cv-02587, at 21 (citing *Black*, 69 F. Supp. 3d at 37) (emphasis added). Here, no such harm exists as both U.S. and Mexico closed their cases against Cienfuegos, so categorical exemption is improper. Weetman Decl. ¶¶ 23-24 (stating "both…have closed").

Last, a "categorical exemption" is unjustified in this case, where there is grave public interest in the records. *See Schultz*, 63 F. Supp. 3d at 1190 ("the fact that Plaintiff's request is at least arguably aimed at [unearthing that adequate *Brady* disclosures were made]" "counsels against categorical examination" as the information serve the public interest). Here, the records, as in *Schulz*, would reveal information about the government's action in an internationally important investigation, strongly leaning against a categorical exemption. *See infra* at 13.

For all of these reasons, the government's categorical withholding and wholesale failure to search was unjustified and summary judgment is proper.

### B. The Government Has Unjustifiably Withheld Public Information Pursuant to Exemption 6 & 7(C).

Exemption 6 and 7(C) both exempt the release of records which would constitute an "unwarranted invasion of *personal* privacy." 5 U.S.C. §§ 552(b)(6), (b)(7)(C) (emphasis added). Exemption 6 covers "personnel and medical files and similar files,"[9] only where disclosure "would constitute a *clearly* unwarranted invasion of personal privacy." *Id.* § 552(b)(6) (emphasis added). Exemption 7(C) covers "records or information compiled for law enforcement" that would result in an invasion of personal privacy. Exemptions 6 and 7(C) are 'essentially the same[,]'" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 n.1 (D.D.C. 2009), and "an agency's burden under Exemption 6 . . . is an 'onerous' one." *Lawyers' Comm. For Civil Rights v. Dep't of Treasury*, 2008 WL 4482855, at *19 (N.D. Cal. Sept. 30, 2008) (citation omitted).

To apply the test for Exemption 6 and 7(C), a Court first determines if "disclosure implicates a personal privacy interest that is "'nontrivial.'" *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 693 (9th Cir. 2012). "If, at step one, the agency fails to establish that disclosing the contested

---

[9] Plaintiffs concede that Exemptions 6's threshold question, as to whether the records are similar files, is likely satisfied. *EFF v. ODNI*, 639 F.3d 876, 885 (9th Cir. 2010) (assuming "without deciding" that the records were similar files).

information would lead to the invasion of a non-trivial personal privacy interest[], the FOIA demands disclosure, without regard to any showing of public interest." *Id.* at 694. On the other hand, if the agency carries its burden of establishing a nontrivial interest, then the Court engages in a balancing test, asking whether the identified privacy interest outweighs the public's interest in the disclosure of information that "would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Lahr v. NTSB*, 569 F.3d 964, 974 (9th Cir. 2009).

At the outset, Defendants' justifications for withholding pursuant to Exemptions 6 and 7(C) is inadequate, as its declarations address this two-part test using only conclusory and boilerplate assertions regarding the supposed privacy interests of Cienfuegos. Hertel Decl. ¶¶ 26, 27; Kargbo Decl. ¶ 28; Weetman Decl. ¶ 25; *see Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) (agency declarations should provide a "relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant," absent which "the agency statement is not accorded deference"). The government cannot and has not enumerated a single tangible privacy interest in this case because Mexico and the U.S. already released Cienfuegos' identity, the investigation material has already largely been released (and was intended to be made public at a U.S. trial), and has been publicly acknowledged by both countries, not to mention both cases are closed. Where no privacy interest exists, the records should be disclosed. *Yonemoto*, 686 F.3d at 694. Nonetheless, should the court find a nontrivial privacy interest, the widespread public interest in this material clearly outweighs any privacy interest. *Id.* at 695.

### 1. Exemptions 6 and 7(C) Do Not Apply Because Defendants Failed to Show the Records Disclose Private Information

To determine whether a disclosure "would constitute a clearly unwarranted invasion or personal privacy," 552(b)(6) and (b)(7), requires an agency to show "some nontrivial privacy interest in nondisclosure" that "is more than de minimis." *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 638 (9th Cir. 2017) (citation omitted). "That determination involves assessing both the nature of the privacy interest at stake and the likelihood that disclosure would lead to its invasion." *Yonemoto*, 686 F.3d at 693. Nontrivial intrusions into privacy include disclosures that would subject individuals to tangible embarrassment, harassment, or the risk of mistreatment which are of "significant

concern." *See Dep't of State v. Ray*, 502 U.S. 164, 176–77 (1991); *see also Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1025–28 (9th Cir. 2008); *Painting Indus. of Haw. Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1483 (9th Cir. 1994).

In general, courts have generally found that the government must specify a clear and obvious privacy interest. As the Supreme Court indicated in *Dep't of the Air Force v. Rose*, "a threat to privacy [that] is conceivable on some generalized, conjectural level is not sufficient to justify evoking Exemption 6." *Yonemoto*, 686 F.3d at 694 (citing 425 U.S. 352, 380 n. 19 (1976)); *see also Sierra Club v. EPA*, 505 F. Supp. 3d 982 (N.D. Cal. 2020). In *Sierra Club*, the government declarations provided "no indication that any [identified persons in the records had] been subject to harassment….[or] would cause stigma." *Id.* Courts find harassment that is merely possible, is too speculative to trigger a sufficient privacy interest. *See id.*; *Raimondo v. Fed. Bureau of Investigation*, Case No. 13-cv-02295-JSC, 12 (N.D. Cal. May. 10, 2016) (finding general assertions regarding privacy interests of third parties were inadequate to allow the court to balance the privacy); *ACLU v. FBI*, No. 12-03728 SI, 2013 WL 3346845, at *7-8 (N.D. Cal. July 1, 2013) (same). Applying this case law, Defendants have failed to meet their burden.

*First* and foremost, Defendants have not pointed to *any* privacy interest in the documents that only pertain to agency actions, such as the timing or procedure of the investigations, and do not pertain to Cienfuegos' actions. The State Department strains to paper over this by stating "all of the records responsive to Plaintiffs' request—including even records reflecting the initial request for assistance itself," Weetman Decl. ¶ 23, would "foreseeably harm the personal privacy of anyone referenced in those records." *Id.* ¶ 25. However, logically, those records would only provide important public information about 1) when the request was made; 2) how; and 3) when the responses were provided by the U.S. and in what manner. This information would only disclose how "[our government agencies] handle[d] the investigation and prosecution of crimes that undermine the very foundation of our government," *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (CREW), and should be disclosed.

*Second*, as to all other records in the investigation which refer to Cienfuegos, Defendants still fail to show a substantial privacy interest because Cienfuegos is already publicly identified. As in

*CREW*, the disclosure of records in this case would not reveal that Cienfuegos "was the subject of an [] investigation." *Id.* at 1092 (stating that concern "is diminished by the 'well-publicized announcement of that very fact.'"); *see also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (prosecutor's public acknowledgment "undoubtedly" diminished his interest in privacy because "the public already knows who he is"). The government's own statements show the absurdity of claiming Cienfuegos has some remaining privacy. The State Department alleges, that "by associating [Cienfuegos] with alleged criminal activities in connection with the Cienfuegos Case" a privacy interest would be revealed. Weetman Decl. ¶ 25; *see also* DEA Hertel Decl. No. 27 ("Disclosure could reasonably be expected to trigger questions about Cienfuegos's association in criminal activity"). But here, there is no question that Cienfuegos is involved in the Cienfuegos case. Indeed, he is its namesake, and the reason why the United States spent unknown amounts of taxpayer dollars and seven years to build a case, charge and publicly arrest him in a national airport. If there was a privacy interest remaining for Cienfuegos, that time has long-passed.

*Third*, Defendants fail to show that disclosure of additional law enforcement materials would harm Cienfuegos where the cases are closed. Defendants fail to identify any harm that *would* result to Cienfuegos but merely state that release "*could*" be expected to subject him to harassment and embarrassment. Hertel Decl. ¶ 27. As in *Sierra Club*, these hypothetical statements are insufficient. 505 F. Supp. 3d at 991–92 (denying summary judgment where EPA presented no evidence of any potential outcome beyond speculation). The government gives "no indication" that Cienfuegos or any other individuals at issue would "[actually be] subject to harassment….[or] stigma." *Id.* Defendants likely have trouble pointing to any possible harm, given that Cienfuegos has not experienced any. After hundreds of pages were released, Cienfuegos was set free once he stepped on Mexican soil and both Mexico and the United States closed their cases. While Defendants are correct in stating that there is stigma inherent in being associated with law enforcement proceedings, *see* Cain Decl. ¶ 22 (citing *Bast v. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir.1981), such cases, including *Bast*, are distinguishable because they only involve *open* proceedings. *See also Black*, 69 F. Supp. at 37) (finding a "compelling privacy interest" for an *ongoing* narcotics case).

*Fourth*, any privacy interest in this case is diminished because the United States and Mexico publicly acknowledged released investigation records, which have also been widely publicized. *Id.* at 14 ("[a]sserting Exemption 7(C) over information available in public sources…the privacy interest must necessarily be less"); *see also ACLU v. FBI*, No. C 12-03728 SI, 2013 WL 3346845, at *7 (N.D. Cal. July 1, 2013) (stating that protesters whose identities were "extensively covered by the news media" have "privacy interests…less than other individuals"); *Am. Oversight v. GSA*, 311 F. Supp. 3d 327 (D.D.C. 2018) (rejecting GSA's privacy argument for emails between President-elect Trump and GSA because the names of the team were already known); Department of Justice, Office of Information Policy, Exemption 6 at 435, https://bit.ly/3CFwkAs (stating "there is generally no expectation of privacy regarding information that is particularly well known or is widely available"). Here, the government tries to minimize the fact that the identities and information surrounding this investigation has already been widely publicized and acknowledged. Weetman Decl. ¶ 26 (admitting that "some persons, including Cienfuegos himself, may have already been referenced in publicly available materials in connection with the Cienfuegos Case"). Where hundreds of pages of information have already been disclosed, acknowledged by both governments, and "extensively" covered by the news media, any privacy interest is trivial.

*Fifth*, Cienfuegos and any public officials noted in this case have "significantly diminish[ed]" privacy interests in this case. *Rosenfeld v. U.S. Dep't of Justice*, No. C-07-3240 EMC, 2012 WL 710186 at *5 (N.D. Cal. Mar. 5, 2012) ("[P]ersons who have placed themselves in the public light, e.g., through politics, or voluntarily participate in the public arena have a significantly diminished privacy interest than others.") For example, in *Rosenfeld*, this court held that a person "closely associated with" former U.S. President Ronald Reagan had a "significantly diminished" privacy interest in information because he was a public figure. *Id.* 4-6. This Circuit has held that information "related to a government employee" demands that "the 'privacy interests [be even further] diminished" especially should they disclose "official misconduct." *Forest Serv. Emps*., 524 F.3d at 1025. Here, the information pertains to United States public officials, including prosecutors and members of various agencies, and how those at the highest levels of U.S. government chose to investigate and arrest Cienfuegos, an international public figure and official, and then let him go.

While Defendants argue that Cienfuegos' role as a *Mexican* public official increases his privacy risk, *see* Weetman Decl. ¶ 29, 30; Hertel Decl. ¶ 30, case law and logic do not support this argument. Regardless, the question at hand, is how *our government chose to act*, regarding this public figure.

*Last*, the government tries to imply in its declarations that the disclosure of this information to the media is *ipso facto* an intrusion of privacy. *See* Hertel Decl. ¶ 27; Kargbo Decl. ¶ 22, 28. But courts have repeatedly held that the fact that disclosure of records may result in news media contact with the related individuals is "not the sort of invasion of privacy envisioned" by Exemption 6 or 7. *Nat'l Ass'n of Atomic Veterans v. Dir., Def. Nuclear Agency*, 583 F.Supp. 1483, 1487 (D.D.C. 1984). *See also Advocates for Highway & Auto Safety v. Fed. Highway Admin.*, 818 F.Supp.2d 122, 130 (D.D.C. 2011); *Wash. Post Co. v U.S. Dep't of Agric.*, 943 F.Supp. 31, 36 (D.D.C. 1996). The only other paltry privacy claim Defendants assert is that Plaintiffs did not provide Cienfuegos' death certificate or privacy waiver.  Hertel Decl. ¶ 20; Kargbo Decl. ¶ 7; Weetman Decl. ¶ 23. But this proof of a negative does not meet the government's burden to *show* a privacy interest. *See, e.g.*, *Raimondo*, Case No. 13-cv-02295-JSC at 12.

### 2.  Exemptions 6 and 7(C) Do Not Apply Because Any Privacy Interest Is Outweighed By The Significant Public Interest in the United States' Investigation Into Cienfuegos and Its Choice to Release Him.

Even in cases where a privacy interest exists, courts will order disclosure of records if there is a sufficient public interest. Courts in this Circuit consider two factors in evaluating the public interest in disclosure. *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 639 (9th Cir. 2017).  First, courts consider, "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 405 (9th Cir. 2019). Second, "the information requested must 'appreciably further' the asserted public interest." *Id*.

The Ninth Circuit has explained, the public interest in disclosure is paramount where it could unearth *possible* corruption or undue influence. *Electronic Frontier Found. v. Office of the Dir. of Nat'l. Intelligence*, 639 F.3d 876, 886 (9th Cir. 2010) (explaining that in cases unveiling undue influence courts rule in favor of disclosure) ("*EFF*"). In *EFF*, the Ninth Circuit, held that "[t]here is a clear public interest in public knowledge of the [identities and] methods through which well-

-18-

connected [public actors] wield their influence." *Id*. at 887. The disclosure outweighed the privacy interests because "[w]ith knowledge of the lobbyists' identities, the public will be able to determine how the Executive Branch used advice from particular individuals and corporations in reaching its own policy decisions." *Id*. at 888. Similarly, in a case from the District of Columbia, the court found "the public has a compelling interest" because the information aided the public "in understanding the extent of influence that foreign powers may have over America's former military leaders." *WP Company LLC v. U.S. Dep't of Defense et al*, No. 21-CV-01025 (APM), 2022 WL 4119769, at *7 (D.D.C. Sept. 9, 2022); *see also Rojas*, 941 F.3d at 406 (stating "privacy interest [was] outweighed by the 'robust interest of citizens' right to know 'what their government is up to'").

Here, Defendants claim Plaintiffs have not identified "any relevant public interest in the release of the requested records that would outweigh Cienfuegos's substantial privacy interests." Hertel Decl. ¶ 29; *see also* Cain Decl. ¶ 18 ("There has been no showing of public interest in the records requested"); Weetman Decl. ¶ 30 ("Plaintiffs do not allege, nor does the scope of Plaintiffs' FOIA request tend to indicate, that they are seeking to shed light on any misconduct, the investigation itself, or any aspect thereof). This statement is patently incorrect.

*First*, there is widespread and substantial public interest in the records because they would further confirm how the U.S. investigated, arrested, and chose to release Cienfuegos, ensuring our governors are kept accountable, *see Reporters Comm.*, 489 U.S. at 773 (explaining "[o]fficial information that sheds light on an agency's performance" merits disclosure). Disclosing these records could answer questions as to how the investigation was conducted, and why it was ultimately dropped, despite the untold amounts of taxpayer dollars that were spent to conduct the seven-year investigation. Moreover, these records might explain whether the decision to release Cienfuegos was "made according to sentiments about personal slights ahead of U.S. national interests," *see* Brookings, *supra*. Disclosure would help disentangle, as in *WP Company*, "the extent of influence that foreign powers may have over America's former military leaders." No. 21-CV-01025 at *7.

*Second*, the public interest demands disclosure given that the records would "appreciably further" what has already been large scale, international interest. In *America Civil Liberties Union v. U.S. Dep't of Justice*, the D.C. Circuit found records covered a "topic of considerable public

interest" and required disclosure because the case had "received widespread media attention." 655 F.3d 1, 12 (D.C. Cir. 2011); *see also Schmidt v. U.S. Air Force*, No. 06-3069, 2007 WL 2812148 at *11 (C.D. Ill. Sept. 20, 2007) (holding records involving an Air Force major should be released because "there was *demonstrated international interest* in the incident").[10] Here, while several of the government declarations try to argue that the international aspect of this case diminishes the public interest in this case, *see* Weetman Decl. ¶ 29, 30; Hertel Decl. ¶ 30, case law suggests the opposite. Indeed, as in *Schmidt*, disclosure about the international incident would give "insight into the way in which the United States government was holding its [its own investigations and procedures in the Cienfuegos case] accountable." *Id.* For example, records further showing when DOJ's response to the MLAT request, in what breadth, depth, and by whom, is sure to tell Plaintiffs and the public more information about how the United States government responded to this international incident.

*Third*, the government tries to allege that the records here are too sensitive to disclose, but agencies are required to release records in the public interest, even if they contain sensitive information, as the kind sought here. For example, in *Aguirre v. Sec. & Exch. Comm'n*, the SEC was ordered to release records concerning a company and its agents' engaging in unlawful trading practices. 551 F. Supp. 2d 33, 47 (D.D.C. 2008). In *Castaneda v. United States*, the Ninth Circuit required the disclosure of files involving an undercover investigation into a food stamp regulation violation. 757 F.2d 1010, 1012 (9th Cir. 1985); *see also Cohen v. EPA*, 575 F. Supp. 425, 430 (D.D.C. 1983) (rejecting 7(C) claim); *ACLU*, 655 F.3d at 12 (disclosing putative 7(C) records regarding "prosecutions in which the defendants were subject to warrantless cell phone tracking" because of "considerable public interest").

*Fourth*, the government tries to analogize this case to *Anguiano v. U.S. Immigration & Customs Enforcement*, Case No.18-cv-01782-JSC, 15 (N.D. Cal. Nov. 13, 2018). But that case only further supports Plaintiffs argument as it contains two important distinctions. First, the privacy

---

[10] In contrast courts do not find the public interest is appreciably furthered where individuals simply ask for information to exculpate themselves or to unearth information for reasons of embarrassment. *Cf. Huggans*, No. 19-cv-02587 (EGS), at 23 ("Because Plaintiff's justification is founded. Here, unlike *Huggans* where Plaintiffs tried to obtain exculpatory evidence, the information is only to shed light on a matter of great public interest. in his interest in exculpatory information relating to his own prosecution, conviction, and sentencing, it does not render a public benefit.")

interests in *Anguiano*, were substantial, including highly invasive information, like names of low-level ICE employees and data from third parties such as, "names, signatures, biometric information, contact information, phone numbers, postal addresses, email addresses, photographs, dates of birth, state and federal identification numbers." *Id.* at 15. Here, no highly sensitive information like biometric data or home addresses are being sought. Furthermore, no public interest was found in *Anguiano*, unlike in another case the *Anguiano* court distinguished: *CREW*, 746 F.3d 1082, where the documents concerned the FBI's wide-ranging investigation of public corruption related to former lobbyist Jack Abramoff and Congressman Tom DeLay." *Id.* at 17. As *Anguiano* distinguishes, the "privacy interest [in CREW] was DeLay's; he had already publicly identified himself as a target of the investigation, so his interest was not in keeping secret that he was a subject of the investigation, but rather, the contents of the investigation." *Id.* (citing *CREW* at 1091.) This case is nearly identical to *CREW*, where the privacy interest of Cienfuegos, is diminished like Delay's because he has already been publicly identified as the target of the investigation. Moreover, the public interest in this case as in *CREW* is high, as it is focused on "the manner in which the DOJ carries out substantive law enforcement" choices involving "a wide-ranging public corruption investigation…to root out systemic corruption within the highest levels of government." *Id*. at 1093. There, the court found that disclosure of "investigative materials could shed light on how the FBI and the DOJ handle the investigation and prosecution of crimes that undermine the very foundation of our government." *Id*.

Accordingly, the Court should find Defendants' Exemptions 6 & 7(C) claims are unjustified.

### C. Defendants Improperly Withhold Pursuant to Exemption 3, Where The Criteria of the U.S.-Mexico MLAT's Confidentiality Provisions Are Broken.

Exemption 3 allows government agencies to withhold information "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3).[11] When reviewing an agency's withholding of records pursuant to Exemption 3, Courts must consider two questions: "(1) whether there is a statute within the scope of Exemption 3 and (2) whether the requested information falls within the scope of

---

[11] The OPEN FOIA ACT of 2009 added the requirement to Exemption 3 that any future statute Congress intended to operate as an Exemption 3 statute, must include a specific reference to Exemption 3 in its text. OPEN FOIA Act of 2009, Pub. L. No. 111-83, § 564, 123 Stat. 2142, 2184 (2009); *see also Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 982 F.3d 668, 686 (9th Cir. 2020). That requirement has not been satisfied here, but Plaintiffs will focus on why the information simply does not fall within the ambit of the Treaty.

such a statute." *Cent. Intelligence Agency v. Sims*, 471 U.S. 159, 167 (1985). First, in applying this exemption, courts must ask "whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 776 (9th Cir. 2015); (*citing Sims*, 471 U.S. at 167). "If so, courts assess 'whether the withheld records satisfy the criteria of the exemption statute.'" *Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916, 927 (9th Cir. 2021). As to this second question of scope, while a statute may permit agencies to withhold records that fall within its ambit, such an exemption must be construed *narrowly*. *Dept. of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Accordingly, courts have generally refused to draw expansive "veil[s] of secrecy" covering all records connected to a withholding statute. *Senate of Puerto Rico v. U.S. DOJ*, 823 F.2d 574, 582 (D.C. Cir. 1987).

While, Plaintiffs do not contest that the U.S.-Mex. MLAT, T.I.A.S. qualifies as a "statute,"[12] the requested information simply does not fall within the scope of the Treaty because the Treaty was broken. According to simple principles of statutory interpretation, common definitions and case law, the MLAT's T.I.A.S. 91-503's confidentiality provisions were broken when Mexico and the United States waived confidentiality *multiple times*, so Exemption 3 does not apply.

### 1. Withholding Pursuant to Exemption 3 is Unjustified According to Statutory Interpretation of the U.S.-Mexico MLAT's Confidentiality Provisions.

The requested records do not fall under the scope of T.I.A.S. 91-503, because the confidentiality provisions of the U.S.-Mexico MLAT have been violated. The treaty contains two specific confidentiality provisions. The first provision in Article 4 requires confidentiality of "a request and its contents" and the second provision in Article 6 requires confidentiality of "information or evidence furnished" pursuant to such a request. MLAT art. 4 § 5, 6 § 2. Under Article 4, Section 5 of the U.S.-Mexico MLAT, T.I.A.S. 91-503 "[t]he requested State shall keep confidential a request and its contents unless otherwise authorized by the Coordinating Authority of the requesting Party." And under Article 6, Section 2, "the requested Party may request that information or evidence furnished be kept confidential[.]" MLAT art. 6 § 1. Both the requested state

---

[12] While Exemption 3 is explicitly confined to records exempt from disclosure by a statute, *Found. Church of Scient. v. Bell*, 603 F.2d 945, 952 (D.C. Cir. 1979), Plaintiffs concede the MLAT likely qualifies as a statute. *In re Search of the Premises Located*, 634 F.3d 557, 568 (9th Cir. 2011) (a treaty "stands on the same footing as a federal statute.").

and the requesting state have obligations to protect the confidential information, *id.* so violation of the MLAT through disclosure by *either state* constitutes a breach of the bilateral treaty. *Id.*

Here, according to the plain text of the statute, neither country fulfilled its obligation. Under Article 4, the United States was required maintain the secrecy of the request and its contents in order for the confidentiality provision to remain effective, but twice broke that obligation. First, in the November 2020 joint press release, U.S. officials acknowledged that Mexico had requested evidence regarding Cienfuegos and that the U.S. provided evidence "under the Treaty that governs the sharing of evidence." Joint Statement, *supra* at 3. Subsequently, in 2021 the United States government publicly acknowledged the records Mexico disclosed and verified them. *See* U.S. Dep't of Justice – Int'l (@USDOJ_Intl), *supra* at 7. Where the MLAT's absolute language requires "[t]he requested State *shall* keep confidential" and Exemption 3 demands narrow application, no Treaty applies.

Additionally, according to Article 6,[13] Mexico was required to protect the confidentiality of the sensitive records and materials provided to it under its request. Mexico publicly acknowledged its MLAT request in at least four official press statements released by the FGR[14], then published over 700-pages and further published several more thousands of pages the very next day. Immediately after release, the U.S. government confirmed on Twitter that this behavior alone violated the MLAT agreement. *See* U.S. Dep't of Justice – Int'l, *supra* (stating "Publicizing…violates the [MLAT]").

Defendants assert that the "United States has not waived the confidentiality provisions of the MLAT" because a party "cannot unilaterally waive the confidentiality provisions." Gov. Br. at 24. However, that statement is incorrect according to the plain reading of the MLAT, which does not require unanimity. To assert this position Defendants merely state "Defendants cannot unilaterally waive *without citing to any portion of the MLAT*. *Cf.* Gov. Br. at 24. Regardless, the U.S. broke the confidentiality provisions of the MLAT, through the November 2020 joint press release and subsequently on Twitter conceded that the MLAT was unilaterally broken.[15]

---

[13] Though it remains unclear what exact limitations the U.S. put on the use of the shared information, the U.S. did request confidentiality, as evident from DOJ's January 2021 statement. U.S. Dep't of Justice – Int'l *supra* (stating U.S. shared information "with México in confidence").
[14] *See* Comunicado FGR *supra*; Joint Statement *supra*; Neumeister *supra*; Hosenball *supra*; Weetman Decl. ¶ 6, n.1.
[15] Defendants also try to argue that Exemption 3 applies because the Government did not "officially acknowledge" the records and cites to two cases to illustrate this point. *See* Gov. Br. at

### 2. Hornbook Definitions of "Confidentiality" Confirm The MLAT's Confidentiality Provisions Were Broken.

In addition to the plain reading of this statute, common dictionary definitions of the word "confidential" also support that the MLAT's provisions were broken. *See*, *e.g.*, Webster's Third New International Dictionary 476 (1961) ("known only to a limited few" or "not publicly disseminated"); Black's Law Dictionary 370 (rev. 4th ed. 1968) ("intended to be held in confidence or kept secret"). These hornbook principles applied in other areas of law also show that information must be kept secret to qualify as "confidential," and that confidentiality is lost once the information is shared. *Food Mkt'g Inst. v. Argus Leader Media*, 139 S. Ct. 2363, 2635 (2019) ("it is hard to see how information could be deemed confidential if its owner shares it freely"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade secret" there is "no…confidentiality"); *Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121, 1126–27 (9th Cir. 2012) (noting "voluntarily disclosing privileged documents to third parties will generally destroy the privilege"); *Mobil Oil Corp. v. EPA*, 879 F.2d 698, 700 (9th Cir. 1989) ("Voluntary disclosure of documents, either in whole or in part…waive FOIA exemptions.") Here, the release of hundreds of pages and the public acknowledgments by both countries broke the MLAT's provisions.

### 3. Caselaw Concludes That The MLAT's Provisions Were Broken.

Defendants fail to discuss the only two cases interpreting MLAT Treaties when considering the scope of the Treaty, *see* Gov. Br. at 24 (failing to cite *Dongkuk Intl., Inc. v. U.S. Dep't of Justice*, 204 F. Supp. 3d 18 (D.D.C. 2016) and *Grynberg v. U.S. Dep't of Justice*, 302 F. Supp. 3d 532, 540 (S.D.N.Y. 2018)), likely because they support Plaintiffs' conclusion that the Treaty was broken. *Dongkuk Intl., Inc*, stands in direct juxtaposition to this case. There, the court affirmed the DOJ's withholding simply on the basis that the requesting state (South Korea) asked that the U.S. keep

---

20-21 (citing *Jurdi v. United States*, 485 F. Supp. 3d 83 (D.D.C. 2020) and *Huggans v. Exec. Office for U.S. Attorneys*, No. 19-cv-02587 (EGS), 14 (D.D.C. Mar. 22, 2021)). This argument conflates the DOJ's public acknowledgment of the MLAT violations with the doctrine of "official acknowledgment." The official acknowledgement doctrine is irrelevant in this case – because it only applies where the government has asserted a Glomar response. *See Pickard v. Dep't of Justice*, 653 F.3d 782, 786 (9th Cir. 2011) (stating a Glomar response is "[refusing] to confirm or deny the existence of records"). Defendants have not asserted a Glomar response here. Moreover, *Jurdi* and *Huggans* are distinguishable because Glomar responses were provided in those cases, unlike this one, making the official acknowledgment doctrine relevant in those instances. Thus, Defendants' claim that Exemption 3 applies because official acknowledgment is required, fails.

confidentiality, under a similar provision to T.I.A.S. 91-503, and ***no information was shared or acknowledged***. 204 F.Supp.3d at 28. The same facts applied in the *Grynberg* case. 302 F. Supp. 3d at 540 (no divulsions by Switzerland). Additionally, in numerous other instances, outside of these cases, U.S. authorities have disclosed MLAT records. *See* Cables *supra* at 4-5. Here, unlike South Korea and Switzerland, Mexico has not only failed to act with strict and careful confidentiality, but instead released the records on its webstie and Twitter and the U.S. has acknowledged them.

### D. Defendants Fail to Meet FOIA's Foreseeable Harm Standard

While not discussed in a specific section in its brief, Defendants assert that the "foreseeable harm" standard, 5 U.S.C. § 552(a)(8)(A), has been met. *See* Gov. Br. at 7, 24. However this standard requires the government to identify 1) a *specific* foreseeable harm, and explain 2) how that harm is connected to the asserted exemption. *Reporters Comm. for Freedom of the Press v. FBI*, 15-cv-1392-RJL, 2020 WL 1324397, at *8 (D.D.C. Mar. 20, 2020). The agency must "connect the harms in a meaningful way." *Rosenberg v. U.S. Dep't of Def.*, 442 F. Supp. 3d 240, 259 (2020); *see also Ctr. for Investigative Reporting v. Dep't of Labor*, 424 F. Supp. 3d 771, 780 (N.D. Cal. 2019).

That standard has not been met here, as the government has failed to enumerate any harm let alone a specific one, and explained how it is tied to the particular Exemptions. *See generally supra* at 11, 13 (discussing how Defendants failed to allege any specific harm resulting from disclosure).

### E. A Vaughn Index Would Be Beneficial to the Court's Determination.

To the extent it would assist the Court in its determination, this Circuit's caselaw authorizes the creation of a *Vaughn* index, particularly in a case like this one where Defendants assert a categorical withholding. *See Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004); *ACLU of N. Cal. v. FBI*, 881 F.3d 776, 777 (9th Cir. 2018) (ordering *Vaughn* and *in camera* review); *EFF v. U.S. DOJ*, 4:11-cv-05221-YGR, ECF No. 85 (N.D. Cal. June 13, 2014) (same).

## V. CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

-25 -

OPP. TO DEFS' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

1

2  DATED: October 21, 2022

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*s/ D. Victoria. Baranetsky*
D. Victoria Baranetsky
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org