1  STEPHANIE M. HINDS (CABN 154284)
   United States Attorney
2
   MICHELLE LO (NYRN 4325163)
3  Chief, Civil Division

4  DOUGLAS JOHNS (CABN 314798)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-6961
7      FAX: (415) 436-6748
       Douglas.Johns@usdoj.gov
8
   Attorneys for Defendants
9  UNITED STATES DEPARTMENT OF
   JUSTICE AND UNITED STATES
10 DEPARTMENT OF STATE

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                          SAN FRANCISCO DIVISION

14

15 THE CENTER FOR INVESTIGATIVE          )   No. 21-cv-09613-SK
   REPORTING and ANAYANSI DIAZ-          )
16 CORTES,                               )   **DEFENDANTS' REPLY IN SUPPORT OF**
                                         )   **MOTION FOR SUMMARY JUDGMENT AND**
17         Plaintiffs,                   )   **OPPOSITION TO PLAINTIFFS' MOTION FOR**
                                         )   **SUMMARY JUDGMENT**
18    v.                                 )
                                         )
19 U.S. DEPARTMENT OF JUSTICE and U.S.   )   Date:        January 23, 2023
   DEPARTMENT OF STATE                   )   Time:        9:30 a.m.
20                                       )   Courtroom:   Courtroom C – Fifteenth Floor
           Defendants.                   )
21                                       )
                                         )   Honorable Sallie Kim
22 _____)   United States Magistrate Judge

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................................1

II.   EVIDENTIARY OBJECTIONS ...........................................................................................1

      A.    Objections to Cables and Correspondence. ...............................................................2

      B.    Objections to News Articles. .....................................................................................2

III.  ARGUMENT .........................................................................................................................3

      A.    Defendants Have Satisfied Their Burden on Summary Judgment Through the
            Presentation of Admissible Evidence. ......................................................................3

      B.    Categorical Denials Are Appropriate to Apply FOIA Exemptions, and
            Plaintiffs Confuse Categorical Denials With A *Glomar* Response. .......................4

      C.    Exemption 6 and Exemption 7(C) Exempt All Potentially Responsive Records
            to Plaintiffs' Requests..............................................................................................6

            1.    Defendants Have Satisfied Exemption 6 and Exemption 7(C)'s Privacy
                  Balancing Tests, and Plaintiffs Are Only Seeking Records Compiled
                  for Law Enforcement Purposes Within the Scope of Exemption 7(C)..................6

            2.    Cienfuegos Maintains Significant Privacy Interests Despite Mexico's
                  Alleged Disclosure of Records. ....................................................................7

            3.    Plaintiffs' Alleged Public Interests Are Defective and Cannot
                  Outweigh Cienfuegos' Significant Privacy Interests................................9

      D.    The MLAT Qualifies as a Withholding Statute Under Exemption 3, and
            Exemption 3 Exempts Certain Potentially Responsive Records. ...................11

            1.    Plaintiffs' "Broken Treaty" Argument Is Illogical, and the Remedy
                  They Seek Would Require the Violation of an International Treaty....................12

            2.    The United States Must Maintain the MLAT's Confidentiality
                  Provisions..................................................................................................14

      E.    Defendants Issued Proper Categorical Denials, and Defendants Are Not
            Required to Provide a *Vaughn* Index or Search for Records. ............................14

IV.   CONCLUSION....................................................................................................................15

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

i

# TABLE OF AUTHORITIES

## CASES

*American Civil Liberties Union Foundation of Arizona v. United States Department of Homeland Security,*
    No. Cv-14-02052-TUC-RM (BPV), 2017 WL 8895339 (D. Ariz. Jan. 26, 2017) ......................... 5, 6

*AFMS LLC v. United Parcel Service Co.*,
    105 F.Supp.3d 1061 (C.D. Cal. 2015) .................................................................................. 3

*American Civil Liberties Union v. United States Department of Justice*,
    655 F.3d 1 (D.C. Cir. 2011) ............................................................................................... 11

*Animal Legal Defense Fund v. U.S. Food & Drug Administration*,
    836 F.3d 987 (9th Cir. 2016) ............................................................................................... 3

*Blackwell v. Federal Bureau of Investigation*,
    646 F.3d 37 (D.C. Cir. 2011) ............................................................................................... 6

*Branch v. Federal Bureau of Investigation*,
    658 F.Supp. 204 (D.D.C. 1987) ........................................................................................... 7

*Brown v. United States Department of Justice*,
    No. 1:13-cv-01122-LJO-SKO, 2015 WL 1237274 (E.D. Cal. Mar. 17, 2015) ..................... 5

*Cameranesi v. United States Department of Defense*,
    856 F.3d 626 (9th Cir. 2017) ......................................................................................... 7, 10

*Celotex Corporation v. Catrett*,
    477 U.S. 317 (1986) ............................................................................................................ 3

*Charlton v. Kelly*,
    229 U.S. 447 (1913) .......................................................................................................... 13

*Central Intelligence Agency v. Sims*,
    471 U.S. 159 (1985) .......................................................................................................... 11

*Citizens for Responsibility & Ethics in Washington v. United States Department of Justice*,
    746 F.3d 1082 (D.C. Cir. 2014) ........................................................................................... 9

*Center for Investigative Reporting v. United States Department of the Treasury*,
    No. 19-cv-08181-JCS, 2021 WL 229309 (N.D. Cal. Jan. 22, 2021) .................................. 15

*Department of Justice v. Reporters Committee for Freedom of the Press*,
    489 U.S. 749 (1989) ........................................................................................................ 5, 7

*Grynberg v. United States Department of Justice*,
    302 F.Supp.3d 532 (S.D.N.Y. 2018) ................................................................................... 12

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

ii

*Fitzgibbon v. Central Intelligence Agency,*
  911 F.2d 755 (D.C. Cir. 1990) ........................................................................... 7, 8

*George E. Warren Corporation v. United States,*
  94 F.2d 597 (2d Cir. 1938) ................................................................................. 13

*Gonzales & Gonzales Bonds & Insurance Agency, Inc. v. United States Department of
Homeland Security,*
  913 F.Supp.2d 865 (N.D. Cal. 2012) ................................................................... 5

*Graff v. Federal Bureau of Investigation,*
  822 F.Supp.2d 23 (D.D.C. 2011) ......................................................................... 6

*Hamdan v. United States Department of Justice,*
  797 F.3d 759 (9th Cir. 2015) ......................................................................... 3, 11

*Huggans v. Exec. Office for United States Attorneys,*
  No. 19-cv-02587 (EGS), 2021 WL 1092143 (D.D.C. Mar. 22, 2021) ............... 6

*Jurdi v. United States of America,*
  485 F.Supp.3d 83 (D.D.C. 2020) ................................................................... 4, 5, 6

*Kimberlin v. Department of Justice,*
  139 F.3d 944 (D.C. Cir. 1998) ............................................................................. 9

*Lahr v. National Transportation Safety Board,*
  569 F.3d 964 (9th Cir. 2009) .............................................................. 6, 7, 10, 11

*Lane v. Department of Interior,*
  523 F.3d 1128 (9th Cir. 2008) ............................................................................. 8

*Larez v. City of Los Angeles,*
  946 F.2d 630 (9th Cir. 1991) ............................................................................... 3

*Lion Raisins, Inc. v. United States Department of Agriculture,*
  354 F.3d 1072 (9th Cir. 2004) ....................................................................... 4, 15

*National Archives and Records Administration V. Favish,*
  541 U.S. 157 (2004) ............................................................................................. 9

*Pickard v. Department of Justice,*
  653 F.3d 782 (9th Cir. 2011) ............................................................................... 5

*Schiffer v. FBI,*
  78 F.3d 1405 (9th Cir. 1996) ........................................................................... 6, 7

*Schmidt v. United States Air Force,*
  No. 06-3069, 2007 WL 2812148 (C.D. Ill. Sept. 20, 2007) ............................. 11

*Schultz v. Federal Bureau of Investigation,*
  63 F.Supp.3d 1189 (E.D. Cal. 2014) ................................................................... 5

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

iii

*Dongkuk International, Inc. v. United States Department of Justice*,
    204 F.Supp.3d 18 (D.D.C. 2016) ................................................................ 12

*Shannahan v. Internal Revenue Service*,
    672 F.3d 1142 (9th Cir. 2012) ............................................................... 3, 4

*Zemansky v. United States Environmental Protection Agency*,
    767 F.2d 569 (9th Cir. 1985) ................................................................... 3

**STATUTES**

5 U.S.C. § 552 ................................................................................ 3, 15

**OTHER AUTHORITIES**

Treaty on Cooperation Between the United States of America and the United Mexican States for Mutual Legal Assistance in Criminal Matters ................................................................ passim

**RULES**

Federal Rule of Civil Procedure 56 ........................................................ 3

Federal Rule of Evidence 401 ............................................................... 2

Federal Rule of Evidence 402 ............................................................... 2

Federal Rule of Evidence 602 ............................................................... 2

Federal Rule of Evidence 801 ............................................................ 2, 3

Federal Rule of Evidence 802 ............................................................... 2

Federal Rule of Evidence 901 ............................................................... 2

Civil Local Rule 7-3 ......................................................................... 1

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

iv

## I.    INTRODUCTION

This case concerns Defendants' categorical denials under FOIA Exemptions 3, 6, and 7(C) of Plaintiffs' FOIA Requests seeking information about a third party who is neither deceased, nor has consented to the disclosure of his personal and private information. Defendants contend that those three exemptions together exempt all responsive records to Plaintiffs' Requests. Noticeably absent from Plaintiffs' Cross-Motion and Opposition (hereinafter "Opposition") is any attempt to address Defendants' argument that those three exemptions together support Defendants' categorical denials.

Plaintiffs' other omissions in their Opposition serve to underscore that Defendants have satisfied their burden under Ninth Circuit precedent. That is, Defendants proffered reasonably detailed, non-conclusory declarations in support of their Motion for Summary Judgment ("Motion"), and are entitled to summary judgment under Ninth Circuit precedent. Plaintiffs do not object to the four detailed declarations Defendants proffered in support of their application of Exemptions 3, 6, and 7(C). Nor do Plaintiffs substantively claim any alleged defects in Defendants' declarations. Unlike Defendants, Plaintiffs do not proffer any admissible evidence in support of their Opposition that would rebut or otherwise undermine Defendants' declarations. Instead, Plaintiffs' Opposition consists only of irrelevant, underdeveloped, and oftentimes misleading arguments.

Although courts in the Ninth Circuit have not analyzed categorical denials in detail, they have been approved by both the Supreme Court of the United States and the United States Court of Appeals for the District of Columbia Circuit. Categorical denials are appropriate in cases where the categorical exemptions characteristically support an inference that the statutory requirements for the exemptions are satisfied. Based on the evidence proffered by Defendants, this is one of those cases. Accordingly, this Court should grant Defendants' Motion.

## II.    EVIDENTIARY OBJECTIONS

Under Civil Local Rule 7-3, Defendants object to the admissibility of Exhibits 1 to 10 and Exhibits 12 to 17 to the Declaration of D. Victoria Baranetsky, ECF No. 39-1.[1]

---

[1] Defendants are not objecting to Exhibit 11, the Joint Statement. Defendants included the full text of the Joint Statement in their Motion. *See* Motion at 3. The Joint Statement does not invalidate an international treaty or extinguish Cienfuegos' privacy interests.

1

**A.      Objections to Cables and Correspondence.**

2

Plaintiffs proffer five alleged declassified cables and one alleged declassified correspondence,

3

marked as Exhibit 1 through 6, to argue that the United States can disclose requests under the MLAT

4

because it disclosed requests under similar treaties. *See* Baranetsky Decl. ¶¶ 3-8; *see, e.g.*, Opposition at

5

4-6. Defendants object to those six exhibits for the following two reasons.

6

First, the cables and correspondence are irrelevant. Irrelevant evidence is inadmissible. *See* Fed.

7

R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it

8

would be without the evidence; and (b) the fact is of consequence in determining the action." *See* Fed. R.

9

Evid. 401(a)–(b). The cables and correspondence do not satisfy this standard because they do not relate

10

to, or even mention, the United States, Mexico, and Salvador Cienfuegos Zepeda ("Cienfuegos").

11

Moreover, Plaintiffs fail to explain how these cables and correspondence are relevant to this case,

12

neglecting to explain, for example, the circumstances of the alleged release of these cables and

13

correspondence. *See* Opposition at 5. The fact that the cables and correspondence may have been released

14

does not establish their relevance to this case, and given this lack any connection to a consequential fact

15

in this case, the Court should not consider them.

16

Second, the cables and correspondence lack any foundation, which Plaintiffs also have not

17

provided. *See* Opposition at 5. Admissible evidence requires a proper foundation. *See* Fed. R. Evid. 602;

18

*see also* Fed. R. Evid. 901. There is no foundation to admit any of the cables or correspondence. They

19

have not been authenticated. Some of them involve countries other than the United States and Mexico.

20

The cables are not recent. The cables and correspondence are between 12 and 25 years old. Plaintiffs have

21

not provided the requisite foundation to admit these documents as evidence on summary judgment.

22

**B.      Objections to News Articles.**

23

Plaintiffs also proffer ten news articles marked as Exhibits 7 to 17. *See* Baranetsky Decl. ¶¶ 9-12;

24

14-19. Defendants object to those eleven exhibits because they are inadmissible hearsay.

25

Hearsay means "a statement that: (1) the declarant does not make while testifying at the current

26

trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."

27

Fed. R. Evid. 801(c). Hearsay is inadmissible. *See* Fed. R. Evid. 802. Newspaper articles are hearsay by

28

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

2

their very nature and inadmissible if offered to prove the truth of the matter asserted. *See Larez v. City of L.A.*, 946 F.2d 630, 642 (9th Cir. 1991); *see also AFMS LLC v. United Parcel Service Co.*, 105 F.Supp.3d 1061, 1070 (C.D. Cal. 2015) (same).

The eleven articles that Plaintiffs proffer are inadmissible hearsay under Federal Rule of Evidence 801(c) because they are statements not made while testifying at a trial or hearing and are offered to prove the truth of the matters asserted in them. Plaintiffs quote and cite the articles throughout their Opposition to support their assertions. *See* Opposition at 2, 3, 5, and 6. Plaintiffs have provided no exception under Rule 802 and, thus, the Court should strike and exclude the articles.

## III.  ARGUMENT

### A.  Defendants Have Satisfied Their Burden on Summary Judgment Through the Presentation of Admissible Evidence.

Rule 56 of the Federal Rules of Civil Procedure governs a motion for summary judgment. *See* Fed. R. Civ. Proc. 56. Rule 56 expects that parties will support their positions by proffering admissible evidence. *See* Fed. R. Civ. Proc. 56(c).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Rule 56 does not create an exception for FOIA cases. *See* Fed. R. Civ. Proc. 56. That is, the standard for evaluating a motion for summary judgment is the same for a FOIA case as any other case. *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989-90 (9th Cir. 2016).

On a motion for summary judgment in a FOIA case, the agency bears the burden of justifying the assertion of exemptions to withhold documents. *See* 5 U.S.C. § 552(a)(4)(B). To meet that burden, an agency may rely upon reasonably detailed, non-conclusory affidavits. *See Zemansky v. U.S. Env't Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985). Courts must accord "substantial weight" to an agency's declarations regarding the application of a FOIA exemption. *See Shannahan v. IRS*, 672 F.3d 1142, 1148 (9th Cir. 2012). Indeed, "a district court is not required to conduct an independent *in camera* review of each withholding unless an agency declaration lacks sufficient detail or bears some indicia of bad faith by the agency." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 779 (9th Cir. 2015). An agency that has

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

3

submitted satisfactory affidavits is entitled to summary judgment. *Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004).

Defendants are entitled to summary judgment because they met their burden to show that they were entitled to categorically deny Plaintiffs' FOIA Requests. Defendants proffered four reasonably detailed, non-conclusory affidavits supporting their invocation of Exemptions 3, 6, and 7(C) to categorically deny Plaintiffs' Requests. Those four declarations explain in detail Defendants' analysis and justification for invoking these exemptions to deny Plaintiffs' Requests. While Plaintiffs characterize these declarations as "conclusory and boilerplate" and invoke "buzzwords" to attempt to discredit legitimate and admissible evidence (*see* Opposition at 10, 14), Plaintiffs do not raise any evidentiary objections or otherwise explain why the substance of all four declarations are insufficient. In the Ninth Circuit, an agency that has submitted satisfactory affidavits is entitled to summary judgment. *See Lion Raisins,* 354 F.3d at 1082. In this case, Defendants' declarations are beyond satisfactory, and the Court must accord "substantial weight" to those declarations. *See Shannahan,* 672 F.3d at 1148.

**B.     Categorical Denials Are Appropriate to Apply FOIA Exemptions, and Plaintiffs Confuse Categorical Denials With A *Glomar* Response.**

Plaintiffs' Opposition attempts to improperly limit the circumstances in which categorical denials can be applied. In doing so, Plaintiffs suggest a misunderstanding of categorical denials. *See* Opposition 11-13. First, Plaintiffs argue that categorical denials are "almost exclusively used in cases where the government has provided a *Glomar* response." *See* Opposition at 11. But this argument is incorrect and misleading. A categorical denial is different than a *Glomar* response. *See Jurdi v. U.S.*, 485 F.Supp.3d 83, 92 (D.D.C. 2020) (explaining that while a categorical denial is used to exempt whole groups of records from disclosure, a *Glomar* response is used to refuse to confirm or deny the existence of records). A categorical denial is appropriate even when, as here, there is no *Glomar* response. *See id.*

Plaintiffs are also wrong when they argue that categorical denials cannot be applied when there are "multiple kinds of records at issue." *See id.* And finally, Plaintiffs are wrong when they argue that categorical denials cannot be invoked when there is "grave public interest" in the records. *See id.* Simply put, courts have not placed these limitations on categorical denials. *See id.*

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

4

The United States Supreme Court authorized categorical denials and explained that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989) ("*Reporters Committee*"). The United States District Court for the District of Columbia explained that "the Supreme Court and D.C. Circuit have 'made it clear that rules exempting whole groups of records from disclosure are not only permitted, but should be encouraged as a means of enabling agencies to meet their formidable FOIA obligations in a timely fashion.'" *See Jurdi,* 485 F.Supp.3d at 92.

Second, Plaintiffs argue that the Court should apply the "Ninth Circuit standard" regarding categorical denials. *See* Opposition at 12. They cite three cases from within the Ninth Circuit to support their argument that the Ninth Circuit has adopted a "narrow standard" when analyzing categorical denials: (1) *Pickard v. Department of Justice*, 653 F.3d 782 (9th Cir. 2011); (2) *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. United States Department of Homeland Security*, 913 F.Supp.2d 865 (N.D. Cal. 2012); and (3) *Schultz v. F.B.I.*, 63 F.Supp.3d 1189 (E.D. Cal. 2014). As an initial matter, neither the Ninth Circuit in *Pickard* nor the district court in *Gonzales* analyzed categorical denials. And *Schultz,* the only case cited by Plaintiffs from within the Ninth Circuit that involved a categorical denial, cannot reasonably be interpreted as creating a Ninth Circuit standard for analyzing categorical denials. The district court relied heavily on *Pickard*, which also involved a request for records about an informant but only involved a *Glomar* response, not a categorical denial. *See Schultz,* 63 F.Supp.3d at 1187. The district court rejected the defendants' categorical denial, but confined its analysis to the specific facts of the case. *Id.* at 1190-91.

Plaintiffs also overlook other authority in the Ninth Circuit bearing on categorical denials. There are at least two cases decided in the Ninth Circuit that implicitly approve of categorical denials. In *Brown v. United States Department of Justice*, No. 1:13-cv-01122-LJO-SKO, 2015 WL 1237274, at *7-8 (E.D. Cal. Mar. 17, 2015), the district court approved of the defendants' invocation of a categorical denial under Exemption 7(C). Additionally, in *American Civil Liberties Union Foundation of Arizona v. United States Department of Homeland Security*, No. Cv-14-02052-TUC-RM (BPV), 2017 WL 8895339, at *7 (D. Ariz.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

5

Jan. 26, 2017), the district court implicitly approved of the defendant's categorical denial but rejected its supporting declaration.

But contrary to Plaintiffs' argument, the Ninth Circuit has not analyzed categorical denials in a way that it has an established standard to apply. Accordingly, the Court should look to the D.C. Circuit, which has developed a standard to apply. *See Jurdi,* 485 F.Supp.3d at 92-93 (finding that the DEA's categorical denial under Exemption 7(C) was justified); *see also Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (holding that the agency "was correct in declining to search" for records protected by Exemption 7(C)"); *see also Graff v. F.B.I.*, 822 F.Supp.2d 23, 31 (D.D.C. 2011) (upholding the categorical approach to refuse to conduct a search for records to a third party request for law enforcement records involving a foreign national); *see also Huggans v. Exec. Office for United States Attorneys*, No. 19-cv-02587 (EGS), 2021 WL 1092143, at *4 (D.D.C. Mar. 22, 2021) (affirming the categorical reliance on Exemption 7(C) and refusal to perform a search in response to a third-party request for law enforcement records). The Court should adopt the D.C. Circuit's approach that no search is required if supported by a valid categorical exemption.

### C. Exemption 6 and Exemption 7(C) Exempt All Potentially Responsive Records to Plaintiffs' Requests.

Plaintiffs argue that Defendants have withheld records improperly under Exemption 6 and Exemption 7(C). *See* Opposition at 13. Plaintiffs contend that Cienfuegos does not have a privacy interest in the records Plaintiffs requested about him. *See id.* at 14. Plaintiffs fail to address that under established precedent and the reasons set forth in Defendants' declarations, Cienfuegos has a strong privacy interest in the records Plaintiffs are seeking about him. *See Schiffer v. FBI*, 78 F.3d 1405, 1410 (9th Cir. 1996). Notwithstanding, Plaintiffs cannot identify public interests sufficient to overcome Cienfuegos' privacy interest in the records Plaintiffs seek about him that he has not consented to disclose.

### 1. Defendants Have Satisfied Exemption 6 and Exemption 7(C)'s Privacy Balancing Tests, and Plaintiffs Are Only Seeking Records Compiled for Law Enforcement Purposes Within the Scope of Exemption 7(C).

Exemption 6 and 7(C) protect personal and private information from disclosure. *See Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009). Plaintiffs ignore that the balancing tests that the Court must apply to analyze Exemption 6 and Exemption 7(C) are different. *See id.* at 973-74. Under

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

6

Exemption 6, Defendants must only demonstrate that Cienfuegos' privacy interest is "nontrivial" or more than de minimis. *See Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 637-38 (9th Cir. 2017). Under Exemption 7(C), the privacy interests protected are a "broad range of concerns relating to an individual's control of information concerning his or her person," and an "interest in keeping personal facts away from the public eye." *See Lahr*, 569 F.3d at 974.

Defendants explained in detail why Cienfuegos' privacy interests satisfy Exemption 6's "nontrivial" standard. *See* Motion at 16. Defendants also explained why Cienfuegos' privacy interests satisfy Exemption 7(C)'s privacy test. Plaintiffs do not discuss Exemption 7(C)'s balancing test at all.

Nor do Plaintiffs address that they are only seeking records within the scope of Exemption 7(C). *See* Motion at 13. Plaintiffs' Requests seek records that only would have been compiled for law enforcement purposes and that fall within the scope of Exemption 7(C). *See* Motion at 13-14. Defendants proffer admissible evidence that all of the potentially responsive records to Plaintiffs' Requests satisfy Exemption 7(C)'s threshold requirement for being compiled for law enforcement purposes. *See* Hertel Decl. ¶ 19; *see* Kargbo Decl. ¶ 17; *see also* Weetman Decl. ¶ 22; *see also* Cain Decl. ¶¶ 18-21. And there is a "rational nexus" between Defendants' law enforcement duties and the potentially responsive records for which Defendants are asserting categorical denials under Exemption 7(C). *See* Motion at 14-15. Rather than focus on the proper balancing tests or Defendants' arguments under Exemption 7(C), Plaintiffs attack Cienfuegos' privacy interests. *See* Opposition at 14-18.

### 2. Cienfuegos Maintains Significant Privacy Interests Despite Mexico's Alleged Disclosure of Records.

The Supreme Court has held that "[a]s a categorical matter . . . a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy." *Reporters Committee*, 489 U.S. at 780. And in the Ninth Circuit, an individual has a strong privacy interest in not being associated with alleged criminal activity. *See Schiffer v. FBI*, 78 F.3d 1405, 1410 (9th Cir. 1996). Indeed, the mere "mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation." *Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987)).

The disclosure of records responsive to Plaintiffs' Requests would invade Cienfuegos' privacy interests. Plaintiffs' Requests seek records pertaining to a request Mexico made to the United States about Cienfuegos' criminal case. *See* Motion at 4-5. Disclosing responsive records would harm Cienfuegos by associating him or linking him with criminal activity even beyond that exists in the public record and subject him to harassment and embarrassment. *See* Hertel Decl. ¶¶ 27; Weetman Decl. ¶¶ 25-26; Kargbo Decl. ¶¶ 28-29; Cain Decl. ¶¶ 23-24. While Plaintiffs argue that responsive records would not disclose Cienfuegos' private information and that Cienfuegos no longer has a privacy interest in the release of his records (s*ee* Opposition at 14-17), those arguments are without merit.

Plaintiffs argue that Cienfuegos no longer has a privacy interest in the release of his records because he has been publicly identified, his case is closed, and he is a public official. *See id.* But none of those factors are dispositive. The fact that Cienfuegos has been publicly identified does not eliminate or even reduce his privacy interests because "notions of privacy in the FOIA exemption context encompass information already revealed to the public." *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008). Second, the status of a person's case as open or closed is not determinative. Plaintiffs do not cite any cases that make a privacy distinction based on whether a criminal defendant's case is an open case  or closed.  Indeed, a person's interest in not being associated with criminal activity exists whether a case is closed or not. *See id.* Lastly, Plaintiffs do not cite any case that holds a person's status as a foreign public official diminishes his or her privacy interest in the United States.

Plaintiffs also make the confounding argument that Defendants have not pointed to any privacy interest in alleged documents pertaining to "agency actions." *See id.* As an initial matter, Defendants' declarations explain in detail that Cienfuegos' privacy interests would be invaded if records are disclosed. *See* Hertel Decl. ¶ 27; *see* Kargbo Decl. ¶¶ 19, 28-29; *see also* Weetman Decl. ¶¶ 25-26; *see also* Cain Decl. ¶¶ 23-24. But Plaintiffs' argument is an attempt to expand the scope of their Requests while ignoring what the Requests actually are seeking. Plaintiffs' Requests seek records pertaining to a request from Mexico about Cienfuegos' criminal case. *See* Motion at 4-5. Plaintiffs are not seeking records about "agency actions." *See* Opposition at 15. Plaintiffs cite several cases in support of those arguments, but one of those cases address the unique circumstances of this case involving a non-citizen, Cienfuegos, and

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

8

issues arising in the context of international relations. For example, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (*CREW*) involved an American government official being investigated by an American law enforcement agency. *Id.* at 1087. That American government official being investigated announced that he was the subject of an investigation. *See id.* And in the other cases cited by Plaintiffs, the person either identified the investigation on his own or was identified at trial. *See id.* at 1087; *see also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998) (subject of FOIA request identified his own investigation). Those cases are different than the case at bar, where records are sought about a foreign official and a foreign investigation, and Plaintiffs have not proffered admissible evidence that Cienfuegos has personally disclosed the existence of any investigation against him.

Plaintiffs focus on the alleged disclosure of Cienfuegos' records by Mexico, and argue that Cienfuegos lost his privacy interests because of that disclosure. *See* Opposition at 17. That is a "red herring." Defendants have demonstrated that Cienfuegos has a significant interest in controlling the release of information about him to protect his privacy including, but not limited to, his personnel files and law enforcement records. *See* Hertel ¶ 27; *see also* Weetman Decl. ¶ 25-26; *see also* Kargbo Decl. ¶¶ 28, 29, 29; *see also* Cain Decl. ¶¶ 23-24. Plaintiffs have not proffered any evidence to dispute that interest. Plaintiffs ignore that Defendants have not verified the contents of any public disclosures made by Mexico related to the MLAT request. *See* Kargbo Decl. ¶ 35; *see also* Hertel Decl. ¶ 39. But even if there was a disclosure, Plaintiffs do not address what effect that disclosure has on the privacy interests of Cienfuegos, a third party, who was not involved in the disclosure. Plaintiffs fail to address why Cienfuegos would forfeit his privacy interests because of the conduct of entities outside of his control. Cienfuegos would still have a privacy interest in any additional potential records that could be released.

### 3.   Plaintiffs' Alleged Public Interests Are Defective and Cannot Outweigh Cienfuegos' Significant Privacy Interests.

Where, as here, an agency is able to establish that the privacy interests of third parties will be implicated, the requester must show that "the public interest sought to be advanced is a significant one" and that "the information [sought] is likely to advance that interest." *See Nat'l Archives and Records Admin. V. Favish*, 541 U.S. 157, 172 (2004). "Once the government has identified a cognizable privacy

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

9

interest, 'the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.'" *Lahr,* 569 F.3d at 974 (italics in original).

Cienfuegos has a privacy interest in the records sought in Plaintiffs' Requests. *See* Motion at 15. Plaintiffs attempt to overcome that privacy interest by arguing that there are two overriding public interests. *See* Opposition at 18-21. But those alleged public interests are insufficient.

First, Plaintiffs argue that records sought in their Requests "could unearth possible corruption or undue influence." *See* Opposition at 18. That is, Plaintiffs' Requests seek records that would "further confirm how the U.S. investigated, arrested, and chose to release Cienfuegos, ensuring our governors are kept accountable." *See* Opposition at 19. However, Plaintiffs' corruption and undue influence argument suffers from several defects. For starters, Plaintiffs have not proffered any evidence to support their corruption and undue influence argument. In the Ninth Circuit, when a FOIA requester alleges a public interest to show that responsible officials acted improperly, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged government impropriety might have occurred. *See Cameranesi v. United States Dep't of Defense*, 856 F.3d 626, 640 (9th Cir. 2017).

Next, Plaintiffs' Requests offer no support for their alleged corruption and undue influence argument. The subject of Plaintiffs' Request is a "request for assistance from the Mexican government**.**" *See* Motion at 4-5. Plaintiffs are not seeking records pertaining to how an agency in the United States conducted an investigation. *See id.* Throughout their Opposition, Plaintiffs similarly attempt to expand the scope of their Requests in other ways. *See* Opposition at 19, 20. For example, Plaintiffs claim that their Requests seek records that could reveal how the Cienfuegos investigation was conducted, why it was "dropped," and the amount of "taxpayer dollars" spent pursuing Cienfuegos. *See* Opposition at 19. That is not what Plaintiffs' Requests are seeking. And finally, for similar reasons, the records sought by Plaintiffs will not advance their claimed public interest of unearthing corruption and undue influence. Plaintiffs' Requests would only "shed light" on Mexico or determine what Mexico was up to. *See id.* Those are not cognizable public interests under FOIA. *See Lahr,* 569 F.3d at 974.

Second, Plaintiffs argue that there is an overriding public interest based on "large, scale international interest." *See* Opposition at 19. International interest, on its own, does not shed light on an agency's performance or let citizens of the United States know what its government is up to. *See Lahr*, 569 F.3d at 974. Plaintiffs do not proffer any admissible evidence supporting that there has been "large, scale international interest." *See* Opposition at 19. And Plaintiffs do not cite any cases in which records sought about a foreign government and a foreign national qualified as a significant public interest. *See Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 13 (D.C. Cir. 2011) (disclosing prosecutions in which defendants within the United States were subject to warrantless cell phone tracking qualified as a public interest); *see also Schmidt v. U.S. Air Force*, No. 06-3069, 2007 WL 2812148, at *11 (C.D. Ill. Sept. 20, 2007) (disclosing information about how the United States was holding a member of the U.S. Naval Academy accountable for conduct within the scope of his duty qualified as a public interest). Plaintiffs' claimed public interests are insufficient to overcome Cienfuegos' privacy interests.

### D. The MLAT Qualifies as a Withholding Statute Under Exemption 3, and Exemption 3 Exempts Certain Potentially Responsive Records.

To analyze Exemption 3 questions, a district court applies a two-step inquiry. *See Hamdan*, 797 F.3d at 776. First, a court must determine whether there is a statute within the scope of Exemption 3. *See CIA v. Sims*, 471 U.S. 159, 167 (1985). Second, a court must determine whether the requested information falls within the scope of that statute. *See id.* Plaintiffs concede that the MLAT qualifies as a statute within the scope of Exemption 3. *See* Opposition at 22 and n.12.

Plaintiffs do not address Defendants' argument that their FOIA Requests fall within the scope of the MLAT. *See* Motion at 23. Plaintiffs are seeking "all records related in whole or in part to a request for assistance from the Mexican government" by the MLAT. *See* Hertel Decl. Ex. A. But the MLAT provides that the "requested State shall keep confidential a request and its contents," unless certain exceptions not applicable here exist. *See* MLAT, Art. 4 § 5. Plaintiffs are seeking records and information that plainly fall within the MLAT's confidentiality provisions and that Defendants therefore cannot disclose. *See id.* Plaintiffs try to avoid that problem by arguing that the MLAT is "broken." *See* Opposition at 21. Plaintiffs' "broken treaty" argument lacks any merit.

### 1.   Plaintiffs' "Broken Treaty" Argument Is Illogical, and the Remedy They Seek Would Require the Violation of an International Treaty.

Plaintiffs argue that both the United States and Mexico violated the MLAT's confidentiality provisions, and the Treaty is, therefore, "broken," and Defendants cannot withhold any records under Exemption 3. *See* Opposition at 22 and 23. While Plaintiffs offer several theories about why the MLAT is broken based on their interpretation of its provisions (*see* Opposition at 24), Plaintiffs' analysis of the MLAT ignores the United States' continuing confidentiality obligations under it. *See* Opposition at 22; *see also* MLAT, Art. 4 § 5.

The relevant provision of the MLAT states that "[t]he requested State shall keep confidential a request and its contents unless authorized by the Coordinating Authority of the requesting Party." MLAT, Art. 4 § 5. Mexico, the "requesting party," has not authorized the United States to publicly disclose any alleged MLAT request or its contents. *See* Kargbo Decl. ¶ 35; *see also* Hertel Decl. ¶ 39. Despite that the Department of Justice tweeted about Mexico's release of records associated with Cienfuegos, the tweet, which came the same day as the 751-page release was made, cannot be reasonably viewed as the United States' exhaustive verification and authentication of the records. Neither can other statements made in response to Mexico's purported decision to allegedly violate the terms of the MLAT.

Plaintiffs cite two inapposite cases in support of their broken treaty argument. First, *Grynberg v. United States Department of Justice*, 302 F.Supp.3d 532, 539-40 (S.D.N.Y. 2018)—where the court dismissed a FOIA action based on Exemption 3 and an MLAT's confidentiality provision—does not support Plaintiffs' argument that withholding is improper here or that the MLAT is broken. *Grynberg* did not involve an alleged breach of a treaty or a "broken" treaty. *See id.*

Second, *Dongkuk International, Inc. v. United States Department of Justice*, 204 F.Supp.3d 18 (D.D.C. 2016), favors the Defendants, not the Plaintiffs. As *Dongkuk* makes clear, conduct by a foreign government cannot waive a U.S. federal agency's right to assert a FOIA exemption. *See id.* at 28-29. Indeed, in *Dongkuk*, the court upheld the government's decision to withhold MLAT-related records under FOIA Exemption 3 based on the confidentiality provision of the U.S.-Korean treaty, despite a public acknowledgement of the requested records by Korean authorities. Thus, consistent with *Dongkuk*, any disclosure by Mexico does not alleviate the Defendants' obligation to withhold records pursuant to

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

12

Exemption 3. Moreover, to the extent Plaintiffs' attempts to distinguish *Dongkuk* based on the language of the treaty applicable in that case, their argument fails. The confidentiality provision in the mutual legal assistance treaty at issue in *Dongkuk* only applies if the requesting state demands it, and even then, the requested state is merely obligated to use its "best efforts" to keep the relevant documents confidential. Relevant here, the language of the U.S.-Mexico MLAT mandates confidentiality by the "Requested State," a standard arguably more favorable to the Defendants than the "best efforts" language at issue in *Dongkuk*.

The MLAT's confidentiality provisions remain in force. Plaintiffs have not proffered any evidence that Mexico waived the confidentiality provisions of the MLAT or otherwise authorized the United States to disclose any request or its contents. But even if there was a violation of the MLAT, Plaintiffs' broken treaty argument suffers from several other defects.

First, Plaintiffs fail to explain the consequences of a "broken" international treaty. Plaintiffs fail to address whether this Court is the proper forum to declare a treaty "broken" and no longer in force. In fact, contrary to Plaintiffs' suggestion, the violation of a treaty by one party does not invalidate that treaty. *See Charlton v. Kelly*, 229 U.S. 447, 474 (1913) ("Where a treaty is violated by one of the contracting parties, it rests alone with the injured party to pronounce it broken, the treaty being, in such case, not absolutely void, but voidable, at the election of the injured party . . . .") (citation omitted). Indeed, the notion that a purported failure to abide by the MLAT would automatically render the MLAT void is nonsensical and, if adopted, could have sweeping implications for all of the United States's treaty relationships, as it would mean that our partners could terminate their treaty obligations simply by failing to comply with them. And in any event, "[i]t is not for a court to say whether a treaty has been broken or what remedy shall be given; this is a matter of international concern, which . . . must be left to the field of diplomacy. Obviously, it would not do for the courts to declare that an act is a breach of a treaty and results in this or that remedy." *George E. Warren Corp. v. United States*, 94 F.2d 597, 599 (2d Cir. 1938). Accordingly, a violation of the MLAT would not provide a basis for the Court to decline to apply Exemption 3.

Second, Plaintiffs offer no legal authority on whether a district court can order the subsequent violation of an international treaty. If the Court orders the release of potentially responsive records, that would violate the plain terms of the MLAT. Plaintiffs fail to address that issue. Similarly, the remedy

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

13

Plaintiffs are seeking is improper because it would violate the clear terms of the MLAT. The MLAT's confidentiality provisions do not excuse additional violations. *See* MLAT, Art. 4 § 5. Plaintiffs want the Court to open the floodgates and allow the release of records plainly within the scope of the MLAT and Exemption 3. But even if the MLAT was violated before, Plaintiffs' remedy would violate the MLAT again. That is not permitted under an international treaty that is still in force.

### 2.   The United States Must Maintain the MLAT's Confidentiality Provisions.

The MLAT expressly requires the United States to "keep confidential a request and its contents made under it." *See* MLAT, Art. 4 § 5. Mexico has not waived the MLAT's confidentiality provisions. Defendants cannot unilaterally waive the MLAT's confidentiality provisions. *See* MLAT, Art. 4 § 5.

In their opening motion, Defendants explained the consequences that would occur if the United States was ordered to violate the MLAT, but Plaintiffs fail to address those consequences. *See* Motion at 24. Defendants explained that ordering the United States to violate the MLAT would put it out of compliance with its treaty obligations, which could compromise the integrity of ongoing criminal investigations and proceedings. *See* Weetman Decl. ¶ 18; *see also* Kargbo Decl. ¶ 37. Defendants further explained that requiring disclosure could also hinder Mexico's willingness to comply with MLAT. *See id.* Finally, Defendants explained that disclosure would foreseeably harm the credibility of the United States and its international legal commitments in the eyes of existing treaty partners. *See id.* Plaintiffs fail to address the consequences of Defendants being ordered to violate the MLAT.

### E.   Defendants Issued Proper Categorical Denials, and Defendants Are Not Required to Provide a *Vaughn* Index or Search for Records.

The crux of this case is whether Defendants asserted proper categorical denials and refused to conduct a search under Exemptions 3, 6, and 7(C). Nevertheless, Plaintiffs raise additional irrelevant arguments, each of which is without merit.

First, Plaintiffs argue that Defendants failed to perform a search for records (*see* Opposition at 9) even though Defendants admit they properly refused to search for records because Exemptions 3, 6, and 7(C) categorically exempt all records sought by Plaintiffs. *See* Motion at 25. Plaintiffs attempt to argue— without a citation to FOIA—that Defendants are required to perform a search despite asserting categorical denials. *See* Opposition at 9. However, FOIA plainly does not require a search in every circumstance. *See*

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; NO. 21-CV-09613-SK

14

U.S.C. § 552. And none of the cases cited by Plaintiffs in their failure to search argument involved a categorical denial. *See* Opposition at 9.

Second, Plaintiffs argue that Defendants fail to meet FOIA's foreseeable harm standard. *See* Opposition at 25. For Exemptions 6 and 7(C), Defendants devoted roughly nine pages in their opening motion explaining the harm associated with releasing records about Cienfuegos. *See* Motion 10-19. As Plaintiffs are aware from one of their recent cases, a party does not need to show foreseeable harm to withhold documents under Exemption 3. *See Ctr. for Investigative Reporting v. U.S. Dep't of the Treasury*, No. 19-cv-08181-JCS, 2021 WL 229309, slip. op. at *7 (N.D. Cal. Jan. 22, 2021) (concluding that the defendant does not need to show foreseeable harm to withhold documents under Exemption 3). Defendants have satisfied the foreseeable harm standard.

Third, Plaintiffs seek a "*Vaughn* index" from Defendants. *See* Opposition at 25. That is an attempt to sidestep the issues in this case. Defendants contend that they do not need to produce a *Vaughn* index because of their supported categorical denials. In fact, in one of the cases cited by Plaintiffs, the Ninth Circuit stated that "*in camera* inspection of documents is disfavored, however, where the government sustains its burden of proof by way of its testimony and affidavits." *See Lion Raisins, Inc. v. USDA*, 354 F.3d 1072, 1082 (9th Cir. 2004).

Defendants are not attempting to escape their FOIA obligations. Nor are Defendants arguing that categorical denials need to be expanded or used more frequently. Defendants are simply arguing that FOIA exemptions can be categorically denied if the denial is justified and supported. Here, Exemption 3, Exemption 6, and Exemption 7(C) together support Defendants' categorical denials of Plaintiffs' Requests.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment, deny Plaintiffs' Motion for Summary Judgment, and enter judgment for Defendants.

1                                                      Respectfully submitted,

2                                                      STEPHANIE HINDS
United States Attorney

DATED: November 18, 2022                      */s/ Douglas Johns*
DOUGLAS JOHNS
Assistant United States Attorney
Attorney for Defendants