D. Victoria Baranetsky (Cal. Bar No. 311892)
THE CENTER FOR INVESTIGATIVE
REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org
Telephone: (510) 982-2890

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| THE CENTER FOR INVESTIGATIVE REPORTING and ANAYANSI DIAZ-CORTES,<br><br>                              Plaintiffs,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, and UNITED STATES DEPARTMENT OF STATE,<br>                              Defendants. | Case No. 3:21-cv-09613-SK<br><br>**PLAINTIFFS' SURREPLY TO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  January 23, 2023<br>Time: 9:30 AM<br>Place: Courtroom C, 15th Floor<br><br>Honorable Sallie Kim<br>United States Magistrate Judge |

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. Defendants Have Failed to Satisfy Their Burden and Justify Their Actions Under FOIA With The Requisite Specificity. ................................................................................. 1

    B. The Government's Flag Waiving that "Categorical Withholding Does Not Require a Search" Is An Improper Diversion From Its Basic Failure to Search And Segregate. .................. 3

    C. The Government's Categorical Withholding Is Unjustified Under the Law of the D.C. Circuit and The Reasoning of this Circuit. ....................................................................... 4

    D. Defendants Unjustifiably Withheld *All* Records Pursuant To Exemptions 6 & 7(C), Even Though Most Records Likely Contain No Privacy Concerns And The Public Interest Outweighs Any Putative Privacy Concerns. ................................................................................. 6

        1. Defendants' Reply Still Fails to Identify to Any Privacy Concerns In Accordance With Exemptions 6 and 7(C) ....................................................................................... 7

        2. Defendants Fail to Address the Significant Public Interest in the United States' Actions Which Outweighs Any Putative Privacy Concerns And Instead Accuse Plaintiffs Of Improperly Expanding Their Requests. ..................................................................... 9

    E. Withholding Pursuant to Exemption 3 is Unjustified Because the Requested Records No Longer Fall Under the Scope of the U.S.-Mexico MLAT ............................................... 11

        1. Defendants' Reply misinterprets the MLAT's "shall" language and evades on the fact that the U.S.'s actions abrogated that provision. ..................................................... 12

        2. Mexico's comprehensive disclosure in violation of the MLAT's provisions strips away any remaining confidentiality. ................................................................................. 12

        3. Defendants' citation to *Grynberg* and *Dongkuk* fails because no party in those cases breached the relevant confidentiality obligations. ...................................................... 13

        4. This Court has jurisdiction and a duty to analyze the MLAT and Defendants already admitted it was void. ............................................................................................. 14

    F. Defendants' Evidentiary Claims Fail: The MLAT Cables and Correspondence are Relevant and the News Articles Are Not Hearsay ................................................................. 15

III. CONCLUSION .............................................................................................................. 15

-ii-

SURREPLY TO DEF'S MOT. SUMM. J.;
REPLY IN SUPP. OF CROSS MOT. SUMM. J.

1

## TABLE OF AUTHORITIES

2

**CASES**

3   *ACLU Found. of Ariz. v. U.S. Dep't Homeland Sec.*, No. CV-14-02052-TUC-RM (BPV), 2017 WL

4   8895339 (D. AZ. Jan. 26, 2017) ............................................................................................ 6

5   *Am. Oversight v. GSA*, 311 F. Supp. 3d 327 (D.D.C. 2018) ............................................... 8

6   *Black v. Dep't of Justice*, 69 F. Supp. 3d 26 (D.D.C. 2014) ............................................. 4

7   *Brown v. Dep't of Justice*, Case No. 1:13-cv-01122-LJO-SKO (E.D. Cal. Mar. 17, 2015) .............. 5

8   *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626 (9th Cir. 2017) ....................................... 9

9   *Charlton v. Kelly*, 229 U.S. 447 (1913) ..................................................................... 14, 15

10  *In re Copley*, 518 F.3d 1022 (9th Cir. 2008) ................................................................ 11

11  *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082 (D.C.

12      Cir. 2014) ......................................................................................................... 7, 8

13  *Dongkuk Intl., Inc. v. U.S. Dep't of Justice*, 204 F. Supp. 3d 18 (D.D.C. 2016) ................. 11, 13-15

14  *FCC v. AT&T Inc.*, 562 U.S. 397 (2011) .......................................................................... 7

15  *Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ........................................... 11

16  *Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, No. C 11-02267

17      DMR (N.D. Cal. Dec. 21, 2012) ............................................................................. 4, 5

18  *Graff v. F.B.I.*, 822 F. Supp. 2d 23 (D.D.C. 2011) ........................................................... 4

19  *Grynberg v. U.S. Dep't of Justice*, 302 F. Supp. 3d 532 (S.D.N.Y. 2018) ......................... 11, 13-15

20  *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759 (9th Cir. 2015) ....................................... 3

21  *Huggans v. Exec. Office for U.S. Attorneys*, No. 19-cv-02587 (EGS)

22      (D.D.C. Mar. 22, 2021) ......................................................................................... 4

23  *Larez v. Los Angeles*, 946 F.2d 630 (9th Cir. 1991) ...................................................... 15

24  *Lane v. Dep't of the Interior*, 523 F.3d 1128 (9th Cir. 2008) ........................................... 2

25

-iii-

26

*Marbury v. Madison*, 5 U.S. 137 (1803) ........................................................................ 14

*Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121 (9th Cir. 2012)......................... 12

*Pickard v. Dept. of Justice*, 653 F.3d 782 (9th Cir. 2011)......................................... 1, 4, 5

*Prison Legal News v. Samuels*, 787 F.3d 1142 (D.C. Cir. 2015) ..................................... 4

*Raimondo v. Fed. Bureau of Investigation*, Case No. 13-cv-02295-JSC

   (N.D. Cal. May. 10, 2016)......................................................................................... 7

*Rojas v. Fed. Aviation Admin.*, 941 F.3d 392 (9th Cir. 2019) ......................................... 11

*Sanchez-Llamas v. Oregon*, 548 U.S. 331 (2006) ........................................................ 14

*Schiffer v. F.B.I*, 78 F.3d 1405 (9th Cir. 1996) ........................................................... 7, 9

*Schultz v. FBI*, 63 F. Supp. 3d 1183 (E.D. Cal. 2014)................................................ 1, 4, 5

*Sims v. CIA*, 642 F.2d 562 (D.C. Cir. 1980) .................................................................. 7

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994) ................................... 3

*Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189 (9th Cir. 2011) ........ 3

*WP Company LLC v. U.S. Dep't of Defense et al*, No. 21-CV-01025 (APM), 2022 WL 4119769

   (D.D.C. Sept. 9, 2022).......................................................................................... 4, 11

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443 (5th Cir. 2019) ...... 14

*Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) ...... 15

*Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985)............................................................. 2

**STATUTES AND TREATIES**

5 U.S.C. § 552(a)(3) ......................................................................................................... 3

5 U.S.C. § 552(a)(8) ......................................................................................................... 3

Mutual Legal Assistance Cooperation Treaty with Mexico, U.S.-Mex., Dec. 9, 1987, S. Treaty

   Doc. No. 100-13, 1987 WL 890783 ...................................................................... 1, 11

-iv-

SURREPLY TO DEF'S MOT. SUMM. J.;
REPLY IN SUPP. OF CROSS MOT. SUMM. J.

**RULES**

Federal Rule of Evidence 401................................................................................................15

Federal Rule of Evidence 602................................................................................................15

Federal Rule of Evidence 807................................................................................................15

Federal Rule of Evidence 901................................................................................................15

**OTHER AUTHORITIES**

Alan Feuer and Natalie Kitroeff, *Mexico Outraged at Arrest of Ex-Official, Threatened to Toss*

    *U.S. Agents*, N.Y. TIMES, Nov. 18, 2020, https://nyti.ms/3CYnzTu........................................ 9, 10

Department of Justice, Office of Information Policy, Exemption 6, https://bit.ly/3CFwkAs............ 7

Drazen Jorgic and Mark Hosenball, *In Shock Move, U.S. Abandons Drugs Case Against Ex-*

    *Mexican Defense Minister*, REUTERS, Nov. 17, 2020, https://bit.ly/3uznNLY ........................ 9, 10

Press Release, Statement by President of the Republic of Mexico, Jan. 15, 2021,

    https://bit.ly/3H4RlbK ............................................................................................................ 13

Tim Golden, *Dropping the Charges Against General Cienfuegos Was William Barr's Call*,

    PROPUBLICA Dec. 8, 2022, https://bit.ly/3BpNySJ .......................................................... 9

Tim Golden, *The Cienfuegos Affair: Inside the Case that Upended the Drug War in Mexico*, N.Y.

    TIMES MAG., Dec. 8, 2022, https://nyti.ms/3FDxAag ................................................. 10

Tom Phillips, *Outrage after Mexico exonerates ex-defense minister in drug case*, THE GUARDIAN,

    Jan. 15, 2021, https://bit.ly/3FD5wDP ................................................................................. 10

U.S. Dep't of Justice – Int'l (@USDOJ_Intl), Jan. 16, 2021, https://bit.ly/3TL3i9t ................ 12, 13

Vanda Felbab-Brown, *Cienfuegos and the US-Mexico firestorm*, BROOKINGS, (Nov. 23, 2020),

    https://brook.gs/3CEWrHS................................................................................................... 10

26 Op. O.L.C. 143, 2002 OLC LEXIS 24, *1 (Oct. 23, 2002) ....................................................... 14

-v-

SURREPLY TO DEF'S MOT. SUMM. J.;
REPLY IN SUPP. OF CROSS MOT. SUMM. J.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Defendants' Reply is nothing more than a creative presentation of magical thinking. Defendants argue this Court should permit a categorical exemption because somehow the "three exemptions together" allow it. Dkt. 40 at 6. However, the law does not permit this result because a categorical exemption is unjustified here. Approving it in this case would transgress the bounds of D.C. Circuit case law, impermissibly expand the law of the Ninth Circuit beyond the reasoning of *Pickard*, and directly contradict this Court's sister court in *Schultz*. Moreover, this outcome would have calamitous precedential effects for FOIA by swallowing its fundamental search requirement.

Defendants' Reply also erroneously suggests that a privacy violation would occur by releasing information about Cienfuegos, an internationally renowned public figure who has already had thousands of records about his asserted criminal behavior released to the public. Under this set of facts, it is confounding what privacy violation to Cienfuegos might be possible. Moreover, this purported injury is irrelevant as to any records only involving agency action regarding the Cienfuegos investigation. Notwithstanding any privacy concerns, the public interest weighs in favor of release.

Furthermore, Defendants try to divert the Court's attention from the fact that Mexico released thousands of MLAT records and the U.S. acknowledged and authenticated that release, breaking the MLAT's confidentiality provision. Plaintiffs' assertion that the MLAT has been violated, is not a "theory" but originates, verbatim, from Defendants' own public statement they posted online.

## II.     ARGUMENT

### A.     Defendants Have Failed to Satisfy Their Burden and Justify Their Actions Under FOIA With The Requisite Specificity.

Defendants' Reply admits that "the agency bears the burden" of proving that FOIA's exemptions apply. Dkt. 40 at 8. Still, Defendants fail to meet that burden in multiple ways. Defendants do not explain *how* the declarations are sufficiently specific or nonconclusory. *Cf. id.* (stating that affidavits must be "reasonably detailed, nonconclusory"). Defendants do not cite language in their Reply from the declarations to demonstrate their specificity nor do they compare them to cases where courts have found that declarations met the specificity requirement. *See*

*generally id*. Instead, Defendants try to reverse the burden onto Plaintiffs[1] and assert that Plaintiffs' descriptions of the declarations as "conclusory" and "boilerplate" are merely "buzzwords." Dkt. 40 at 9. At the same time, Defendants contradict themselves stating "Plaintiffs do not object to the four detailed declarations." Dkt. 40 at 6. This finger pointing is used as a deflection and simply does not suffice to meet Defendants' burden. *Cf. Zemansky v. EPA*, 767 F.2d 569 (9th Cir. 1985).

Regardless, Defendants' declarations speak for themselves, or more to the point, do not speak at all on certain points. In particular, the declarations leave three key issues open without *any* explanation or specificity to justify the withholdings under FOIA: (1) why the agency did not conduct a search?[2]; (2) what specific privacy harms would result from disclosing the Cienfuegos records, particularly those pertaining to agency actions?[3]; and (3) why no segregability is possible. Instead of pointing to specific statements in the current declarations to make these points or providing additional declarations, Defendants' Reply Brief simply relies on conclusory and generalized statements such as, "No segregability is possible." Kargbo Decl. ¶ 29; *see also* Hertel Decl. ¶ 31 (simply stating "No segregability would be possible"); Cain ¶ 3 ("a search was not required to be conducted"); Hertel Decl. ¶ 31 (stating a search was not required, and no segregability was possible). But even more blatant than these conclusory statements are the wholesale omissions in the declarations. For instance, the Department of State's declaration does not once mention its failure to search and segregate and the DOJ/EOUSA's declaration makes absolutely *no mention* of segregability. *See generally* Weetman Decl.; Cain Decl. With such paltry justification, Plaintiffs are simply not sure what word to use other than "conclusory" to describe Defendants' declarations.

Plaintiffs do, however, concede it is unclear how Defendants could meet their burden and allege statements with requisite factual specificity where Defendants have refused to perform even a basic search. *Cf. Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008). Without

---

[1] Defendants try to incorrectly reverse the burden onto Plaintiffs at multiple points in its Reply Brief. *See* Dkt. 40 at 6 ("Plaintiffs do not proffer any admissible evidence").

[2] Kargo Decl. ¶ 18 ("Criminal Division concluded that it was not required to search for requests….").

[3] Cain Decl. ¶ 24 ("There is no countervailing public interest that warrants the release of an individual's personally identifiable information, and its dissemination would not help explain the government's activities or operations.").

-2-

OPP. TO DEFS' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

having searched and reviewed the records, the agency admittedly must not have any specific knowledge about the records, their contents, and their parameters. Thus, it is unclear how Defendants could be more detailed, as required, and explain *what* privacy harms are at play in *all* of the records and why absolutely *no* segregability is possible for these records, especially records that only discuss agency action and decision making. In this way, Defendants have bound themselves to providing conclusory and generalized allegations because of their obdurate decision not to search. *Cf. Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1195 (9th Cir. 2011).

**B.      The Government's Flag Waiving that "Categorical Withholding Does Not Require a Search" Is An Improper Diversion From Its Basic Failure to Search And Segregate.**

In the last section of its reply brief, Defendants again admit they have failed to conduct a search. Dkt. 40 at 19. Defendants then allege that without conducting a search, no segregability is possible.[4] Kargbo Decl. ¶ 29; Hertel Decl. ¶ 31. But Defendants' Reply states that Plaintiffs' assertion that a search is required was made "without a citation to FOIA" and that Defendants "properly refused" to search because of their categorical withholding. Dkt. 40 at 19.

First and foremost, to be clear, the requirements to search and segregate are statutory, 5 U.S.C. § 552(a)(3)(A)(C); 5 U.S.C. § 552(a)(8), and nowhere in FOIA did Congress state that these basic obligations are optional. *See generally* 5 U.S.C. § 552(a). Moreover, Plaintiffs cited this statutory requirement in their opening brief. Dkt. 39 at 9. Still, Defendants' Reply asserts that the agencies "properly refused" to search because of the categorical withholding. Dkt. 40 at 19. While Plaintiffs recognize that some courts have carved out a *narrow* exception for search where categorical withholdings occur – this court made rule does not apply in these circumstances under *any* Circuit's law, and if it did, would pervert FOIA's basic search requirement. *See Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994) (stating a failure "to describe in *any* detail what records were searched, by whom, and through what process[]" is fatal); *Hamdan v. Dep't of Justice*, 797

---

[4] It is especially unclear how an agency could determine segregability is not possible without having conducted a search in the first place. Perhaps this is why some declarations did not address segregability whatsoever. *See generally* Cain Decl.; Weetman Decl.

F.3d 759, 772 (9th Cir. 2015) ("Plaintiffs were entitled to a reasonable search for records…"). For this reason alone, this Court should deny Defendants' motion for summary judgment.

### C. The Government's Categorical Withholding Is Unjustified Under the Law of the D.C. Circuit and The Reasoning of this Circuit.

Defendants' Reply Brief weaves in and out of arguments insisting that somehow the "three exemptions [3, 6, and 7] together support Defendants' categorical denials." Dkt. 40 at 6. Unpersuasively, the Defendants misapply D.C. Circuit law, ignore the contradictory reasoning of *Pickard v. Department of Justice*, 653 F.3d 782 (9th Cir. 2011) along with the holding of *Schultz v. FBI*, 63 F. Supp.3d 1189 (E.D. Ca. 2014), and improperly analogize the facts here to two unreported cases, where the Government met its basic requirement and performed a search for records.[5]

*First and foremost*, even though the D.C. Circuit permits for categorical withholdings more expansively, *even that jurisdiction applies limits*—which apply here. *See Graff v. F.B.I.*, 822 F. Supp. 2d 23, 32 (D.D.C. 2011) ("[W]hile categorical [withholdings] are permissible, there are limits to when they may be employed."). Thus, while Defendants plead this Court to "look to the D.C. Circuit, which has developed a standard to apply[,]" Dkt. 40 at 11, even that standard does not permit categorical exemptions in these circumstances where: (1) the records are not one *kind*, *category* or *class* of record, *cf. Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015) (discussing "the category" of records justifying the withholding);[6] (2) the records have been repeatedly acknowledged by the government, *cf. Huggans v. Exec. Office for U.S. Attorneys*, No. 19-cv-02587 (EGS), 18 (D.D.C. Mar. 22, 2021) (categorical exemption applied only because "the government" had "not acknowledged" the party's involvement); and (3) the cases against Cienfuegos are closed, *cf. Black v. Dep't of Justice*, 69 F. Supp. 3d 26, 37 (D.D.C. 2014) (upholding the categorical denial because the cooperating third-party still faced charges).

---

[5] Defendants argue that a "categorical denial" is different than a *Glomar* response. Dkt. 40 at 9. Plaintiffs agree, but that is not the point made in Plaintiffs' Opposition. Dkt. 39 at 11. As explained, "categorical exemptions" are rarely justifiable, as they obviate the search requirement but one context in which they are used is in *Glomar* cases. *See Schultz v. FBI*, 63 F. Supp. 3d 1183, 1189 (E.D. Cal. 2014). With no *Glomar* response here, the Court should be wary to apply a categorical withholding.
[6] *See also WP Company LLC v. U.S. Dep't of Defense et al*, No. 21-CV-01025 (APM), 2022 WL 4119769 (D.D.C. Sept. 9, 2022); Dkt. 39 at 8 (stating the relevant categories must be distinct).

*Second*, even more instructive, caselaw in this Circuit strongly reasons against categorical exemptions. First off, this Court has underscored the importance of searches, which are obviated by categorical exemptions. *Gonzales & Gonzales Bonds & Ins. Agency Inc. v. U.S. Dep't of Homeland Sec.*, No. C 11-02267 DMR (N.D. Cal. Dec. 21, 2012). Applying the Ninth Circuit's logic, the Eastern District of Northern California, this Court's sister court, has already squarely decided this precise issue and held categorical exemptions are unjustified in circumstances like these because of the search requirement. *See Schultz* 63 F. Supp. 3d at 1190–91 (stating the "approach required by the Ninth Circuit" demands that searches instead of categorical exemptions). Moreover, the Ninth Circuit's case *Pickard* also reasons against permitting categorical exemptions in cases like this one. *See Pickard*, 653 F.3d at 786.[7] In *Pickard* the Ninth Circuit held that while the agency was not necessarily required to "disclose" the records, it was required to "take the next step" and "produce a *Vaughn* index in response to Pickard's FOIA request, raise whatever other exemptions may be appropriate, and let the district court determine if the contents" may be protected. *Id.* at 788. Here, the same logic applies. Because Cienfuegos' identity is known and many of the records were disclosed and acknowledged, the government should search its records and provide a *Vaughn* index to justify why the records are exempt.[8]

Last, Defendants' Reply Brief cites two unreported cases to make a last ditch argument for categorical withholding, but those cases fail to support Defendants' position. Dkt. 40 at 10. First, Defendants cite *Brown v. U.S. Department of Justice*, where the Plaintiff alleged the "DEA 'fraudulently concealed' the fact that [the subject] was an informant" and the "Plaintiff primarily [sought] disclosure [of a single Report of Investigation (ROI) record] to vindicate his 'gut feeling' that [his friend] was a DEA informant." Case No. 1:13-cv-01122-LJO-SKO, 9 (E.D. Cal. Mar. 17,

---

[7] In *Pickard*, the government had already acknowledged that the records existed by identifying the subject at trial but still it tried to assert a Glomar response, but the Court ruled it was improper.

[8] Moreover, many records likely only disclose the Defendants' actions or decision making around Cienfuegos' arrest and the investigation which would not invade any privacy or interrupt law enforcement – especially as the case is now admittedly closed and redactions could provide any additional necessary protections. With subsets of records like the kind here "courts have created methods to be sure the requesting party and the deciding judge have sufficient information upon which to determine whether the government agency properly withheld the requested documents. These methods include creation of a 'Vaughn index'..." *Brown v. U.S. Department of Justice*, Case No. 1:13-cv-01122-LJO-SKO, 7 (E.D. Cal. Mar. 17, 2015).

2015). Here, the facts could not be more different. (1) Plaintiffs do not seek a single record, an ROI, but a bevy of different records related to the investigation, so a categorical exemption is improper for such a disparate set of records; (2) Plaintiffs do not rely on a "gut feeling" but instead, Plaintiffs rely on the DOJ's public statements acknowledging the records exist; and (3) most of all, *Brown* is clearly distinguishable <u>because the agency conducted a search in that case</u>. *Id.* at 11 ("The agency searched for any report…"). Here, no search has been executed even when Plaintiffs asked for *any record* related to the investigation, so it is unclear how Defendants know that each and every piece of paper created in this investigation is properly exempt categorically.

Additionally, Defendants cite *ACLU Found. of Ariz. v. U.S. Dep't Homeland Sec*., Dkt. 40 at 5-6, which similarly fails to support Defendants' point because there, the government conducted a search and described that search in its affidavits. No. CV-14-02052-TUC-RM (BPV), 2017 WL 8895339 (D. AZ. Jan. 26, 2017). In that case, the magistrate judge reported that part of the search was insufficient and recommended that "Defendant should be required to search for the requested records and disclose some or produce a Vaughn index and accompanying affidavits setting out whatever exemptions it contends applies" by citing "Ninth Circuit" case law. *Id*. at 14. The court continued that the Declaration also fell short from "establishing that a search…would have revealed *only* information that is exempt" as is the case here. *Id.* at 17. Indeed, *ACLU Found. of Ariz.* supports Plaintiffs' case that 1) a search is required; 2) categorical withholding is improper; 3) a *Vaughn* index is appropriate, and 4) it is likely a search would yield at least some records that are not exempt.

Thus, the government's categorical withholding and failure to search is unjustified.

### D.  Defendants Unjustifiably Withheld *All* Records Pursuant To Exemptions 6 & 7(C), Even Though Most Records Likely Contain No Privacy Concerns And The Public Interest Outweighs Any Putative Privacy Concerns.

Defendants do not contest that Exemptions 6 and 7(C) are balancing tests nor do they contest the caselaw, Dkt. 40 at 8. Instead, they argue unpersuasively that because Cienfuegos has *some putative* privacy interests that *all* of the responsive records trigger that interest. This reasoning is ineffective. First, while Cienfuegos might admittedly have *some* privacy interest, it is significantly limited because he is a public official, who was identified in a U.S. investigation that is closed. Moreover, it is unlikely *all of the responsive records* implicate this privacy interest. To also avoid

disclosing records that only involve agency action, Defendants improperly attempt to unilaterally narrow Plaintiffs' requests. Notwithstanding any putative privacy concern, Defendants do not sufficiently explain why the clear public interest does not outweigh any ostensible privacy interest. Instead, Defendants try to bury the leading case on this fact pattern, *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) (hereinafter *CREW*), that demands disclosure.  For these reasons the Court should rule in Plaintiffs' favor.

### 1. Defendants' Reply Still Fails to Identify to Any Privacy Concerns In Accordance With Exemptions 6 and 7(C)

First, Defendants' Reply tries to once again allege that Cienfuegos has a meaningful privacy interest by restating that Exemption 7(C) "employs a broad range of concerns," Dkt. 40 at 12, and then blanketly asserting, "[t]he disclosure of records responsive to Plaintiffs' Requests would invade Cienfuegos' privacy interests," period. Dkt. 40 at 13; *see also* Dkt. 40 at 15. This conclusory statement is futile at hiding the reality that Cienfuegos is a public official, already identified by U.S. in criminal investigations that are now closed as well as the Mexican disclosures. Any privacy concerns in such circumstances are *de minimis*. *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012) (stating "a threat to privacy…on some generalized, conjectural level is not sufficient."); *see also Raimondo v. F.B.I.*, Case No. 13-cv-02295-JSC, 12 (N.D. Cal. May. 10, 2016).

In an attempt to bolster Cienfuegos' ostensible privacy interests, Defendants repeatedly point to the case *Schiffer v. F.B.I*, 78 F.3d 1405, 1410 (9th Cir. 1996). *See* Dkt. 40 at 11, 12. However, that case only supports Plaintiffs' position. Unlike *Schiffer*, the information at issue here, is not of a personal nature. In that case, Steven Schiffer had filed a lawsuit against his former business partner and "[b]efore the district court, [he] *admitted that his interest was **personal in nature**, not public*. 78 F.3d at 1407. Schiffer wanted the requested documents for only "personal curiosity and personal views.'" *Id*. at 1410.[9] Here, the records involving Cienfuegos would disclose official actions he made while serving in public office that impacted the American public. These types of records "associating

---

[9] *See FCC v. AT&T Inc.*, 562 U.S. 397, 408 (2011) (discussing "personal privacy" interests as details of personal relationships, information, family life, and business judgments); *see Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980) (same).

him [and his position] with criminal activity" which Defendants allege are already somewhat "in the public record" are clearly distinguishable from the intimate kind Schiffer sought. Dkt. 40 at 13.[10]

Moreover, and most importantly, there are likely dozens if not hundreds of records at issue in this case that do not even discuss Cienfuegos' actions. Any justified privacy concerns, such as protecting agency emails and phone numbers could be managed by redactions. Defendants' Reply tries to avoid these records by unilaterally narrowing Plaintiffs' requests, stating that "Plaintiffs are not seeking records about 'agency actions'". Dkt. 40 at 13. That statement is wholly false. In fact, Plaintiffs drafted a broad request in order to specifically encapsulate agency actions. Plaintiffs requested, "*all records* related in whole or in part to a request for assistance from the Mexican government – *whether by* the Mutual Legal Assistance Treaty (MLAT), letter rogatory, or *some other diplomatic communication – regarding the criminal case* [of Cienfuegos] (CR 19-366)." Dkt. 15 at ¶¶ 32, 41, 49, 55 (emphasis added). The phrases "all records related to" and "regarding the criminal case" as well as the subsequent list of: "whether by the [MLAT]" or "letter rogatory" or "some other…communication" suggests that Plaintiffs' request was particularly targeted at government documents and communications, and not just some personal information involving Cienfuegos.

Last, Defendants bury the leading case on this issue: *CREW*, which demands disclosure. After four pages of discussion on Cienfuegos' ostensible privacy, Defendants briefly mention *CREW* and try to distinguish it by stating that case involved an "American government official investigated by American law enforcement" who identified himself. Dkt. 40 at 14. However, that fact pattern is *not* meaningfully different from the circumstances here, where a Mexican official, whose political decisions impacted Americans, was investigated, criminally charged and arrested in the U.S. by U.S. law enforcement. It is irrelevant that Cienfuegos didn't identify himself, because the U.S. did. While he is a Mexican official, his actions impacted many Americans, as suggested by the fact that the U.S. chose to investigate him and spend countless American tax dollars to do so. Dkt. 40 at 14.

---

[10] Defendants concede that the public identification of Cienfuegos as well as the fact that the cases are closed are meaningful factors. Dkt. 40 at 13. *See also* Department of Justice, Office of Information Policy, Exemption 6 at 435, https://bit.ly/3CFwkAs (stating generally no expectation of privacy with well-known information); *Am. Oversight v. GSA*, 311 F. Supp. 3d 327 (D.D.C. 2018) (rejecting GSA's privacy argument because names were known).

**2. Defendants Fail to Address the Significant Public Interest in the United States' Actions Which Outweighs Any Putative Privacy Concerns And Instead Accuse Plaintiffs Of Improperly Expanding Their Requests.**

Defendants' public interest argument fails for three reasons. First, Defendants claim that Plaintiffs' stated public interest is insufficient by citing to *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 639 (9th Cir. 2017).  However, that case plainly supports Plaintiffs' position. There, the Court found that when considering the public interest "the *only* relevant" factor "is the extent to which disclosure of the information sought would *she[d] light on an agency's performance*." *Id*. at 639 (emphasis added). The Court went on to hold that information about "the operations or activities of the government" is sufficient whereas "information about private citizens…that reveals little or nothing about an agency's own conduct is not the type of information to which FOIA permits access." *Id.* at 640. Here, Plaintiffs only seek information that would shed light on the agencies' actions in the Cienfuegos investigation, such as why the agencies chose to buck decades of tradition and investigate, arrest, and then release Cienfuegos and abandon the U.S. investigation.

Second, to trigger this public interest, "the requester must (only) produce evidence that would warrant a *belief* by a reasonable person that the alleged Government impropriety might have occurred." *Id*. at 640. Here, that requirement has been satisfied. After years of investigating Cienfuegos, filing formal drug trafficking charges against him in court and publicly arresting him in an international airport, the United States shockingly released Cienfuegos to Mexican authorities and closed the DOJ case against him. Tim Golden, *Dropping the Charges Against General Cienfuegos Was William Barr's Call*, PROPUBLICA Dec. 8, 2022, https://bit.ly/3BpNySJ. Many commentators noted how this set of factual events was a massive break from U.S. tradition. *Id.*, *see also* Alan Feuer and Natalie Kitroeff, *Mexico Outraged at Arrest of Ex-Official, Threatened to Toss U.S. Agents*, N.Y. TIMES, Nov. 18, 2020, https://nyti.ms/3CYnzTu. This erratic decision making was followed by even more unprecedented behavior when the United States admonished Mexico for the release of records. Such a set of facts easily makes any reasonable person "believe" that there was U.S. "impropriety."

In fact, many reasonable people, members of the media, and members of Congress already expressed such suspicions. Reuters called the release of Cienfuegos a "shock" move.[11] The

---

[11] Drazen Jorgic and Mark Hosenball, *In Shock Move, U.S. Abandons Drugs Case Against Ex-Mexican Defense Minister*, REUTERS, Nov. 17, 2020, https://bit.ly/3uznNLY.

-9 -

OPP. TO DEFS' MOT. SUMM. J.; NOT. OF CROSS MOT. AND CROSS MOT.
SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.

Brookings Institute stated it was "an extraordinary break with decades of U.S. law enforcement practices."[12] The New York Times echoed that it was an "abrupt" move and reported that Congress was "stunned" by the DOJ's decision to free Cienfuegos.[13] Senator Bob Menendez of New Jersey, the top Democrat on the Foreign Relations Committee, demanded that the Attorney General "explain what had **gone wrong**." *Id.* (emphasis added). The Guardian described the decision as a "controversial backroom deal."[14] Explicit claims of corruption were also made. The Washington Office for Latin America stated that the United States and Mexico were to blame "given prevailing levels of impunity, which stem in turn from factors like corruption and weak institutional will and capacity." Stephanie Brewer, Explainer: Key Points for Understanding Mexico's Cienfuegos Case, WOLA.org, (Jan. 19, 2021) https://bit.ly/3HsfUzo. Each of these statements alone and cumulatively show that the facts above stir reasonable belief of Government impropriety and public interest that linger to this very day. *See also* Tim Golden, *The Cienfuegos Affair: Inside the Case that Upended the Drug War in Mexico*, N.Y. TIMES MAG., Dec. 8, 2022, https://nyti.ms/3FDxAag.

Third and finally, Defendants unsuccessfully try to diminish the identified public interest by wrongly claiming Plaintiffs are expanding their FOIA request. Defendants claim that "Plaintiffs are not seeking records pertaining to how an agency in the United States conducted an investigation." Dkt. 40 at 15. This reading of Plaintiffs' request is not only unfaithful but inaccurate. Defendants then strike even further and impute that Plaintiffs "attempt to expand the scope of their Requests." *Id.* Again this statement is false. The plain language of the Requests is enough to show otherwise. As previously mentioned, the requests intentionally asked for *all* records related to the Cienfuegos investigation. Logically that would involve *all* records, including "why" and "how" the United States government conducted its investigation, "why it was 'dropped'" and "the amount of 'taxpayer dollars' spent," Dkt. 40 at 15, among other things. Indeed, Plaintiffs anticipate the documents may

---

[12] Vanda Felbab-Brown, Cienfuegos and the US-Mexico firestorm, BROOKINGS, Nov. 23, 2020 https://brook.gs/3CEWrHS.

[13] Alan Feuer and Natalie Kitroeff, *Mexico Outraged at Arrest of Ex-Official, Threatened to Toss U.S. Agents*, N.Y. TIMES, Nov. 18, 2020, https://bit.ly/3BjhGz1.

[14] Tom Phillips, *Outrage after Mexico exonerates ex-defense minister in drug case*, THE GUARDIAN, Jan. 15, 2021, https://bit.ly/3FD5wDP.

shed even more light on the government's actions that is otherwise a black box of what our "government is up to." *Cf. Rojas v. Fed. Aviation Admin.*, 941 F.3d 392, 405 (9th Cir. 2019).[15]

### E.  Withholding Pursuant to Exemption 3 is Unjustified Because the Requested Records No Longer Fall Under the Scope of the U.S.-Mexico MLAT

While the Defendants are quick to point out that the U.S.-Mexico MLAT qualifies as a withholding statute for Exemption 3, they fail to complete the second part of the Exemption 3 analysis: determining whether or not the withheld information falls "within the [MLAT's] coverage." *Dongkuk Int'l, Inc. v. U.S. Dep't of Justice*, 204 F. Supp. 3d 18 (D.D.C. 2016). Here, the clear answer is no. The requested records no longer fall within the MLAT's coverage because the MLAT's confidentiality provisions protecting the requested information have been so brazenly and repeatedly violated by the U.S. acknowledgment and Mexico's near full disclosure. *See, e.g.*, *In re Copley*, 518 F.3d 1022, 1025 (9th Cir. 2008) ("Secrecy is a one-way street: Once information is published, it cannot be made secret again."); *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 n.11 (2d Cir. 2004) (explaining once confidential information has been disclosed, it is no longer confidential); *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 449 (5th Cir. 2019) (similar).

Defendants' Reply argues that "Plaintiffs' broken treaty argument lacks any merit." Dkt. 40 at 16. However, first, this assertion is *not* Plaintiffs' "argument," but rather a logical reading of the MLAT's "shall" language found in Article 4's confidentially provision and applied to the fact that the U.S. plainly broke this obligation. *Id*. Second, Defendants downplay the significance of Mexico's disclosure and their own acknowledgment that this disclosure was a "treaty violation." Dkt. 40 at 17. Third, Defendants fail to accurately describe key facts *Grynberg* and *Dongkuk* which both support Plaintiffs' position that the MLAT is broken. Dkt. 40 at 17. Finally, Defendants' claim two "defects" with asserting that the MLAT was broken, but those arguments are also unavailing. Dkt. 40 at 18.

---

[15] This case is similar to *WP Company LLC v. U.S. Dep't of Defense*, where the *Washington Post* sought names of former U.S. military who subsequently worked abroad, and the court found that the privacy was outweighed by the public interest in the international matter. *See WP Company LLC supra*. There, just as here, there were two nations at issue in the case. So, while Defendants allege that "Plaintiffs' Requests would only 'shed light' on Mexico or determine what Mexico is up to," Dkt. 40 at 15, it takes two to tango, and Mexico was only *one* of the parties to this MLAT dance. The other party was the United States, which is why Plaintiffs are seeking the records.

**1. Defendants' Reply misinterprets the MLAT's "shall" language and evades on the fact that the U.S.'s actions abrogated that provision.**

The first relevant confidentiality provision, in Article 4 of the MLAT, states that the "requested State (the United States) shall *keep confidential a request* and *its contents* unless authorized by […] the requesting Party." MLAT, Art. 4 § 5 (emphasis added). While this provision does safeguard against incidental disclosures, the "shall" language otherwise requires strict confidentiality by the requested state. *See id.* Once confidentiality obligations have been breached by publication or acknowledgment, confidentiality is subsequently destroyed. *See Pac. Pictures Corp. v. U.S. Dist. Court*, 679 F.3d 1121, 1126–27 (9th Cir. 2012). Thus, while Mexico was unilaterally responsible for the initial publication of the records online, once the United States tweeted a message to the world about the release *and* made subsequent official statements acknowledging the request and its contents, this disclosure effectively abrogated the stringent confidentiality provision in Article 4 of the MLAT.

The tweet, in particular, broke this confidentiality because it was not just a standard 280-character tweet, but an official press statement from the DOJ acknowledging the request and its contents. U.S. Dep't of Justice – Int'l (@USDOJ_Intl), Jan. 16, 2021, https://bit.ly/3TL3i9t. The statement was formally drafted into a three-paragraph document, prominently displayed the formal DOJ seal in the bottom left-hand corner, and attributed its statements to an official DOJ spokesperson. *Id.* Defendants try to demur that "the tweet…cannot be reasonably viewed as the United States' exhaustive verification" but they cannot explain why or how. Dkt. 40 at 17. That is especially implausible because courts have recognized that official government tweets can serve as official statements for the purposes of supporting a claim of official disclosure or acknowledgment. *See, e.g.*, *James Madison Project v. Dep't of Justice*, 302 F. Supp. 3d 12, 24, 35 (D.D.C. 2018).[16]

**2. Mexico's comprehensive disclosure in violation of the MLAT's provisions strips away any remaining confidentiality.**

Defendants' argument that Mexico has not authorized the U.S. to disclose more information about the request, Dkt. 40 at 16, is discredited, by the fact that Mexico made several public

---

[16] *See also Leopold v. Cent. Intelligence Agency*, 987 F.3d 163, 169–70 (D.C. Cir. 2021) ("we would uphold the district court's ruling, even on de novo review, if President Trump's tweet officially acknowledged the existence of Central Intelligence Agency records").

acknowledgments concerning the contents of original MLAT in addition to publishing the evidence file[17], as well as the fact that Plaintiffs specifically seek information about the U.S.'s own investigation and decisions – not Mexico's.[18]  Regardless, by publishing thousands of confidential MLAT files, Mexico has proverbially let the cat out of the bag. That is true, according to the Defendants' own words. The DOJ tweeted Mexico's publication "*violates* the Treaty […]." U.S. Dep't of Justice – Int'l (@USDOJ_Intl), *supra* at 12. This language is not discussed anywhere in the Defendants' Reply. But this is DOJ's position: that Mexico's improper disclosure was an irreparable violation of the MLAT. Defendants cannot now walk back this language and state that Plaintiffs mischaracterize the actions as an "alleged violation" or "purported" breach.

### 3. Defendants' citation to *Grynberg* and *Dongkuk* fails because no party in those cases breached the relevant confidentiality obligations.

Defendants state that, *Grynberg* and *Dongkuk*, "favors the Defendants, not the Plaintiffs." Dkt. 40 at 17. But Plaintiffs reliance on *Grynberg v. U.S. Dep't of Justice*, 302 F. Supp. 3d 532 (S.D.N.Y. 2018) and *Dongkuk Intl., Inc. v. U.S. Dep't of Justice*, 204 F. Supp. 3d 18 (D.D.C. 2016) is more apt as it considers all of the facts. Defendants' analogies to *Dongkuk* and *Grynberg* are misplaced, because neither party violated the confidentiality provisions in those cases. Dkt. 40 at 17. For instance, in *Dongkuk* while the Korean government made *some* "acknowledgement" of the requested records in court, the withholding was upheld under Exemption 3 because of three crucial, distinguishing facts: (1) first, the United States, in *Dongkuk*, never broke the confidentiality provisions of the MLAT, 204 F. Supp. 3d at 23[19]; (2) the information disclosed in the Korean court proceedings was limited and not specific, unlike the thousands of pages disclosed here; and (3) the U.S. never acknowledged in that case that the U.S.-Korean MLAT was violated. *Id*. at 28–29. As such, the court held that by invoking Exemption 3, the U.S. used its "best efforts" to maintain the confidentiality of the protected information. *See id*. Similarly, in *Grynberg*, the court dismissed a

---

[17] *See, e.g.*, Press Release, Statement by President of the Republic of Mexico, Jan. 15, 2021, https://bit.ly/3H4RlbK
[18] This argument also fails to recognize Mexico's disregard for the second confidentially provision found in Article 6 of the MLAT. *See* Dkt. 39 at 22.
[19] Moreover, under the U.S.-Korea MLAT this obligation applies if the requesting state demands it, and in *Dongkuk*, Korean authorities requested confidentiality. *Dongkuk*, 204 F. Supp. 3d at 23.

FOIA action because the U.S.–Swiss MLAT's confidentiality provisions were not broken. *Grynberg*, 302 F. Supp. 3d at 532. The Swiss Office of Justice stipulated in communications that any transpired information was to remain private, *id.* at 540, thus, the court held it was proper to withhold the requested records from disclosure. *Id*. Conversely, here, Mexico published thousands of pages of MLAT evidence, the U.S government acknowledged the request and its contents, and the U.S. admitted the MLAT has been violated. So rather than standing as two "inapposite cases" that bear no weight, *Grynberg* and *Dongkuk* support Plaintiff's argumen. *See* Dkt. 40 at 17.

### 4. This Court has jurisdiction and a duty to analyze the MLAT and Defendants already admitted it was void.

Last, Defendant makes two final arguments for why Plaintiffs' Exemption 3 argument has "defects." Dkt. 40 at 18. Both are unavailing. First, Defendants question whether this Court is the proper forum to interpret the legal significance of  MLAT treaty violations. *Id*. This skepticism is unwarranted because when analyzing a treaty for purposes of applying it to federal law, courts have full authority and duty to interpret a treaty's meaning. *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 353–54 (2006) ("If treaties are to be given effect as federal law under our legal system, determining their meaning as a matter of federal law 'is emphatically the province and duty of the judicial department.'") (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)); *see also Charlton v. Kelly*, 229 U.S. 447, 475–76 (1913) (judiciary determining how a treaty violation impacts U.S. law).[20] Indeed, a court reviewing a treaty *is* the task of Exemption 3's analysis, which Defendants so vociferously argued was within FOIA's purview. Dkt. 40 at 16.

Second, Defendants argue that Plaintiffs improperly assert the Treaty is broken because only agencies can make that determination. Dkt. 40 at 18 (citing *Charlton*, 229 U.S. at 474 (stating it is up to the "injured party to pronounce it" broken)). But here, Plaintiffs have not issued any such determination, but only cited and relied on the United States' own public pronouncement that the MLAT was broken. Moreover, this determination by the U.S. is not surprising as it also follows decades of American tradition. 26 Op. O.L.C. 143, 173, 2002 OLC LEXIS 24, *75-76 (Oct. 23, 2002) ("[f]or more than a century, the United States has engaged in the well-established practice

---

[20] Also, Plaintiffs do not ask this Court to rectify the broken terms of this Treaty in determining this FOIA. As Defendants point out, such questions must be left to diplomacy for redress. Dkt. 40 at 18.

-14-

Opp. to Defs' Mot. Summ. J.; Not. of Cross Mot. and Cross Mot.
Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.

under international law of suspending treaties in response to a material breach by one of the other parties to the treaty.") Where the agency stated the treaty was violated, alongside the DOJ's own seal, this statement must be given "great weight." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 185–86 (1982) (explaining that when a treaty is to be interpreted by the judicial branch, the agencies' views are entitled to "great weight").

### F.    Defendants' Evidentiary Claims Fail: The MLAT Cables and Correspondence are Relevant and the News Articles Are Not Hearsay

Defendants argue that the five declassified cables and correspondence, marked as Exhibit 1 through 6, are irrelevant. Dkt. 39 at 2. Evidence is relevant if (a) it has *any tendency* to make a fact more or less probable…; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a)–(b). Here, Plaintiffs offer this cables and correspondence as concrete examples of MLAT material that was disclosed by U.S. authorities pursuant to FOIA to show that MLAT material can be disclosed. In light of Plaintiffs' similar FOIA request, the relevancy is obvious: if past disclosures of MLAT material were justified then future disclosures can also be found so.[21]

Defendants also assert the news articles, marked as Exhibits 7 to 17, are hearsay. While unsupported news articles are generally inadmissible hearsay, they can be introduced into evidence if they are bolstered by supporting evidence that confers circumstantial guarantees of trustworthiness. *See, e.g.*, *Larez v. Los Angeles*, 946 F.2d 630, 643 (9th Cir. 1991). In Federal Rule of Evidence 807, this notion is codified as the residual exception. Here, the facts asserted in each article are corroborated by press releases and other publications. Regardless, the articles may also be admitted under the doctrine of judicial notice. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

## III.   CONCLUSION

For the foregoing reasons, the government's motion for summary judgment should be denied, and CIR's cross motion for summary judgment should be granted.

---

[21]  Defendants also erroneously rely on Fed. R. Evid. 602 and 901 to argue that the cables lack foundation or authentication. Rule 602 covers a witness introducing evidence to support a finding and Rule 901 covers how evidence is authenticated. Exs. 1-6 are time stamped, redacted documents, created for official release, and thus authenticated.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED: December 9, 2022

*s/ D. Victoria. Baranetsky*
D. Victoria Baranetsky
THE CENTER FOR INVESTIGATIVE REPORTING
1400 65th St., Suite 200
Emeryville, CA 94608
vbaranetsky@revealnews.org