United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

THE CENTER FOR INVESTIGATIVE
REPORTING, et al.,

               Plaintiffs,

       v.

U. S. DEPARTMENT OF JUSTICE, et al.,

            Defendants.

Case No.  21-cv-09613-SK

**ORDER ON MOTIONS FOR
SUMMARY JUDGMENT**

Regarding Docket Nos. 36, 39

The matter comes before the Court upon consideration of the motion for summary judgment filed by Defendants United States Department of Justice ("DOJ") and Department of State ("State Department") (collectively, "Defendants") and the cross-motion for summary judgment filed by Plaintiffs The Center for Investigative Reporting and Anayansi Diaz-Cortes (collectively, "Plaintiffs").  Having carefully considered the parties' papers, relevant legal authority, record in the case, and oral argument, the Court DENIES the Defendants' motion for summary judgment and GRANTS Plaintiffs' cross-motion for summary judgment for the reasons set forth below.

Defendants filed evidentiary objects to Plaintiffs' evidence.  The Court SUSTAINS Defendants' objections to the cables and correspondence (Exhibits 1 through 6 to the Declaration of D. Victoria Baranetsky) as irrelevant.  Defendants further object to the newspaper articles (Exhibits 7-10, 12-17 to Baranetsky Declaration) on the grounds of hearsay.  The Court SUSTAINS the objections with respect to accepting the truth of the content of those newspaper articles.  However, the Court OVERRULES the evidentiary objections regarding the existence of the general topics discussed in the newspaper articles.  Finally, Defendants object to the translated press releases requested by the Court filed in Docket Number 48 as hearsay.  The Court

1   OVERRULES Defendants' objections as these documents fall within the public records exception

2   to hearsay.  *See* Fed. R. Evid. 803(8)(A)(i).

3                                    **BACKGROUND**

4          Plaintiffs filed a claim under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

5   against the Executive Office for United States Attorneys ("EOUSA"), the DOJ Criminal Division

6   ("DOJ-CRM"), the United States Drug Enforcement Administration ("DEA"), and the State

7   Department.  (Dkt. No. 15 (First Amended Compl.).)  Plaintiffs allege that the DOJ-CRM, the

8   EOUSA, and DEA are all components of the DOJ.  (*Id.*, ¶ 18.)

9          In August 2021, Plaintiffs submitted FOIA requests to these four entities (DOJ-CRM,

10   EOUSA, DEA, and the State Department (collectively, "Defendant Agencies")), seeking records

11   related to the Mexican government's request to the United States government under the Mutual

12   Legal Assistance Cooperation Treaty with Mexico for evidence regarding General Salvador

13   Cienfuegos Zepeda ("Cienfuegos").  Plaintiffs allege that the Defendant Agencies have improperly

14   withheld documents under FOIA.  (*Id.*, ¶¶ 7, 8.)

15          Cienfuegos is Mexico's former Secretary of National Defense who served under President

16   Enrique Pena Nieto from 2012 to 2018 and was arrested by the United States on drug-trafficking

17   and corruption charges.  Plaintiffs' FOIA requests seek "all records related in whole or in part to a

18   request for assistance from the Mexican government – whether by the Mutual Legal Assistance

19   Treaty (MLAT), letter rogatory, or some other diplomatic communication – regarding the criminal

20   case United States of America Salvador Cienfuegos Zepeda (CR 19-366)," limited to the time

21   period of September 1, 2020 through December 31, 2020.  (*Id.* at ¶¶ 32, 41, 49, 55.)

22                                      **ANALYSIS**

23   **A.     Legal Standards.**

24          FOIA requires that, unless an exemption applies, "each agency, upon any request for

25   records which (i) reasonably describes such records, and (ii) is made in accordance with published

26   rules stating the time, place, fees (if any), and procedures to be followed, shall make the records

27   promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  The purpose of the Freedom of

28   Information Act ("FOIA") is "to pierce the veil of administrative secrecy and open agency action

to the light of public scrutiny. . . ." *Dep't the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation and quotation marks omitted). FOIA reflects "'a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.'" *Id.* at 360-61 (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). FOIA's "'core purpose' is to inform citizens about 'what their government is up to.'" *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (quoting *Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure,' . . . and that the statutory exemptions, which are exclusive, are to be 'narrowly construed,'" *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) and *Rose,* 425 U.S. at 361); *see also Maricopa Audubon Soc. v. U.S. Forest Serv*., 108 F.3d 1082, 1085 (9th Cir. 1997) (FOIA's exemptions are "explicitly exclusive" and "must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy.") (citations omitted).

"FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015). Further, "[a] basic policy of FOIA is to ensure that Congress and not administrative agencies determines what information is confidential." *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987). For this reason, courts do not give deference to a federal agency's determination that requested information falls under a particular FOIA exemption. *Carlson v. U.S. Postal Serv.*, 504 F.3d 1123, 1127 (9th Cir. 2007). To satisfy its burden, the agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

"FOIA cases are typically decided on motions for summary judgment as the facts are rarely in dispute." *Am. Small Bus. League v. United States Off. of Mgmt. & Budget*, --- F. Supp. 3d ---, 2022 WL 4544726, at *7 (N.D. Cal. Sept. 28, 2022) (citing *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996)). "An agency is entitled to summary judgment if no material

facts are genuinely in dispute and the agency demonstrates "that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017).

**B.      The Parties' Cross-Motions.**

Defendants did not conduct a search for any documents.  Instead, pursuant to Exemptions 3, 6, and 7, Defendants argue that the documents Plaintiffs seek are categorically exempt. "Exemption 3 relieves an agency of its obligation to disclose material "specifically exempted from disclosure by statute[.]"  *Ctr. for Investigative Reporting v. United States Dep't of Just.*, 14 F.4th 916, 926 (9th Cir. 2021).  Exemptions 6 and 7(C) protect personal and private information from disclosure.  *See Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).  Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) provides that the FOIA does not apply to "records or information compiled for law enforcement purposes" to the extent they "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The Supreme Court made clear that "categorical decisions may be appropriate and individual circumstances disregarded when a case fits into a genus in which the balance characteristically tips in one direction."  *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 776 (1989).  The Supreme Court held that " as a categorical matter that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy, and that when the request seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing, the invasion of privacy is 'unwarranted.'"  *Id*. at 780.  However, the D.C. Circuit clarified that when a FOIA request could be construed as seeking information that would shed light on agency action and was not necessarily limited to information about a private citizen, the agency was required to perform an ad hoc balancing of the competing interests regarding disclosure.  *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 894-95 (D.C. Cir. 1995).

Here, Plaintiffs' FOIA requests are not only seeking to discover in what criminal activity the United States contends that Cienfuegos participated but also seek documents related to agency's actions.  Therefore, the Court finds that Defendants have not made a sufficient showing that the documents sought by Plaintiffs characteristically tip in one direction such that Defendants can categorically exclude all responsive documents without conducting a search.  As will be discussed in more detail below, the Court finds that applying Exemptions 3, 6, and 7 categorically, without conducting a search and evaluating each responsive document individually, was not justified.

### 1.    Exemption 3.

As the Ninth Circuit case explained:

> Exemption 3 relieves an agency of its obligation to disclose material "specifically exempted from disclosure by statute," but only if that statute (1) "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld," and (2) "if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph." 5 U.S.C. § 552(b)(3).

*Ctr. for Investigative Reporting*, 14 F.4th at 926-27.  In applying this exemption, the Court "must ask whether the statute identified by the agency is a statute of exemption within the meaning of Exemption 3."  *Id*. at 927 (internal quotation marks and citation omitted).  If so, the Court must then "assess whether the withheld records satisfy the criteria of the exemption statute."  *Id*. (internal quotation marks and citation omitted).  While not widely considered, at least two courts have held that similar Mutual Legal Assistance Treaties between the United States and other countries qualified as a statute under Exemption 3.  *See Grynberg v. U.S. Dep't of Justice*, 302 F. Supp. 3d 532, 539-40 (S.D.N.Y. 2018); *Dongkuk Int'l, Inc. v. U.S. Dep't of Justice*, 204 F.Supp.3d 18 (D.D.C. 2016).  Plaintiff does not dispute that the MLAT between the United States and Mexico qualifies as a statute under Exemption 3 but contests that Defendants' decision to not conduct a search was not justified by Exemption 3.  The Court concurs.

As noted above, this issue has not been widely addressed.  Only two courts have analyzed whether documents requested under an MLAT may be withheld under Exemption 3, and neither of

1   those two cases are particularly helpful here in light of the unique factual circumstances at issue.

2   *See Grynberg*, 302 F. Supp. 3d 532, *Dongkuk*, 204 F.Supp.3d 18.  Article 4 of the MLAT between

3   the United States and Mexico provides that "[t]he requested State shall keep confidential a request

4   and its contents unless otherwise authorized by the Coordinating Authority of the requesting

5   party." *Mut. Legal Assistance Cooperation Treaty with Mexico*, S. Treaty Doc. No. 100-13 (Dec.

6   9, 1987), 1987 WL 890783.  Article 6 provides that "[w]hen necessary, the requested party may

7   request that information or evidence furnished be kept confidential in accordance with conditions

8   which its Coordinating Authority shall specify." *Id*.

9           However, both Mexico and the United States have made some public disclosures of

10  Mexico's request under the MLAT related to Cienfuegos.  On November 17, 2020, the United

11  States Attorney General and Mexico's Fiscalía General issued a joint statement announcing that

12  Cienfuegos had been arrested in the United States on charges of conspiracy to manufacture,

13  import, and distribute narcotics into the United States and for money laundering.  (Dkt. No. 48-1,

14  Ex. A to Declaration of D. Victoria Baranetsky.)  The statement further provided that "[a]t the

15  request of the Fiscalía General de la República, the U.S. Department of Justice, under the Treaty

16  that governs the sharing of evidence, has provided Mexico evidence in this case and commits to

17  continued cooperation, within that framework, to support the investigation by Mexican

18  authorities." (*Id*.)

19          Mexico then issued further press releases *and disclosed the documents that the United

20  Stated had provided under the MLAT*.  On January 14, 2021, the Attorney General of Republic

21  issued a statement regarding the United States' investigation into Cienfuegos.  (Dkt. No. 48-1, Ex.

22  B.)  The press release stated that, while Cienfuegos was in custody in the United States, the

23  Attorney General of the Republic requested and received the evidence from the United States

24  regarding its case against Cienfuegos.  The Office of the Attorney General of the Republic

25  concluded that Cienfuegos never had any meeting or communication with the members of the

26  criminal organization investigated by the United States and that he did not perform any acts to

27  protect or help such individuals.  (*Id*.)

28          On January 15, 2021, the Mexican President issued another press release stating that he

1    instructed the Ministry of Foreign Affairs to make the complete file sent by the United States

2    publicly available to the people of Mexico, so that anyone who wishes to do so could consult,

3    review, and investigate the file.  (Dkt. No. 48-1, Ex. C.)

4         In a press conference with the Secretary of Foreign Affairs of Mexico, the Secretary

5    explained that the United States sent a file of 743 pages to Mexico regarding Cienfuegos.  (Dkt.

6    No. 48, ¶ 8; Dkt. No. 48-1, Ex. D.)  The Secretary further explained that Mexico had formally

7    requested under the MLAT that the United States provide Mexico with its evidence against

8    Cienfuegos.  (*Id.*, Ex. D.)

9         The DOJ responded with a "tweet" with the DOJ seal stating, from a DOJ spokesperson:

10        We are deeply disappointed by Mexico's decision to close its
          investigation of [Cienfuegos].  The United States Department of
11        Justice fully stands by its investigation and charges in this manner.

12        The United States Department of Justice is also deeply disappointed
          by Mexico's decision to publicize information shared with Mexico in
13        confidence.  Publicizing information violates the Treaty on Mutual
          Legal Assistance between Mexico and the United States, and calls
14        into question whether the United States can continue to share
          information to support Mexico's own criminal investigations.
15
          Finally, the United States Department of Justice notes that the
16        materials released by Mexico today show that the case against
          General Cienfuegos was, in fact, not fabricated. . . .
17
*See* U.S. Dep't of Just. – Int'l (@USDOJ_Intl), Jan. 16, 2021, https://bit.ly/3TL3i9t.
18
          In *Grynberg*, the government conducted a search for the documents requested under FOIA
19
     and only withheld documents it claimed were exempt and were not publicly available.  *Grynberg*,
20
     302 F. Supp. 3d at 535.  As to the documents that were not already publicly available, there was
21
     no indication that either the requesting or requested country had disclosed the material or violated
22
     the treaty.  *Id.*, 302 F. Supp. 3d 532.  In *Dongkuk*, the plaintiffs argued that the official
23
     acknowledgement test required the government to provide a copy of a Request for Assistance
24
     ("RFA") Letter made through an MLAT.  "When information has been 'officially acknowledged,'
25
     its disclosure may be compelled even over an otherwise valid exemption claim."  *Dongkuk*, 204 F.
26
     Supp. 3d at 29 (citing *Mobley v. CIA*, 806 F.3d 568, 583 (D.C. Cir. 2015)).  However, where the
27
     Korean prosecutors in *Dongkuk* only summarized the contents of the RFA, the court found that the
28

United States District Court
Northern District of California

plaintiffs failed to demonstrate that the specific information requested matched the information that had been previously disclosed to satisfy the official acknowledgement test.  Additionally, the court held that another country could not waive the DOJ's right to invoke Exemption 3 under FOIA.  *Id*. at 28-29.

Here, Plaintiffs do not argue and the Court does not find that Mexico waived Defendants' right to invoke Exemption 3 or that the official acknowledgment test applies.  Instead, Plaintiffs argue that both sides violated the MLAT by their disclosures related to Mexico's request under the MLAT and, thus, the treaty no longer requires confidentiality.  At this point, in light of Defendants' categorial refusal to conduct a search, the language of the MLAT, and the disclosures already made, the Court need not adjudicate whether Mexico and/or the United States violated the MLAT.

Instead, the Court finds that, in light of the unique factual circumstances described above, the language of the MLAT between the United States and Mexico does not justify Defendants' failure to conduct a search.  Article 4 of the MLAT provides that "[t]he requested State shall *keep confidential* a request and its contents unless otherwise authorized by the Coordinating Authority of the requesting party."  MLAT, Art. 4, 1987 WL 890783 (emphasis added).  Both Mexico and the United States issued a joint press release discussing Mexico's request under the MLAT. Mexico continued to publicly discuss its request under the MLAT and purported to make publicly available all of the evidence the United States provided to Mexico pursuant to Mexico's request under the MLAT.  The United States then issued a press release accusing Mexico of violating the MLAT by publicizing the information the United States shared with Mexico.  Thus, it appears much, if not all, of the information Plaintiffs request under FOIA has already been made public and, thus, is no longer confidential.  Until Defendants conduct a formal search, it is not clear whether any material remains that has not already been disclosed.  If, after conducting a search, Defendants contend that some documents must be withheld pursuant to Exemption 3, the Court can address at that time whether any such withholdings are justified.

**2.      Exemptions 6 and 7.**

Exemptions 6 and 7(C) protect personal and private information from disclosure in certain

8

contexts. *Lahr*, 569 F.3d at 973. Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) provides that the FOIA does not apply to "records or information compiled for law enforcement purposes" to the extent they "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both Exemptions 6 and 7(C) speak of an "unwarranted" invasion of personal privacy, "[s]o, to determine whether a record is properly withheld, [courts] must balance the privacy interest protected by the exemptions against the public interest in government openness that would be served by disclosure." *Lahr*, 569 F.3d at 973.

### i.      Privacy Interests.

First, the Court addresses the privacy interests of Cienfuegos. The Court notes that substantial information regarding the criminal charges the United States brought against Cienfuegos has already been publicly disclosed. In addition to the press releases issued by both the United States and Mexico discussing the criminal charges filed by the United States and Mexico's purported disclosure of all the supporting evidence the United States provided to Mexico, the criminal indictment by the United States against Cienfuegos is a publicly available document. *United States v. Salvador Cienfuegos Zepeda*, 19-cr-0366 (E.D. N.Y.). In the indictment, the United States accused Cienfuegos of conspiring to manufacture or distribute, and import into the United States, cocaine, heroin, methamphetamine, and marijuana. *Id*., Docket No. 1. The United States also accused Cienfuegos of engaging in a conspiracy to launder the proceeds from narcotic trafficking. *Id*.

Without knowing what is contained in the documents responsive to Plaintiffs' FOIA requests, the Court cannot determine whether disclosure of these documents would impinge on any remaining privacy interests. In other words, in light of the information and documents which have already been publicly disclosed, it is not clear whether any documents would disclose information of alleged criminal activity beyond which has already been publicly released, and if so, whether such additional information which would further stigmatize or embarrass Cienfuegos in light of what has already been disclosed.

Moreover, as a former senior public official in Mexico, Cienfuegos' privacy interests are further diminished. *Lissner v. U.S. Customs Serv.*, 241 F.3d 1220, 1223 (9th Cir. 2001) (noting that although "individuals do not waive all privacy interests in information relating to them simply by taking an oath of public office, [ ] by becoming public officials, their privacy interests are somewhat reduced"); *see also Dobronski v. F.C.C.*, 17 F.3d 275, 280 n. 4 (9th Cir. 1994) (holding lower level officials generally have a stronger interest in personal privacy than senior officials and finding an assistant bureau chief was a position of relative influence and thus deserving of privacy protection).

Because Defendants failed to conduct a search, it is unclear whether there are documents which would infringe on Cienfuegos' remaining privacy interests, if any, if they were disclosed. Nevertheless, to the extent Cienfuegos has any remaining privacy interest, Plaintiffs must show that their requests further a public interest. *Graff v. F.B.I.*, 822 F. Supp. 2d 23, 34 (D.D.C. 2011) ("Even a weak privacy interest will always outweigh a lack of public interest.").

### ii.    Public Interest.

Once the government has identified a cognizable privacy interest, "the *only* relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Bibles v. Or. Natural Desert Ass'n,* 519 U.S. 355, 355-56 (1997) (alteration and internal quotation marks omitted) (emphasis in original). Where there are relevant privacy interests at stake, a requester must demonstrate that the interest served by disclosure "is a significant one, an interest more specific than having the information for its own sake," and that disclosure is likely to advance that interest. *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004).

"[M]atters of substantive law enforcement policy . . . are properly the subject of public concern." *Reporters Comm.*, 489 U.S. at 766 n. 18; *see also Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("CREW") (quoting *Reporters Comm.*, 489 U.S. at 766 n. 18). In *CREW*, the D.C. Circuit found that documents requested under FOIA could reveal how the FBI and the DOJ handled the investigation and

10

prosecution of crimes and "would likely reveal much about the diligence of the FBI's investigation and the DOJ's exercise of its prosecutorial discretion: whether the government had the evidence but nevertheless pulled its punches."  *CREW*, 746 F.3d at 1093.  The D.C. Circuit noted that it had "repeatedly recognized a public interest in the manner in which the DOJ carries out substantive law enforcement policy (whether or not that interest outweighs any privacy interest at stake in a given case)."  *Id*. at 1093-94 (citing *American Civil Liberties Union v. U.S. Dep't of Just.*, 655 F.3d 1, 12-13 (D.C. Cir. 2011) (public interest in DOJ's use of and justification for warrantless cell phone tracking); *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 948-49 (D.C. Cir. 1998) (public interest in DOJ disciplinary proceedings); *Dunkelberger v. Dep't of Just.*, 906 F.2d 779, 781 (D.C. Cir. 1990) (public interest both in whether FBI agent participated in scheme to entrap public official and in manner in which agent was disciplined); *Bast U.S. Dep't of Just.,* 665 F.2d 1251, 1255 (D.C. Cir. 1981) (public interest in DOJ decision not to prosecute federal judge for alleged misconduct); *see also U.S. Dep't of State v. Ray*, 502 U.S. 164, 178 (1991) (public interest in "knowing whether the State Department has adequately monitored Haiti's compliance with its promise not to prosecute returnees"); *People for the Ethical Treatment of Animals v. Nat'l Institutes of Health, Dep't of Health & Hum. Servs.*, 745 F.3d 535, 542-45 (D.C. Cir. 2014) (public interest in how agency decides whether to investigate complaints of animal abuse and misappropriation of research funds and how it conducts investigations); *Stern v. FBI*, 737 F.2d 84, 92 (D.C. Cir. 1984) (recognizing, in dicta, public interest "in knowing that a government investigation itself is comprehensive")).

Here, the United States investigated Cienfuegos for years.  (Dkt. No. 48-1, Ex. B; *see also United States v. Salvador Cienfuegos Zepeda*, 19-cr-0366 (E.D. N.Y.) (Dkt. No. 1).)  Then, a month after arresting him, the United States dropped the charges against Cienfuegos and released him to Mexico.  (Dkt. No. 48-1, Ex. A.)  Shortly thereafter Mexico then announced Cienfuegos' innocence and stated that Mexico would not prosecute him.  (Dkt. No. 48-1, Ex. B.)  Notably, Plaintiffs' FOIA requests only seek documents and communications created between September 1, 2020, to December 31, 2020, and therefore are not seeking extensive documents created during the lengthy investigation into Cienfuegos by the United States.  (Dkt. No. 15 at ¶¶ 32, 41, 49, 55, Exs.

11

G, M, Q, T.)  Moreover, by limiting their requests to records that relate to Mexico's request for assistance regarding the criminal case against Cienfuegos, Plaintiffs' requests are more narrowly focused on the governmental interactions between the United States and Mexico (Mexico's request and the United States' reaction to that request), rather than all records related to Cienfuegos.  *Id*.  The records Plaintiffs seek could potentially reveal why the United States decided to drop the charges against Cienfuegos and whether the United States "had the evidence but nevertheless pulled its punches."[1]  *CREW*, 746 F.3d at 1093.  This is an issue of public interest.

Additionally, the criminal case against Cienfuegos has garnered media interest, which further supports Plaintiffs' showing of a significant public interest.  *See ACLU*, 655 F.3d at 12-13 (widespread media attention demonstrated public interest); *see also Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2022 WL 4182189, at *9 (D.D.C. Sept. 13, 2022) (finding significant public interest where incident had been subject of some media and congressional attention); *Schmidt v. U.S. Air Force*, 2007 WL 2812148, at *11 (C.D. Ill. Sept. 20, 2007) (finding public interest in FOIA request where request concerned incident that garnered "significant public and media attention").  As noted above, while the Court does not take judicial notice of the truth of the content of the newspaper articles, the Court does take judicial notice of the fact that multiple news articles, as well as press releases by both the United States and Mexico, were published regarding Cienfuegos' arrest, Mexico's request under MLAT, the United States' subsequent release of Cienfuegos, and Mexico's decision not to bring criminal charges against him.  The Court finds that this media attention demonstrates the existence of a public interest in this matter.

Plaintiffs also argue that Cienfuegos' position as a former, high-level Mexican official further supports their argument that their FOIA requests concern a public interest.  However, it is

---

[1] The Court notes that the parties dispute whether Plaintiffs' FOIA requests seek documents concerning the United States' decision to release Cienfuegos.  Without viewing Defendants' records, the Court cannot answer this question in the abstract.  However, while Plaintiffs did not directly request the documents related to the government's prosecutorial case against Cienfuegos, to the extent a document discusses the decision to release Cienfuegos in reaction to or in connection with Mexico's request for assistance, then such documents would be covered by Plaintiffs' FOIA requests.

United States District Court
Northern District of California

not clear whether Cienfuegos' position in *Mexico*, as opposed to as a United States official, increases the public interest in addition to the public media attention his arrest and subsequent release garnered.

Defendants argue that Plaintiffs need evidence of wrongdoing.  "Where the public interest advanced is that officials were negligent or that they otherwise improperly performed their duties, the requester must establish 'more than a bare suspicion' of wrongdoing, by 'produc[ing] evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.'"  *Lahr*, 569 F.3d at 974 (quoting *Favish*, 541 U.S. at 174).  Because Plaintiffs have shown public interest in the records they seek - separate from or in addition to any potential governmental wrongdoing - they need not provide evidence of wrongdoing.  *See ACLU*, 655 F.3d at 14.  As the D.C. Circuit explained:

> Whether the government's tracking policy is legal or illegal, proper or improper, is irrelevant to this case. . . . [T]he plaintiffs are not (or at least not only) seeking to show that the government's tracking policy is legally improper, but rather to show what that policy is and how effective or intrusive it is.   "[M]atters of substantive law enforcement policy . . . are properly the subject of public concern," whether or not the policy in question is lawful.

*Id*. (quoting *Reporters Comm.,* 489 U.S. at 766 n. 18).

Based on the significant public interest at stake and Cienfuegos' minimal, if any, remaining privacy interests, the Court finds that Defendants cannot demonstrate a categorical unwarranted invasion of Cienfuegos' personal privacy.  Therefore, Defendants erred in failing to conduct a search.  Once Defendants conduct a search, they may contend that the balance shifts towards justifying withholding one document or some particular documents.  However, the Court cannot make that determination until after Defendants conduct a search and continues to claim some individual documents should be withheld under Exemption 6 and/or 7(c).

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment and GRANTS Plaintiffs' cross-motion for summary judgment.  Defendants erred in failing to conduct a search for documents responsive to Plaintiffs' FOIA requests.  Defendants shall conduct a search and if, after conducting a search continue to maintain that some documents should be

withheld under Exemption 3, 6, and/or 7, Defendants shall prepare a *Vaughn* index for those documents, identifying each document withheld, the statutory exemption claimed, and making a particularized explanation of how disclosure of each particular document would damage the interest protected by the claimed exemption.  *See Amer. Civil Liberties Union of N. California v. U. S. Dep't of Just.*, 880 F.3d 473, 481 n. 6 (9th Cir. 2018); *see also Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

 **IT IS SO ORDERED**.

Dated: March 1, 2023

_____
SALLIE KIM
United States Magistrate Judge